Greg K. Hafif, Esq. (SBN 149515)
Michael G. Dawson, Esq. (SBN 150385)
LAW OFFICE OF HERBERT HAFIF
269 W. Bonita Avenue
Claremont, California 91711
(909) 624-1671 - phone; (909) 625-7772 - fax
Email: ghafif@hafif.com

Douglas Caiafa, Esq. (SBN 107747)
DOUGLAS CAIAFA, A Professional Law Corporation
11845 West Olympic Boulevard, Suite 1245
Los Angeles, California 90064
(310) 444-5240 - phone; (310) 312-8260 - fax
Email: dcaiafa@caiafalaw.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
77-760 Country Club Drive, Suite G
Palm Desert, California 92211
(760) 469-5986 - phone; (760) 345-1581 - fax
Email: cjmorosoff@morosofflaw.com

Attorneys for Plaintiffs STACI CHESTER, *et al*.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| STACI CHESTER, an individual; DANIEL FRIEDMAN, an individual; individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>          vs.<br><br>THE TJX COMPANIES, INC., a Delaware corporation; T.J. MAXX OF CA, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>          Defendant. | **CASE NO.:  5:15-cv-01437**<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. UNFAIR BUSINESS PRACTICES;**<br>**2. FRAUDULENT BUSINESS PRACTICES;**<br>**3. UNLAWFUL BUSINESS PRACTICES;**<br>**4. FALSE ADVERTISING; and,**<br>**5. VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT** |

COMPLAINT

1   Come now Plaintiffs STACI CHESTER ("CHESTER") and DANIEL

2   FRIEDMAN ("FRIEDMAN") (collectively referred to as "Plaintiffs"),

3   individually and on behalf of all others similarly situated (collectively referred to

4   as "Class Members"), and for causes of action against Defendants and each of

5   them, based upon personal knowledge, information and belief, and investigation of

6   their counsel, allege as follows:

7   **JURISDICTION AND VENUE**

8   1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)

9   (the Class Action Fairness Act of 2005 ("CAFA")) because the amount in

10   controversy exceeds the value of $5,000,000, exclusive of interest and costs,

11   because the class consists of 100 or more putative Class Members, and

12   because at least one putative Class Member is diverse from both Defendants

13   THE TJX COMPANIES, INC. ("TJX"), a Delaware corporation with its

14   principal place of business in Framingham, Massachusetts, and T.J. MAXX

15   OF CA, LLC ("MAXX"), a Delaware limited liability company with its

16   principal place of business in Framingham, Massachusetts.  (TJX and

17   MAXX are collectively referred to herein as "Defendants.").

18   2.   This is a civil action brought under and pursuant to California Business &

19   Professions Code §17200, *et seq.* (the Unfair Competition Law or "UCL"),

20   California Business & Professions Code §17500, *et seq.* (the False

21   Advertising Law or "FAL"), and California Civil Code §1750, *et seq.* (the

22   California Consumer Legal Remedies Act or "CLRA").

23   3.   Venue is proper in the Eastern Division of the Central District of California

24   because Defendants transact a substantial amount of business in this District,

25   Plaintiff CHESTER resides in Riverside County, California, and the

26   transactions which form the basis of CHESTER's claims against Defendants

27   occurred in the city of Palm Desert, in Riverside County, California.

28

- 1 -
COMPLAINT

4.     The Central District of California has personal jurisdiction over the Defendants named in this action because TJX is a corporate business entity authorized to do business in the State of California, and MAXX is a limited liability company authorized and licensed by the California Secretary of State to do business in the State of California.  Both Defendants have sufficient minimum contacts in California.  Defendants have otherwise intentionally availed themselves of the California market through the ownership and operation of approximately 110 retail stores within the State of California, such that the exercise of jurisdiction over Defendants by the California courts is consistent with traditional notions of fair play and substantial justice.

5.     Defendants transact business within the county of Riverside, and elsewhere throughout the State of California.  The violations of law alleged herein have been carried out within the County of Riverside and throughout the State of California.

## INTRODUCTION

6.     This is a case about deceptive advertising – about one of the nation's largest retailers using deceptive comparative prices to trick its customers into mistakenly believing they are saving specific and substantial amounts on name brand items.  Both Plaintiffs CHESTER and FRIEDMAN are typical American consumers who, like all reasonable consumers, are motivated by the promise of a good deal.  MAXX, a wholly owned subsidiary of TJX, is a large national retailer that makes enormous profits by promising consumers a good deal.  Defendants own and operate a chain of so called "off-price" department stores in California known as TJ Maxx stores.  Plaintiffs occasionally shop at TJ Maxx because of Defendants' promise that they can get name brand products for up to 60% off department store prices. Defendants support that promise with price tags on each item that feature

- 2 -
COMPLAINT

1   Defendants' selling price alongside a much higher supposedly comparative

2   price.  The comparative price assures consumers like Plaintiffs that they are

3   receiving an exceptionally good deal and saving a specific dollar amount

4   equal to the difference between the two prices.  Defendants' price tags

5   deceptively instruct customers to "compare" the sale prices of their products

6   to these higher comparative prices.  The comparative prices, however, are

7   false.  They are not true, bona fide comparative prices.  Plaintiffs, having

8   been duped by Defendants' deceptive pricing practices like all other TJ

9   Maxx customers, bring this action against Defendants for false, deceptive

10  and misleading advertising on behalf of themselves and all other consumers

11  who have purchased items at TJ Maxx stores in California throughout the

12  period from July 17, 2011, to the present (the "Class Period").

13  **PARTIES**

14  7.  Plaintiff CHESTER is, and at all times relevant hereto has been, an

15  individual and a resident of Riverside County, California.  On at least 2

16  occasions throughout the Class Period, CHESTER purchased products from

17  Defendants' Palm Desert, California, TJ Maxx store which were falsely,

18  deceptively, and/or misleadingly labeled with false, deceptive, and/or

19  misleading, comparative prices.  The marked "Compare At" prices for the

20  products which CHESTER purchased from Defendants were not actual

21  prices that other retailers were selling those products for.  CHESTER

22  purchased products from Defendants throughout the Class Period in reliance

23  on Defendants' false, deceptive and misleading advertising, marketing and

24  pricing schemes, which she would not otherwise have purchased absent

25  Defendants' deceptive advertising and pricing scheme, and CHESTER has

26  lost money and/or property, and has been damaged as a result.

27  8.  Plaintiff FRIEDMAN is, and at all times relevant hereto has been, an

28  individual and a resident of Los Angeles County, California.  On at over 10

- 3 -
COMPLAINT

occasions throughout the Class Period, FRIEDMAN purchased products from Defendants' Westlake Village, California, TJ Maxx store which were falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices. The marked "Compare At" prices for the products which FRIEDMAN purchased from Defendants were not actual prices that other retailers were selling those products for. FRIEDMAN purchased products from Defendants throughout the Class Period in reliance on Defendants' false, deceptive and misleading advertising, marketing and pricing schemes, which he would not otherwise have purchased absent Defendants' deceptive advertising and pricing scheme, and FRIEDMAN has lost money and/or property, and has been damaged as a result.

9.    Plaintiffs are informed and believe, and on that basis allege, that Defendant TJX is a Delaware corporation, organized under the laws of the state of Delaware, which conducts substantial business on a regular and continuous basis in the state of California. TJX's principal place of business is in Framingham, Massachusetts.

10.   Plaintiffs are informed and believe, and on that basis allege, that Defendant MAXX is a Delaware limited liability company, organized under the laws of the state of Delaware, which conducts substantial business on a regular and continuous basis in the state of California. MAXX's principal place of business is in Framingham, Massachusetts.

11.   The true names and capacities of the Defendants named herein as DOES 1 through 100, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue such Defendants under fictitious names. Plaintiffs are informed and believe, and on that basis allege, that these Defendants, DOES 1 through 100, are in some manner or capacity, and to some degree, legally responsible and liable for the damages of which

Plaintiffs complain.  Plaintiffs will seek leave of Court to amend this Complaint to set forth the true names and capacities of all fictitiously-named Defendants within a reasonable time after they become known.

## FACTUAL ALLEGATIONS

12. During the Class Period, CHESTER bought a handbag and other items from the TJ Maxx store in Palm Desert, California.

13. During the Class Period, FRIEDMAN bought apparel and household items from the TJ Maxx store in Westlake Village, California.

14. Plaintiffs were each lured into Defendants' stores with the promise of significant savings on name brand merchandise such as, without limitation, apparel, handbags, shoes, and bed, bath and home items.

15. Each item offered for sale at TJ Maxx is displayed with a comparative price tag which provides 2 prices: the TJ Maxx sale price and another significantly higher price described simply as the "Compare At" price.

16. Consumers are not told exactly what the phrase "Compare At" means, or given any information about the comparative price other than the dollar amount and the phrase, "Compare At."  Nor are they told where Defendants came up with the "Compare At" price.  They are simply presented with the 2 prices (the TJ Maxx sale price, and the higher "Compare At" reference price), left to guess what the "Compare At" price is, and are led to believe that they are actually saving the difference between the 2 prices.

17. This type of comparison pricing, where the retailer contrasts its selling price for a product with a generally much higher reference price, has become increasingly common in the retail marketplace.

18. Retailers, like Defendants, present these reference prices (commonly referred to as "advertised reference prices" or "ARPs") to consumers with short tag-line phrases such as "former price," "regular price," "list price,"

COMPLAINT

"MSRP," or "compare at."  These marketing phrases are commonly referred to as "semantic cues."

19. The semantic cues used by retailers can be either informative or deceptive, depending on the specificity of the language and the truthfulness or accuracy of the ARP.

20. In the case of specifically worded semantic cues such as "former price" or "regular price," the ARP can be informative if, and only if, the ARP provided by the retailer is a true, accurate, bona fide former or regular price which the retailer has charged for the item.

21. On the other hand, vague terms or phrases which are susceptible to more than one reasonable interpretation, such as "compare at," are almost always misleading and deceptive.

22. If a semantic cue (a word or phrase attached to an ARP) is clear and susceptible to only one reasonable interpretation, then the use of that word or phrase in connection with an ARP may not be legally prohibited so long as the ARP is a true, bona fide price.

23. If, on the other hand, a semantic cue is unclear or open to multiple interpretations, as is the case when an ARP is preceded by the undefined and unqualified phrase "compare at," then the use of that word or phrase in connection with an ARP is deceptive and is thus prohibited by, among other things, the Federal Trade Commission ("FTC") regulations, 16 C.F.R. §233.1, *et seq*. (commonly referred to as the "FTC Pricing Guides").

24. Plaintiffs were each confronted with ARPs on the items they purchased from Defendants, accompanied by the simple, undefined, unqualified phrase, "Compare At."  Plaintiffs reasonably believed, like all reasonable consumers, that the "Compare At" price represented the price that they would expect to pay for those same items at other retailers in their general area.  In other words, Plaintiffs reasonably believed that the "Compare At"

COMPLAINT

1    prices referred to the then prevailing retail prices for those same items - that

2    if they left TJ Maxx and shopped around for those same items, tjey would

3    likely find them elsewhere at the higher "Compare At" prices provided by

4    Defendants.

5    25.   Defendants, however, had a different definition of what they meant by

6          "Compare At" - a definition undisclosed to consumers and not consistent

7          with the common meaning of the phrase "compare at."

8    26.   Had Plaintiffs been savvy enough, and stopped their shopping to get to a

9          computer, log onto Defendants' website, navigate to the bottom of the web

10         page, find the "compare at pricing" link in the fine print on the left side of

11         the bottom of the page along with a half-dozen other links (including, among

12         others, site map, privacy, and terms of use), and click on the "compare at

13         pricing" hyperlink, Plaintiff would have found Defendant's definition of

14         "Compare at" as follows:

15

16    **What do we mean by "compare at"?**

17    **The "compare at" price is our buying staff's estimate of the regular, retail price at**

18    **which a comparable item in finer catalogs, specialty or department stores may**

19    **have been sold.  We buy products from thousands of vendors worldwide, so the**

20    **item may not be offered by other retailers at the "compare at" price at any**

21    **particular time or location. We encourage you to do your own comparison**

22    **shopping as another way to see what great value we offer.  We stand for bringing**

23    **you and your family exceptional value** <u>**every day**</u> **– it's the foundation of our**

24    **business.**

25

26    27.   Nowhere on Defendants' price tags, or in Defendants' price advertising, is it

27          made clear to consumers, including Plaintiffs, that the advertised "Compare

28

- 7 -

COMPLAINT

At" price is merely Defendants' buying staff's "estimate" of what a "comparable" item "may have" sold at.

28. Nowhere on Defendants' price tags, or in Defendants' price advertising, is it made clear to consumers, including Plaintiffs, that the advertised "Compare At" price may not even be a price at which any other retailer ever offered the particular item at any time or location.

29. Nowhere on Defendants' price tags, or in Defendants' price advertising, are consumers warned or told that they should their own comparison shopping before relying on Defendants' "Compare At" prices.

30. Consumers should not have to sleuth their way into Defendants' website just to find Defendants' misleading, unreasonable, and non-intuitive interpretation of what it means by the phrase "Compare At."

31. Even if a consumer were to find Defendants' interpretation of the phrase "Compare At" on their website before purchasing a product from TJ Maxx, it is still not clear from Defendants' definition exactly what their "Compare At" price actually represents.

32. Defendants' "Compare At" price could be the regular, retail price of the same item at other department stores. Or, it could be the regular, retail price of a "comparable" item. Or neither. It could simply be an "estimate" of what a comparable item might sell at. Or, it could be none of the above. It may be that the particular item, or even a comparable item, was never offered for sale at the "Compare At" price by any other retailer, at any time, or in any location. And consumers, even if they were to find Defendants' definition, would still be left to guess what a "comparable" item might be.

33. The Better Business Bureau ("BBB") Code of Advertising suggests that if a retailer means to compare its selling price to a higher reference price of supposed identical merchandise, the retailer should use clear language in its advertising such as "selling elsewhere at."

34. If the reference price provided by Defendants is meant by them to be the price of a "comparable item," then the semantic cue (or phrase) attached to that reference price by Defendants should inform the consumer that the reference price is supposedly the "regular, retail price" of a "comparable item."

35. The BBB Code of Advertising suggests that if a retailer means to compare its selling price to a higher reference price of comparable merchandise, the retailer should use clear language in its advertising such as "comparative value," "compares with merchandise selling at," or "equal to merchandise selling for."

36. Because Defendants' "Compare At" prices are based on Defendants' "estimate," they admittedly may not be the "regular" or "retail" price of either the same item or a comparable item.

37. So, what is the "Compare At" price?

38. Confronted with the simple phrase, "Compare At," a reasonable consumer would believe that the higher reference price represents the price at which the same item currently sells for in the marketplace – the then-prevailing retail or market price.

39. After reading Defendants' interpretation of the phrase "Compare At," a reasonable consumer would not know what the reference price represents.  It could be the actual original price of the same item; the actual original price of a comparable item; the regular, retail price of the same item; the regular, retail price of a "comparable" item (whatever that is); simply what Defendant "estimates" to be the original price of the same item; what Defendant "estimates" to be the price of a comparable item; or it may not be a price that any retailer ever sold the item, or a similar item, for at any time or in any location.

40. Where, as here, the retailer and the consumer do not share the same meaning of the semantic cue ("compare at"), and thus the phrase is open to more than one interpretation, the use of that phrase is misleading and deceptive.

41. Where, as here, the retailer ascribes a secret, undisclosed meaning to the semantic cue that differs from that which reasonable consumers, such as Plaintiffs, would ascribe to it, the use of that phrase is misleading and deceptive.

42. It is a deceptive marketing act and/or practice for Defendants to define their reference prices as either estimates of regular, retail prices, or possibly not even a price that any other retailer anywhere ever sold the item, or a comparable item, for, but fail to disclose that definition to consumers.  There is no reason, other than deception, to use a term like "Compare At" and then provide multiple definitions of that term buried in a website without disclosing that definition to consumers.

43. Reasonable consumers, like Plaintiffs, would believe that Defendants' "Compare At" prices referred to the retail prices that consumers would pay at other full-price retailers for the advertised merchandise.

44. Unbeknownst to Plaintiffs and other consumers, Defendants' "Compare At" prices do not refer to retail prices at other full-price retailers for the advertised products.  Rather, they misleadingly and deceptively may refer to one of many multiple possible prices provided by Defendant's definition.

45. Plaintiffs did not, and reasonable consumers would not, interpret the semantic phrase "Compare At" the way Defendants interprets it.

46. Therefore, Defendants' use of the semantic phrase "compare at" in connection with their ARPs for their products was, and is, false, misleading, and/or deceptive.

/ / /

/ / /

COMPLAINT

**GENERAL FACTUAL ALLEGATIONS**

47.    Defendants own and operate approximately 110 TJ Maxx stores throughout the state of California.

48.    Throughout the Class Period Defendants routinely and systematically made the untrue, deceptive, and misleading comparative advertising claims described herein about the prices of their products.

49.    Defendants compared the prices of their products with higher ARPs which consumers were led to believe were the prices supposedly charged by other merchants for the same products.  Defendants labeled those higher comparative prices as the "Compare At" prices for those products.

50.    The price tags placed by Defendants on or near the products they sell to consumers in their California TJ Maxx stores include, and have included, that price at which Defendants offered the particular product to consumers, as well as a different, and higher reference price which reasonable consumers would believe to be the price at which other merchants supposedly sell the same product - called the "Compare At" price.  The "Compare At" price, however, is, and has been throughout the Class Period, false, deceptive, and/or misleading.

51.    In advertising the "Compare At" price for a product, Defendants did not, and do not, actually present the prevailing market price for that product, i.e. the price at which other merchants were selling the identical product.  Rather, Defendants used, and continue to use, vague, misleading, and/or subjective measures to inflate the comparative prices, and thus artificially increased the discounts they claimed to be offering consumers.

52.    The FTC Guides Against Deceptive Pricing ("Pricing Guides"), 16 C.F.R. §233.2, provide rules for merchants such as Defendants that claim "to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area."

COMPLAINT

53. The FTC Pricing Guides require that when a merchant such as Defendants uses advertising that compares its prices to higher comparative prices for the same merchandise, "the advertised higher price must be based on fact, and not be fictitious or misleading." The FTC Pricing Guides further provide:

"Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving."

54. Plaintiffs are informed and believe, and on that basis allege, that the prices which Defendants advertise, and have advertised, as "Compare At" prices are not based on fact, are fictitious, and/or are misleading.

55. Plaintiffs are informed and believe, and on that basis allege, that when Defendants advertised prices as "Compare At" prices on the price tags of items sold in their California TJ Maxx stores, Defendants were not reasonably certain that the higher price they advertised did not appreciably exceed the price at which substantial sales of the items were being made in the area.

56. Where the advertiser's comparison price is purportedly based on prices being charged for similar or "comparable" products, "for other merchandise of like grade and quality - in other words, comparable or competing merchandise - to that being advertised," the FTC Pricing Guides require that the advertiser make "clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area." In such a case:

"The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area."

COMPLAINT

57.   According to Defendants' definition, the prices advertised by Defendants as the "Compare At" prices for some or all of the items sold at Defendants' California TJ Maxx stores was a price that Defendants allege to be the price of comparable items.

58.   Defendants did not make clear to consumers that the "Compare At" price was supposed to be the original price of products of similar quality and/or style.

59.   Plaintiffs are informed and believe, and on that basis allege, that when Defendants' "Compare At" price allegedly referred to the price of comparable items, Defendants were not reasonably certain that the "Compare At" price did not exceed the price at which similar merchandise was offered by representative retail outlets in the area.

60.   Plaintiffs are informed and believe, and on that basis allege, that when Defendants' "Compare At" price allegedly referred to the price of comparable items, the items that Defendants offered for sale were not of like grade and/or quality to other retailers' items supposedly being compared to.

61.   Where the advertiser's comparison price is purportedly based on a manufacturer's suggested retail price ("MSRP"), the FTC Pricing Guides provide as follows:

"Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer."

62.   With respect to advertised MSRPs, the FTC Pricing Guides provide:

"[t]he widespread failure to observe manufacturer's suggested or list prices, and the advent of retail discounting on a wide scale, have seriously undermined the dependability of list prices as indicators of the exact prices at which articles are in fact generally sold at retail. . . .

Today, only in the rare case are all sales of an article at the manufacturer's suggested retail or list price."

63.     According to the FTC Pricing Guides, an advertised MSRP:

"[w]ill not be deemed fictitious if it is the price at which substantial (that is, not isolated or insignificant) sales are made in the advertiser's trade area (the area in which he does business). Conversely, if the list price is significantly in excess of the highest price at which substantial sales in the trade area are made, there is a clear and serious danger of the consumer being misled by an advertised reduction from this price. . . . [B]efore advertising a manufacturer's list price as a basis for comparison with his own lower price, the retailer should ascertain whether the list price is in fact the price regularly charged by principal outlets in his area."

64.     Plaintiffs are informed and believe, and on that basis allege, that the "Compare At" prices which Defendants allege to be, and have been, MSRPs for their products were not prices at which substantial sales of those products were made in the relevant trade area(s), but were significantly in excess of the highest prices at which substantial sales of those products were made in the relevant trade areas(s).

65.     Plaintiffs are informed and believe, and on that basis allege, that Defendants did not ascertain whether the "Compare At" prices which Defendants allege to be MSRPs were in fact the prices regularly charged by principal outlets in the relevant area(s).

66.     Defendants' depiction of prices, as described herein, falsely represented to consumers that the "Compare At" price was the price at which the product typically sold in the marketplace, from which Defendants offered a discount.

67.     Plaintiffs are informed and believe, and on that basis allege, that even if and when a "Compare At" price for a product may have represented an actual "recent documented selling price" of the same product, Defendants chose the highest price at which the product was selling in the marketplace, and presented that price to consumers as the "Compare At" price.

COMPLAINT

68.  Plaintiffs are informed and believe, and on that basis allege, that Defendants' untrue and misleading representations accompanied virtually every product sold in their California stores each and every day throughout the Class Period, and that Defendants are still making such untrue and misleading comparative price claims for many, if not all, of the products in their California TJ Maxx stores.

69.  Defendants have routinely and systematically made untrue and misleading comparative advertising claims about the prices which other merchants charge for the identical products offered by Defendants.

70.  Plaintiffs are informed and believe, and on that basis allege, that often Defendants have not determined or verified the prices other merchants charge for the identical products they sell.  Rather, Defendants have used various misleading methods to make up their own prices which they claim other merchants charge for those products, and then claim that their own prices are significantly lower than those "Compare At" prices.

71.  Plaintiffs are informed and believe, and on that basis allege, that Defendants have advertised comparative prices which do not exist.

72.  Plaintiffs are informed and believe, and on that basis allege, that Defendants have made up prices supposedly charged by other merchants.

73.  Defendants knew or should have known that their representations concerning their "Compare At" prices, or other merchants' prices for identical products, were untrue and/or misleading.

74.  Defendants' representations were likely to mislead reasonable consumers into believing that Defendants' prices were significantly lower than the prices offered by other merchants for the identical products, and that consumers would enjoy significant savings by purchasing those products from Defendants instead of from other merchants.

COMPLAINT

75.   Defendants' false and/or misleading comparative pricing representations made it more likely that consumers would purchase particular products from Defendants.  For some products, Defendants' misleading claims of a huge discount were likely to persuade consumers who were not inclined to purchase the product at all to buy it from Defendants solely because they were misled into believing that they were getting an unusually good deal.

76.   Defendants' misrepresentations about their pricing were likely to mislead consumers into believing that Defendants' prices would always be significantly lower than the prices offered by other merchants for the identical products.

77.   Defendants misrepresented the existence, nature and amount of price discounts by purporting to offer specific dollar discounts from expressly referenced comparative prices, which were misrepresented as "Compare At" prices.  These purported discounts were false, however, because the referenced comparative prices were fabricated and did not represent true comparative prices for identical products sold by other merchants. Furthermore, the advertised "Compare At" prices were not the prevailing market retail prices for the products sold by Defendants.

78.   Plaintiffs are informed and believe, and on that basis allege, that the alleged comparative prices affixed to each item at Defendants' California TJ Maxx stores at all relevant times throughout the Class Period were false prices and not true prices that other merchants had sold any such item for at any time during the time that any such item was marked with the alleged "Compare At" price.

79.   Defendants have engaged in a company-wide, pervasive and continuous campaign of falsely claiming that each of their products sold at a far higher price by other merchants in order to induce Plaintiffs and all Class Members

COMPLAINT

to purchase merchandise at purportedly marked-down sale prices. Because such practices are misleading, yet effective, California law prohibits them.

80. Plaintiffs are informed and believe, and on that basis allege, that Defendants' false comparative price advertising scheme, disseminated to California consumers via representations on price tags, as well as in-store advertising, print advertising, and/or internet advertising, has been rampant throughout California as part of a massive, years-long, pervasive campaign and has been consistent across all of Defendants' merchandise at each of its TJ Maxx stores throughout California. For example, Defendants' pricing scheme has throughout the Class Period been prominently displayed directly on the price tag of each item sold, with express references to alleged comparative prices that have never existed and/or do not, and/or did not then, currently constitute the prevailing market retail prices for such merchandise.

81. Plaintiffs and all other Class Members were each exposed to Defendants' false, untrue, deceptive and/or misleading comparative price advertising as described herein.

82. Plaintiffs are informed and believe, and on that basis allege, that tens of thousands, if not hundreds of thousands, of California consumers have been victims of Defendants' deceptive, misleading and unlawful pricing scheme.

83. Defendants know and have known, should reasonably know, or should have known, that their comparative price advertising scheme is, and has been, false, deceptive, misleading, fraudulent, unfair and/or unlawful.

84. Defendants have fraudulently concealed from, and intentionally failed to disclose to, Plaintiffs and all other Class Members the truth about their alleged comparative prices.

85. At all times relevant herein, Defendants have been under a duty to Plaintiffs and all other Class Members to adequately disclose the truth about their alleged "Compare At" prices.

- 17 -
COMPLAINT

86.     The facts that Defendants misrepresented and/or failed to disclose are material facts that a reasonable person would have considered material; i.e., facts that would contribute to a reasonable person's decision to purchase merchandise offered for sale by Defendants.  Defendants' false representations of discounts from false, misleading or deceptive comparative prices, and false representations of purported savings, discounts and/or bargains, are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

87.     Plaintiffs each relied upon Defendants' false, deceptive and/or misleading representations of comparative prices and false representations of purported savings, discounts and bargains when purchasing merchandise from Defendant's TJ Maxx stores in California.

88.     Plaintiffs and all other Class Members reasonably and justifiably acted and relied to their detriment on Defendants' false, deceptive and/or misleading comparative price advertising, and/or Defendants' failure to disclose, and concealment of, the truth about their false comparative price advertising scheme, in purchasing merchandise at Defendants TJ Maxx stores throughout California.

89.     Defendants intentionally concealed and failed to disclose the truth about their misrepresentations and false comparative price advertising scheme for the purpose of inducing Plaintiffs and other Class Members to purchase apparel and other merchandise at each of their TJ Maxx stores throughout California.

90.     Through their false and deceptive marketing, advertising and pricing scheme, Defendants have violated, and continue to violate, California law which prohibits advertising goods for sale at a discount when compared to false prices at which other merchants purportedly sell the goods, and prohibits misleading statements about the existence and amount of

comparative prices.  Specifically, Defendants have violated, and continue to violate, the UCL, the FAL, the CLRA, and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)), and specifically prohibits false advertisements (15 U.S.C. §52(a)).

91. Under the FTCA, advertising must be truthful and non-deceptive, advertisers such as Defendants must have evidence to back up their claims, and advertisements cannot be unfair.  An advertisement is deceptive, according to the FTC, if it contains a misstatement or omits information that is likely to mislead consumers acting reasonably under the circumstances, and the statement or omitted information is material - that is, important to a consumer's decision to buy or use the product.

92. Throughout the Class Period, Defendants' "Compare At" prices contained material misstatements, and/or omitted material information, about their comparative prices that were likely to mislead reasonable consumers.

93. A reasonable consumer would interpret Defendants' "Compare At" price as the price at which a substantial number of vendors are selling the identical product.

94. Plaintiffs are informed and believe, and on that basis allege, that Defendants were often ignorant of the price at which other merchants were selling the identical products to consumers, and that Defendants did not know whether the "Compare At" price they advertised accurately reflected the price at which the product was typically offered in the marketplace.

95. Plaintiffs are informed and believe, and on that basis allege, that Defendant failed to verify that their "Compare At" prices for their products did not exceed the prices at which substantial sales of the products were being made in the marketplace.

COMPLAINT

96.   The result of Defendants' ignorance of the accuracy of their "Compare At" prices, and their failure to verify that accuracy, was that consumers were misled into believing that they were receiving substantial savings on the purchase of Defendants' products when compared to prices charged for those same products at other retailers.  Plaintiffs are informed and believe, and on that basis allege, that consumers were on occasion misled into paying more for Defendants' products than they would have paid for identical products sold by other merchants.

97.   Defendants' decision to advertise a price which did not actually exist was likely to deceive consumers by representing that the marketplace had assigned a retail price to that product, and that Defendants' discount off that retail price made Defendants' price attractive.  Defendants' representation of the "Compare At" price as an actual price being charged for that product was unlawful, unfair, and/or fraudulent.

98.   Defendants knew or should have known that creating either a fictitious or inflated "Compare At" price to create either a fictitious or inflated discount or savings, was unlawful.

99.   The use of the phrase "Compare At" by Defendants on the price tags of the products sold in their California TJ Maxx stores constituted the dissemination of untrue, deceptive and/or misleading statements to consumers about the prices of the products so listed as compared with the prices offered by other merchants for the same products.  Defendants knew, or by the exercise of reasonable care should have known, that those statements were untrue, deceptive, and/or misleading.  Each such statement constitutes, and has constituted, a separate violation of California Business & Professions Code §17500.  Each such statement also violates, and has violated, California Civil Code §1750(a)(13).

COMPLAINT

100.    Plaintiffs, individually and on behalf of all others similarly situated, seek restitution and injunctive relief under the UCL, FAL and CLRA to stop Defendants' pervasive and rampant false and misleading advertising and marketing campaign.

## PLAINTIFFS' PURCHASES

101.    Plaintiffs purchased numerous products throughout the Class Period from Defendant's TJ Maxx stores in Palm Desert and Westlake Village, California, in reliance on Defendants' false advertising and false price comparisons, which they would not otherwise have purchased but for Defendants' false, deceptive and/or misleading advertising, and false, deceptive and/or misleading price comparison scheme as described herein.

**Plaintiff CHESTER's Purchases**:

102.    For example, and without limitation, in or about June 2015, CHESTER purchased 2 Jessica Simpson handbags from Defendants' Palm Desert, California, TJ Maxx store for $24.99 each, for a total payment, including sales tax, of $53.98.  Each handbag purchased by CHESTER was advertised with a price tag which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price – which stated "Compare At $48.00 +UP."  Each handbag also had attached to it a purportedly original price tag which listed a purported original, or "MSRP," price of "$68.00."

103.    CHESTER is informed and believes, and on that basis alleges, that the comparative prices of "$48.00" and "$68.00" were not true, bona fide reference prices as discussed herein – i.e., that they did not represent then prevailing retail prices in the marketplace for those handbags.

104.    When CHESTER shopped at Defendants' Palm Desert, California, store, she was exposed to, saw, believed, and relied on Defendants' "Compare At" price advertising.

105.    When CHESTER shopped at Defendants' Palm Desert, California, store, she was unaware of Defendants' definition or interpretation of the "Compare At" price found on Defendants' website.  Defendants failed to disclose their definition or interpretation to CHESTER or any other Class Member.

106.    The comparison prices on the items purchased by CHESTER at Defendants' Palm Desert, California, TJ Maxx store, and the corresponding price reductions and/or savings, were false, misleading and/or deceptive.

107.    CHESTER is informed and believes, and on that basis alleges, that the prevailing retail prices for the items that she purchased from Defendants were materially lower than the "Compare At" prices advertised by Defendants.  CHESTER reasonably believed that the "Compare At" prices associated with the items that she purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  She reasonably believed that the "Compare At" prices were the prices she would pay for those items at other retailers in her general area.  CHESTER did not interpret the "Compare At" prices provided by Defendants to be the prices of "comparable" items, for any of the items that she purchased.  CHESTER would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

**Plaintiff FRIEDMAN's Purchases**:

108.    On October 18, 2014, FRIEDMAN purchased, among other things, numerous items of men's clothing from Defendants' Westlake Village, California, TJ Maxx store for prices ranging from $5.99 to $49.99.  Each item purchased by FRIEDMAN was advertised with a price tag which

contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.  For example, and without limitation, one item of clothing that FRIEDMAN purchased had a price tag which listed a selling price of "$5.99," and which also stated "Compare At $10.00."

109.   FRIEDMAN is informed and believes, and on that basis alleges, that the comparative price of "$10.00" was not a true, bona fide reference price as discussed herein – i.e., that it did not represent the then prevailing retail price in the marketplace for the item advertised.

110.   By way of additional example, and without limitation, on July 3, 2015, FRIEDMAN purchased 13 items from Defendants' Westlake Village, California, TJ Maxx store with prices ranging from $2.99 to $10.00.  Each item purchased by FRIEDMAN on July 3, 2015, was advertised with a price tag which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.  For example, and without limitation, one item of clothing that FRIEDMAN purchased had a price tag which listed a selling price of "$6.99," and which also stated "Compare At $14.00."

111.   FRIEDMAN is informed and believes, and on that basis alleges, that the comparative price of "$14.00" was not a true, bona fide reference price as discussed herein – i.e., that it did not represent the then prevailing retail price in the marketplace for the item advertised.

112.   When FRIEDMAN shopped at Defendants' Westlake Village, California, store, he was exposed to, saw, believed, and relied on Defendants' "Compare At" price advertising.

COMPLAINT

113.   When FRIEDMAN shopped at Defendants' Westlake Village, California, store, he was unaware of Defendants' definition or interpretation of the "Compare At" price found on Defendants' website.  Defendants failed to disclose their definition or interpretation to FRIEDMAN or any other Class Member.

114.   The comparison prices on the items purchased by FRIEDMAN at Defendants' Westlake Village, California, TJ Maxx store, and the corresponding price reductions and/or savings, were false, misleading and/or deceptive.

115.   FRIEDMAN is informed and believes, and on that basis alleges, that the prevailing retail prices for the items that he purchased from Defendants were materially lower than the "Compare At" prices advertised by Defendants. FRIEDMAN reasonably believed that the "Compare At" prices associated with the items that he purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  He reasonably believed that the "Compare At" prices were the prices he would pay for those items at other retailers in his general area.  FRIEDMAN did not interpret the "Compare At" prices provided by Defendants to be the prices of "comparable" items, for any of the items that he purchased.  FRIEDMAN would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein

116.   In addition to FRIEDMAN's purchases described herein, FRIEDMAN made numerous other purchases of products from Defendant's Westlake Village, California, TJ Maxx store throughout the Class Period.  With respect to each such purchase, including the purchases described herein, FRIEDMAN purchased those products from Defendants after viewing and relying on Defendants' advertising which included the false, deceptive, and/or

COMPLAINT

misleading comparison prices discussed herein placed on the price tags of the items which he purchased.  FRIEDMAN is informed and believes, and on that basis alleges, that the comparison prices, and the corresponding price reductions and/or savings, were false, misleading and/or deceptive.  FRIEDMAN is further informed and believes, and on that basis alleges, that the prevailing retail prices for the items that he purchased from Defendants were materially lower than the "Compare At" prices advertised by Defendants.  FRIEDMAN reasonably believed that the "Compare At" prices associated with the items that he purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  He reasonably believed that the "Compare At" prices were the prices he would pay for those items at other retailers in his general area.  FRIEDMAN did not interpret the "Compare At" prices provided by Defendants to be the prices of "comparable" or "similar" items, for any of the items that he purchased.  FRIEDMAN would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

## CLASS ACTION ALLEGATIONS

117.   Plaintiffs brings this action on behalf of themselves and on behalf of all other persons similarly situated (the "Class" or "Class Members"), namely:

> All persons who, while in the State of California, and between July 17, 2011, and the present (the "Class Period"), purchased from TJ MAXX one or more items at any TJ MAXX store in the State of California with a price tag that contained a "Compare At" price which was higher than the price listed as the TJ MAXX sale price on the price tag, and who have not received a refund or credit for their purchase(s).  Excluded from the Class are Defendants, as well as Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any Defendant.

118.   Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection

with their motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

119. Each member of the proposed Class herein has been exposed to Defendants' false and/or misleading pricing and advertising scheme.

120. Plaintiffs are and have been members of the proposed Class described herein.

121. The number of persons in the proposed Class herein is so numerous that joinder of all such persons would be impracticable.  While the exact number and identities of all such persons are unknown to Plaintiffs at this time and can only be obtained through appropriate discovery, Plaintiffs are informed and believe, and on that basis allege, that the proposed Class herein includes over 100,000 persons.

122. Common questions of law and/or fact exist in this case with respect to the proposed Class which predominate over any questions affecting only individual members of the Class, which do not vary between members thereof, and which drive the resolution of the claims of each Plaintiff and all other Class Members.

123. The common questions of law and/or fact include, but are not limited to:

    a.  Whether a reasonable consumer would interpret the phrase "Compare At" as Defendants interprets it;

    b.  Whether the phrase "Compare At" is susceptible to more than one reasonable interpretation;

    c.  Whether the phrase "Compare At" is misleading and/or deceptive;

    d.  Whether, during the Class Period, Defendants used false and/or misleading "Compare At" prices on the price tags of items sold in their California TJ Maxx stores, and whether Defendants falsely advertised comparative price discounts for their merchandise;

e. Whether, during the Class Period, the "Compare At" prices advertised by Defendants were in fact the prevailing market prices for the respective identical items sold by other retailers in the marketplace at the time of the dissemination and/or publication of the advertised "Compare At" prices;

f. Whether Defendants' price-comparison advertising scheme was false, deceptive or misleading within the meaning of the UCL, FAL, and/or CLRA;

g. Whether Defendants made false, deceptive or misleading statements in their advertisements;

h. Whether Defendants' comparative price advertising as described herein was likely to deceive a reasonable consumer and/or members of the public;

i. Whether Defendants' comparative pricing on their "Compare At" price tags would be material to a reasonable consumer's purchasing decisions;

j. How to calculate the prevailing market prices for products sold in Defendants' California TJ Maxx stores;

k. Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices under California law;

l. Whether Defendants misrepresented and/or failed to disclose material facts about their product pricing and discounts;

m. Whether Defendants have made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

n. Whether Defendants' conduct, as alleged herein, was intentional and knowing;

COMPLAINT

o.  Whether Class Members are entitled to damages and/or restitution; and, if so, what amount of revenues and/or profits Defendants received, and what amount of money is and/or was lost by Class Members as a result of the conduct alleged herein; and,

p.  Whether Defendants continue to use false, misleading and/or illegal price comparisons such that an injunction is necessary.

124.  Plaintiffs' claims and those of all other Class Members arise out of a common course of conduct by Defendants.

125.  All Class Members, including Plaintiffs, were exposed to Defendants' misrepresentations or omissions of material fact claiming that their "Compare At" prices were accurate bona fide comparison prices.  Due to the scope and extent of Defendants' consistent false, deceptive and/or misleading price advertising scheme, disseminated in a massive, years-long campaign to California consumers via false, deceptive and/or misleading "Compare At" prices placed on the price tags of the products sold in their California TJ Maxx stores, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all Class Members.  In addition, it can be reasonably presumed that all Class Members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendants' false comparative price advertising scheme when purchasing merchandise at each and any of Defendants' TJ Maxx stores in California.

126.  The common questions of law and/or fact in this case are susceptible to common proof.

127.  Resolution of the common questions of law and/or fact in this case will resolve issues that are central to the claims of each Plaintiff and all other Class Members.

COMPLAINT

128. The claims of each Plaintiff and all Class Members involve the same untrue, deceptive, and/or misleading representations by Defendants conveyed to each Class Member by way of representations on the price tags of each product sold to each Class Member.

129. Each Class Members' claim, including those of Plaintiffs, alleges that Defendants' price tags convey an untrue, deceptive, and/or misleading representation that the price at which Defendants offered a product was lower compared to a fictitious, deceptive, or misleading "Compare At" price.

130. Common proof in this case will produce a common answer as to whether Defendants' price-comparison advertising resulted in false, deceptive, or misleading price comparisons.

131. Common proof will resolve the common questions essential to resolution of the Class claims in this case in one stroke for all Class Members.

132. The claims of the named Plaintiffs in this case are typical of, and not antagonistic to, those of the other Class Members which they seek to represent.  Plaintiffs and the Class they seek to represent have all been exposed to and deceived (or were likely to be deceived) by Defendants' false comparative price advertising scheme, as alleged herein.

133. The crux of Plaintiffs' claims - that Defendants' price tags on each item in each of their California stores convey false, deceptive, and/or misleading comparative prices as described more fully herein - is common to all Class Members.

134. Plaintiffs' claims, and those of all Class Members, are based on conduct which is not unique to either Plaintiff.

135. Plaintiffs and all Class Members have been injured by the same common course of conduct by Defendants, and have suffered the same or similar injury, as alleged herein.

COMPLAINT

136. Disposition of Plaintiffs' claims in a class action will benefit all parties and the Court.

137. A class action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented herein.

138. If individual Class Members were each required to bring his or her own individual claims, any potential recovery by any such Class Member would be dwarfed by the cost of litigating on an individual basis.

139. In this case, Plaintiffs seek to recover relatively small sums for themselves and all other Class Members.  Accordingly, the disparity between the cost of litigating individual claims and the individual recoveries sought make individual claims highly unlikely, if not impossible.  Litigation costs would render individual prosecution of Class Members' claims prohibitive.  In cases such as this, where the individual recoveries sought by each Class Member are relatively small and eclipsed by the cost of litigating an individual claim, a class action is the only method by which Class Members may hope to resolve their claims.

140. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and Class Members' claims.  Because of the relatively modest size of individual Class Members' claims, few, if any, Class Members could afford to seek legal redress of the wrongs complained of herein on an individual basis.  Absent the class action, Class Members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendants will be permitted to retain the proceeds of their misdeeds and continue their unlawful conduct.

141. The prosecution of separate actions by individual members of the proposed Class herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of the proposed Class which would or may establish incompatible standards of conduct for Defendants, and which

COMPLAINT

would also create a risk of adjudications with respect to individual members of the proposed Class herein which would, as a practical matter, be dispositive of the interests of other members of the proposed Class not parties to the particular individual adjudications, and/or would or may substantially impede or impair the ability of those other members to protect their interests.

142.   Plaintiffs are each adequate representatives of the Class because they are each members of the Class and their interests do not conflict with the interests of the Class Members they seek to represent.  Plaintiffs will fairly and adequately represent and protect the interest of the Class because their interests are not antagonistic to the Class.  Neither Plaintiff has any conflict of interest with any other Class Member.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.  Plaintiffs and their counsel will prosecute this action vigorously on behalf of the Class.

143.   Plaintiffs are informed and believe, and on that basis allege, that Defendants have one or more databases through which a significant majority of Class Members may be identified and ascertained, and that they maintain contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

144.   The definition of the proposed Class herein objectively depicts who the members of the proposed Class are, making it administratively feasible to determine whether a particular person is a Class Member.  Because the alleged misrepresentations in this case (i.e., the false, deceptive, and/or misleading comparative prices) appear on the price tags of each product purchased, there is no concern that the Class may include individuals who were not exposed to Defendants' misrepresentations.

- 31 -
COMPLAINT

# FIRST CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES

(California Business & Professions Code §17200 *et seq*.)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public)

145. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 144 of this Complaint.

146. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

147. Advertising or promotional practices are unlawful under the UCL if members of the public are likely to be deceived by them.

148. Defendants have violated the "unfair" prong of the UCL by representing false comparative prices and corresponding price discounts and/or savings for merchandise where Defendants, in fact, inflated, estimated, or fabricated the purported "Compare At" prices for such products, and failed to disclose to consumers that such "Compare At" prices were inflated, estimated, or fabricated, such that the promised discount and/or saving was false, misleading and/or deceptive.

149. These acts and practices were unfair because they caused Plaintiffs, and were likely to cause reasonable consumers, to falsely believe that Defendants are, and have throughout the Class Period been, offering value, discounts or bargains from the prevailing market price, value or worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception has

COMPLAINT

1   induced reasonable purchasers, including Plaintiffs, to buy such products,
2   which they otherwise would not have purchased.

3   150.   Plaintiffs and all other Class Members were likely to be deceived by
4   Defendants' use of the phrase "Compare At" on the price tags of
5   merchandise at TJ Maxx stores in California.

6   151.   In deciding to purchase merchandise at Defendants' TJ Maxx stores,
7   Plaintiffs each relied on Defendants' misleading and deceptive
8   representations regarding supposed "Compare At" prices.  The comparative
9   "Compare At" prices placed by Defendants on the price tags of merchandise
10   at TJ Maxx stores in California played a substantial role in each Plaintiff's
11   decisions to purchase the products they purchased from Defendants, and
12   Plaintiffs would not have purchased those items in the absence of
13   Defendants' misrepresentations.  Accordingly, Plaintiffs have each suffered
14   monetary loss as a direct result of Defendants' unlawful practices described
15   herein.

16   152.   The gravity of the harm to Class Members resulting from these unfair acts
17   and practices outweighed any conceivable reasons, justifications and/or
18   motives of Defendants for engaging in such deceptive acts and practices.  By
19   committing the acts and practices alleged above, Defendants engaged in
20   unfair business practices within the meaning of California Business &
21   Professions Code §17200, *et seq.*

22   153.   Through their unfair acts and practices, Defendants have improperly
23   obtained money from each Plaintiff and all other Class Members.  As such,
24   Plaintiffs request that this Court cause Defendants to restore this money to
25   Plaintiffs and all Class Members, and to enjoin Defendants from continuing
26   to violate the UCL as discussed herein and/or from violating the UCL in the
27   future.  Otherwise, Plaintiffs, the Class and members of the general public

28

- 33 -

COMPLAINT

1    may be irreparably harmed and/or denied an effective and complete remedy

2    if such an order is not granted.

3    ## SECOND CAUSE OF ACTION

4    ## FRAUDULENT BUSINESS PRACTICES

5    (California Business & Professions Code §17200 *et seq.*)

6    (By Plaintiffs on behalf of themselves and all others similarly situated, and the

7    general public)

8    154.   Plaintiffs re-allege and incorporate by reference, as though fully set forth

9    herein, paragraphs 1 through 153 of this Complaint.

10   155.   A business act or practice is "fraudulent" under the UCL if it is likely to

11   deceive members of the consuming public.

12   156.   Defendants' false comparative prices, including, but not limited to, their

13   "Compare At" prices placed on the price tags of the products sold in

14   California TJ Maxx stores, were "fraudulent" within the meaning of the

15   UCL because they deceived Plaintiffs, and were likely to deceive reasonable

16   consumers and Class Members, into believing that Defendants were offering

17   value, discounts or bargains from the prevailing market price, value or worth

18   of the products sold that did not, in fact, exist.  As a result, purchasers,

19   including Plaintiffs, reasonably perceived that they were receiving products

20   that regularly sold in the retail marketplace at substantially higher prices

21   (and were, therefore, worth more) than what they paid.  This perception

22   induced reasonable purchasers, including Plaintiffs, to buy such products

23   from Defendants' TJ Maxx stores in California, which they otherwise would

24   not have purchased.

25   157.   Defendants' acts and practices as described herein have deceived Plaintiffs

26   and were highly likely to deceive reasonable members of the consuming

27   public.  Specifically, in deciding to purchase merchandise at Defendants' TJ

28   Maxx stores, each Plaintiff relied on Defendants' misleading and deceptive

representations regarding their supposed "Compare At" prices.  The comparative "Compare At" prices placed by Defendants on the price tags of merchandise at TJ Maxx stores in California played a substantial role in each Plaintiff's decision to purchase those products, and Plaintiffs would not have purchased those items in the absence of Defendants' misrepresentations.  Accordingly, each Plaintiff has suffered monetary loss as a direct result of Defendants' unlawful practices described herein.

158.  As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs and all other Class Members.  Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained absent their false, misleading and/or deceptive conduct.

159.  Through their fraudulent acts and practices, Defendants have improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all Class Members, and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiffs, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**THIRD CAUSE OF ACTION**

**UNLAWFUL BUSINESS PRACTICES**

(California Business & Professions Code §17200 *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public)

160.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 159 of this Complaint.

161. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

162. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. §52(a)).

163. Cal. Civ. Code §1770(a)(13), prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

164. Defendants' use of and reference to materially false "Compare At" prices on the price tags of merchandise sold to consumers in California TJ Maxx stores violated and continues to violate the FTCA, 15 U.S.C. §45(a)(1) and 15 U.S.C. §52(a), as well as FTC Price Guides. It also violated and continues to violate Cal. Bus. & Prof. Code §§17200 and 17501, and Cal. Civ. Code §1770(a)(13), by advertising false comparative prices that were, in fact, not the prevailing market prices at other retailers in the marketplace at the time of the publication.

165. As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs and other Class Members. Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained absent their false, misleading and deceptive conduct.

166. Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiffs and all other Class Members. As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all Class Members, and to enjoin Defendants from continuing to violate the UCL, and/or from violating the UCL in the future. Otherwise, Plaintiffs, the Class and members of the general public may be irreparably

harmed and/or denied an effective and complete remedy if such an order is not granted.

## FOURTH CAUSE OF ACTION

## FALSE ADVERTISING

(California Business & Professions Code §17500 *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public)

167.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 166 of this Complaint.

168.   The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value and former price.

169.   The FAL makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

170.   Defendants' practice of disseminating allegedly comparative "Compare At" prices associated with apparel and other merchandise, which were materially greater than the true prevailing prices of those products, and/or not true comparative prices for those products, as alleged more fully herein, was an unfair, deceptive and misleading advertising practice because it gave the false impression that the products sold by Defendants regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than they actually were.  In fact, the apparel and other merchandise sold by Defendants at TJ Maxx stores in California did not have a prevailing market price close to the "Compare At" prices advertised.

171.   Defendants' practice of disseminating reference prices they allege to be prices of comparable or similar products, without disclosing to consumers that their "Compare At" prices were meant to be prices of comparable or

similar products, was misleading to Plaintiffs and all other Class Members. Defendants knew, or by the exercise of reasonable care should have known, that reasonable consumers, such as Plaintiffs, would not interpret the statement "Compare At" to be a reference to a comparable or similar product.

172. On each day throughout the Class Period, Defendants, with the intent to induce members of the public to purchase products offered at California TJ Maxx stores, made or caused to be made each of the untrue and/or misleading statements, claims, and/or representations described herein.

173. On each day throughout the Class Period, Defendants, with the intent to induce members of the public to purchase products offered at California TJ Maxx stores, made or caused to be made untrue and/or misleading claims to consumers throughout California including, but not limited to, the following claims with respect to products offered for sale at California TJ Maxx stores:

   a. That when other merchants offered an identical product for sale, Defendants had previously ascertained and/or determined the price at which those merchants typically offered that identical product for sale.

   b. That the "Compare At" price for a product was the price at which other merchants typically offered that identical product for sale.

   c. That Defendants' sale price for a product was lower than the price at which other merchants typically offered that identical product for sale.

   d. That Defendants' sale price for a product was a discount from the price at which other merchants typically offered that identical product for sale.

   e. That Defendants had previously sold that product at the "Compare At" price advertised for that product.

COMPLAINT

    f. That the advertised "retail" price, "suggested retail" price, or "MSRP," for a product was the price at which other merchants typically offered that identical product for sale.

174. Defendants knew, or by the exercise of reasonable care should have known, that these claims were untrue and/or misleading.

175. In addition to the allegations made above, each of Defendants' statements, claims, and/or representations described herein were untrue and/or misleading because, among other things:

    a. Defendants set "Compare At" prices without ascertaining and/or determining the prices at which other merchants typically sold the identical products;

    b. Defendants' "Compare At" prices were fictitious, having been based on something other than the prices at which other merchants typically sold those identical products;

    c. Defendants' "Compare At" prices were calculated by using the highest sales price at which another merchant was offering, or had offered, the identical product for sale, instead of the price at which other merchants typically offered that product for sale to consumers;

    d. A reasonable consumer would not interpret the phrase "Compare At" the way Defendant interprets it; and/or

    e. Defendants' "Compare At" prices were higher than the lowest price at which a consumer would commonly be able to purchase the identical product at a retail establishment in the consumer's area, and:

        i. Defendants knew that the "Compare At" price was higher than the lowest price at which a consumer would commonly be able to purchase the identical product at a retail establishment in the consumer's area; or

ii.  Defendants did not know whether merchants were typically offering the product for sale at the "Compare At" price.

176.  When Defendants made or caused to be made the untrue and/or misleading claims, statements, and/or misrepresentations described herein to consumers in California, Defendants failed to adequately disclose the facts pleaded herein.

177.  Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all Class Members, and to enjoin Defendants from continuing to violate the FAL, and/or from violating the FAL in the future.  Otherwise, Plaintiffs, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

(California Civil Code §1750 *et seq*.)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public)

178.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 177 of this Complaint.

179.  On each day throughout the Class Period, Defendants, with the intent to induce members of the public to purchase products offered at their California TJ Maxx stores, made or caused to be made false and/or misleading claims to consumers throughout California including, but not limited to, the following claims with respect to products offered for sale at their California TJ Maxx stores:

COMPLAINT

a.   The existence and/or amounts of the price reductions represented by the difference between the "Compare At" price and Defendants' sale price; and,

b.   The existence and/or amount of the savings to a consumer purchasing a particular product from Defendants instead of another merchant represented by the difference between the "Compare At" price and Defendants' sale price.

180.   Plaintiffs and each Class Member are "consumers" within the meaning of Civil Code §1761(d).

181.   Defendants' sale of merchandise at its TJ Maxx stores in California to Plaintiffs and other Class Members are "transactions" within the meaning of Civil Code §1761(e).

182.   The merchandise purchased by Plaintiffs and other Class Members at Defendants' TJ Maxx stores in California throughout the Class Period are "goods" within the meaning of Civil Code §1761(a).

183.   Defendants have engaged in unfair methods of competition, and/or unfair and/or deceptive acts or practices against Plaintiffs and other Class Members, in violation of the CLRA, by making false and/or misleading statements of fact concerning the reasons for, the existence of, and/or the amount(s) of price reductions for products sold to Plaintiffs and other Class Members at California TJ Maxx stores throughout the Class Period. Defendants provided a false and/or misleading "Compare At" price on the price tags of the items sold in California TJ Maxx stores, and compared that false and/or misleading comparative price to the price at which Defendants sold the items, to give the illusion to consumers that they were receiving a discount, or achieving a saving or bargain when compared to the purchase of those same items at other retailers in the consumer's area.  The promised discounts, savings, and/or bargains, however, were false.

COMPLAINT

184.   The price reductions alleged by Defendants to be the difference between the "Compare At" prices and Defendants' sale prices did not exist, and were false and/or misleading.

185.   Defendants' acts and/or practices described herein are in violation of Civil Code §1770(a)(13).

186.   As a result of Defendants' acts and/or practices described herein, Plaintiffs and other Class Members have been damaged in that Defendants' unlawful, false and/or misleading acts and/or practices described herein played a substantial and material role in each Plaintiff's and other Class Members' decisions to purchase products at Defendants' TJ Maxx stores in California. Absent these acts and/or practices, Plaintiffs and other Class Members would not have purchased the products that they did from Defendants.

187.   Pursuant to California Civil Code §1780(a)(2), Plaintiffs, on behalf of themselves and all other Class Members, request that this Court enjoin Defendants from continuing to engage in the unlawful and deceptive methods, acts and/or practices alleged herein.  Unless Defendants are permanently enjoined from continuing to engage in such violations of the CLRA, California consumers will continue to be damaged by Defendants' acts and/or practices in the same way as those acts and/or practices have damaged Plaintiffs and other Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all Class Members, prays for judgment against Defendants as follows:

## **CLASS CERTIFICATION**

1.   An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Class Counsel.

COMPLAINT

**VIOLATION OF BUSINESS & PROFESSIONS CODE §§17200 *et seq*., and 17500 *et seq*.:**

2.     A judgment awarding Plaintiffs and all Class Members restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class as a result of the unlawful, unfair and/or fraudulent business practices described herein.

3.     An order enjoining Defendants from continuing to violate the UCL and/or FAL as described herein, and/or an order enjoying Defendants from violating the UCL and/or FAL in the future.

4.     A judgment awarding Plaintiffs their costs of suit, including reasonable attorneys' fees pursuant to Code of Civil Procedure §1021.5 and as otherwise permitted by statute or law, and pre- and post-judgment interest; and,

5.     For such other and further relief as the Court may deem proper.

**VIOLATION OF CIVIL CODE §1770:**

6.     An order enjoining Defendants from continuing to violate the CLRA as described herein, and/or an order enjoying Defendants from violating the CLRA in the future;

7.     A judgment awarding Plaintiffs their costs of suit, including reasonable attorneys' fees pursuant to Civil Code §1780(d) and as otherwise permitted by statute, and pre- and post-judgment interest; and,

8.     For such other and further relief as the Court may deem proper.

/ / /

/ / /

/ / /

/ / /

/ / /

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiffs hereby demand a trial by jury for all claims so triable.

3

4

5   Dated: July 17, 2015                    By:

6

7      _____

8                 CHRISTOPHER J. MOROSOFF,
         LAW OFFICE OF CHRISTOPHER J. MOROSOFF

9         Attorneys for Plaintiffs STACI CHESTER and
         DANIEL FRIEDMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 44 -
COMPLAINT