Greg K. Hafif, Esq. (SBN 149515)
Michael G. Dawson, Esq. (SBN 150385)
LAW OFFICE OF HERBERT HAFIF
269 W. Bonita Avenue
Claremont, California 91711
(909) 624-1671 - phone; (909) 625-7772 - fax
Email: ghafif@hafif.com

Douglas Caiafa, Esq. (SBN 107747)
DOUGLAS CAIAFA, A Professional Law Corp.
11845 West Olympic Boulevard, Suite 1245
Los Angeles, California 90064
(310) 444-5240 - phone; (310) 312-8260 – fax
Email: dcaiafa@caiafalaw.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
77-760 Country Club Drive, Suite G
Palm Desert, California 92211
(760) 469-5986 - phone; (760) 345-1581 - fax
Email: cjmorosoff@morosofflaw.com

Attorneys for Plaintiffs STACI CHESTER, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| IN RE THE TJX COMPANIES, INC. | ) CASE NO.: 5:15-cv-01437-DDP-DTB<br>)<br>) CONSOLIDATED AMENDED CLASS<br>) ACTION COMPLAINT<br>)<br>)<br>) 1. UNFAIR BUSINESS PRACTICES;<br>) 2. FRAUDULENT BUSINESS<br>)    PRACTICES;<br>) 3. UNLAWFUL BUSINESS<br>)    PRACTICES;<br>) 4. FALSE ADVERTISING; and,<br>) **5.** VIOLATION OF CALIFORNIA<br>)    CONSUMER LEGAL REMEDIES<br>)    ACT |

| | |
|---|---|
| 1 | STACI CHESTER and DANIEL ) |
| 2 | FRIEDMAN, individually and on behalf ) |
| | of all others similarly situated, ) |
| 3 | ) |
| | ) |
| 4 | Plaintiffs, ) |
| | vs. ) |
| 5 | ) |
| 6 | THE TJX COMPANIES, INC., a ) |
| | Delaware corp.; T.J. MAXX OF CA, ) |
| 7 | LLC, a Delaware LLC; and DOES 1 ) |
| 8 | through 100, inclusive, ) |
| | ) |
| 9 | Defendants. ) |
| 10 | _____ ) |
| | ROBIN BERKOFF, individually and on ) |
| 11 | behalf of all others similarly situated, ) |
| 12 | ) |
| | Plaintiff, ) |
| 13 | vs. ) |
| 14 | ) |
| 15 | THE TJX COMPANIES, INC., a ) |
| | Delaware corp.; MARSHALLS OF CA, ) |
| 16 | LLC, a Delaware LLC; and DOES 1 ) |
| | through 100, inclusive, ) |
| 17 | ) |
| 18 | Defendant. ) |
| 19 | _____ ) |
| | THERESA METOYER and ROBIN ) |
| 20 | BERKOFF, individually and on behalf ) |
| | of all others similarly situated, ) |
| 21 | ) |
| 22 | Plaintiffs, ) |
| | vs. ) |
| 23 | ) |
| 24 | THE TJX COMPANIES, INC., a ) |
| | Delaware corp.; HOMEGOODS, INC., ) |
| 25 | a Delaware corp.; and DOES 1 through ) |
| 26 | 100, inclusive, ) |
| 27 | ) |
| | Defendants. ) |
| 28 | |

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

This Consolidated Amended Class Action Complaint ("Complaint") is brought by individual consumers in California against three (3) separate but related retailers – TJ Maxx, Marshalls, and Home Goods – for using false, deceptive, or misleading comparative reference prices on the price tags of the products sold in their California stores. Unless otherwise indicated, each allegation in this Complaint is made against, and in relation to, each defendant named herein.

Plaintiffs STACI CHESTER ("CHESTER"), DANIEL FRIEDMAN ("FRIEDMAN"), THERESA METOYER ("METOYER") and ROBIN BERKOFF ("BERKOFF") (collectively referred to herein as "Plaintiffs"), individually and on behalf of all others similarly situated (collectively referred to as "Class Members" or "Subclass Members"), bring this consolidated action against all Defendants pursuant to agreement of the parties and order of the Court, and for causes of action against Defendants and each of them, based upon personal knowledge, information and belief, and investigation of their counsel, allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) (the Class Action Fairness Act of 2005 ("CAFA")) because the amount in controversy with respect to each subclass proposed herein exceeds the value of $5,000,000, exclusive of interest and costs, because each subclass consists of 100 or more putative Subclass Members, and because at least one putative Subclass Member in each subclass is diverse from each Defendant herein: THE TJX COMPANIES, INC. ("TJX"), a Delaware corporation with its principal place of business in Framingham, Massachusetts; T.J. MAXX OF CA, LLC ("MAXX"), a Delaware limited liability company with its principal place of business in Framingham, Massachusetts; MARSHALLS OF CA, LLC ("MARSHALLS"), a Delaware limited liability company with its principal place of business in Framingham, Massachusetts; and, HOMEGOODS, INC. ("HOMEGOODS"), a Delaware corporation with its

- 1 -
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

principal place of business in Framingham, Massachusetts.  (TJX, MAXX, MARSHALLS, and HOME GOODS are collectively referred to herein as "Defendants.").

2.     This is a civil action brought under and pursuant to California Business & Professions Code §17200, *et seq*. (the Unfair Competition Law or "UCL"), California Business & Professions Code §17500, *et seq*. (the False Advertising Law or "FAL"), and California Civil Code §1750, *et seq*. (the California Consumer Legal Remedies Act or "CLRA").

3.     Venue is proper in the Eastern Division of the Central District of California because Defendants transact a substantial amount of business in this District, Plaintiffs CHESTER, BERKOFF, and METOYER reside in Riverside County, California, and the transactions which form the basis of Plaintiffs' claims against Defendants occurred in Riverside County, California.

4.     The Central District of California has personal jurisdiction over the Defendants named in this action because Defendants are corporate business entities authorized to do business in the State of California, and licensed by the California Secretary of State to do business in the State of California. Each Defendant has sufficient minimum contacts in California.  Defendants have otherwise intentionally availed themselves of the California market through the ownership and operation of over 300 retail stores within the State of California, such that the exercise of jurisdiction over Defendants by the California courts is consistent with traditional notions of fair play and substantial justice.

5.     Defendants transact business within the county of Riverside, and elsewhere throughout the State of California.  The violations of law alleged herein have been carried out within the County of Riverside and throughout the State of California.

/ / /

## INTRODUCTION

6. A product's regular price, the price at which a product generally sells for in the marketplace, matters to consumers. The price that a product generally sells for in the marketplace provides important information to consumers about the product's worth and the prestige that ownership of that product conveys. Many retailers these days use comparative reference prices to assure their customers that their sale prices are lower than the prices their products regularly sell for in the marketplace.

7. This is a case about one of the nation's largest retailers, TJX, using deceptive comparative prices at each of its wholly-owned retail department stores to trick its customers into mistakenly believing that the sale prices of products at TJ Maxx, Marshalls, and HomeGoods stores in California are significantly lower than the regular prices of those products at other retailers in California. Plaintiffs are typical reasonable American consumers who, like all reasonable consumers, are motivated by the promise of a good deal. MAXX, MARSHALLS and HOME GOODS are wholly owned subsidiaries of TJX, and are each large national retailers that make enormous profits by promising consumers a good deal. Defendants own and operate a chain of so called "off-price" department stores in California known respectively as TJ Maxx, Marshalls, and HomeGoods stores. Plaintiffs occasionally shop at Defendants' stores because of Defendants' promise that they can get name brand products for significant discounts off department store prices. Defendants support that promise with price tags on each item in each store which feature Defendants' selling prices alongside much higher supposedly comparative prices. The comparative prices assure consumers like Plaintiffs that they are receiving an exceptionally good deal and saving a specific dollar amount equal to the difference between the two prices. Defendants' price tags, identical in all material respects at each store irrespective of the

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

name of the store, deceptively instruct customers to "compare" the sale prices of Defendants' products to these higher comparative reference prices. The comparative prices, however, are deceptive. They are not true, bona fide, or properly substantiated comparative prices. They are not what typical, reasonable consumers, like Plaintiffs, think they are. According to Defendants, the comparative reference prices on their price tags are merely "estimates" of what Defendants believe "comparable" products "may" sell for at other retailers. This unintuitive description of what a "Compare At" price is, however, is not adequately disclosed to Defendants' customers at or anywhere near the comparative price representations. Plaintiffs, having been duped by Defendants' deceptive pricing practices like all other TJ Maxx, Marshalls and HomeGoods customers, bring this action against Defendants for false, deceptive and misleading advertising on behalf of themselves and all other consumers who have purchased items at TJ Maxx, Marshalls and HomeGoods stores in California throughout the period from July 17, 2011, to the present (the "Class Period").

## PARTIES

8. **TJ Maxx customer** and Plaintiff CHESTER is, and at all times relevant hereto has been, an individual and a resident of Riverside County, California. On at least 2 occasions throughout the Class Period, CHESTER purchased products from the Palm Desert, California, TJ Maxx store which were falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices. The marked "Compare At" prices for the products which CHESTER purchased from Defendants were not actual prices at which substantial and significant sales of those products were made at other principal retail outlets in California. CHESTER purchased products from Defendants throughout the Class Period in reliance on Defendants' false, deceptive and misleading advertising, marketing and

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

pricing schemes, which she would not otherwise have purchased absent Defendants' deceptive advertising and pricing scheme, and CHESTER has lost money and/or property, and has been damaged as a result.  CHESTER is a reasonable consumer.

9. **TJ Maxx customer** and Plaintiff FRIEDMAN is, and at all times relevant hereto has been, an individual and a resident of Los Angeles County, California.  On over 10 occasions throughout the Class Period, FRIEDMAN purchased products from the Westlake Village, California, TJ Maxx store which were falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices.  The marked "Compare At" prices for the products which FRIEDMAN purchased from Defendants were not actual prices at which substantial and significant sales of those products were made at other principal retail outlets in California. FRIEDMAN purchased products from Defendants throughout the Class Period in reliance on Defendants' false, deceptive and misleading advertising, marketing and pricing schemes, which he would not otherwise have purchased absent Defendants' deceptive advertising and pricing scheme, and FRIEDMAN has lost money and/or property, and has been damaged as a result.  FRIEDMAN is a reasonable consumer.

10. **Marshalls and HomeGoods customer** and Plaintiff BERKOFF is, and at all times relevant hereto has been, an individual and a resident of Riverside County, California.  On over 5 occasions throughout the Class Period, BERKOFF purchased products from the Palm Desert and La Quinta, California, Marshalls stores which were falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices.  In addition, on over 10 occasions throughout the Class Period, BERKOFF purchased products from the Palm Desert and Bermuda Dunes, California, HomeGoods stores which were falsely, deceptively, and/or

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

misleadingly labeled with false, deceptive, and/or misleading, comparative prices.  The marked "Compare At" prices for the products which BERKOFF purchased, both at Marshalls and HomeGoods, were not actual prices at which substantial and significant sales of those products were made at other principal retail outlets in California.  BERKOFF purchased products from Defendants throughout the Class Period in reliance on Defendants' false, deceptive and misleading advertising, marketing and pricing schemes, which she would not otherwise have purchased absent Defendants' deceptive advertising and pricing scheme, and BERKOFF has lost money and/or property, and has been damaged as a result.  BERKOFF is a reasonable consumer.

11.    **HomeGoods customer** and Plaintiff METOYER is, and at all times relevant hereto has been, an individual and a resident of Riverside County, California.  On over 10 occasions throughout the Class Period, METOYER purchased products from the Mira Loma, California, HomeGoods store which were falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices.  The marked "Compare At" prices for the products which METOYER purchased from HomeGoods were not actual prices at which substantial and significant sales of those products were made at other principal retail outlets in California. METOYER purchased products from Defendants throughout the Class Period in reliance on Defendants' false, deceptive and misleading advertising, marketing and pricing schemes, which she would not otherwise have purchased absent Defendants' deceptive advertising and pricing scheme, and METOYER has lost money and/or property, and has been damaged as a result.  METOYER is a reasonable consumer.

12.    Defendant TJX is a Delaware corporation, organized under the laws of the state of Delaware, which conducts substantial business on a regular and

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1   continuous basis in the state of California.  TJX's principal place of business
2   is in Framingham, Massachusetts.

3   13.   Defendant MAXX is a Delaware limited liability company, organized under
4       the laws of the state of Delaware, which conducts substantial business on a
5       regular and continuous basis in the state of California.  MAXX's principal
6       place of business is in Framingham, Massachusetts.

7   14.   Defendant MARSHALLS is a Delaware limited liability company,
8       organized under the laws of the state of Delaware, which conducts
9       substantial business on a regular and continuous basis in the state of
10      California.  MARSHALLS's principal place of business is in Framingham,
11      Massachusetts.

12  15.   Defendant HOMEGOODS is a Delaware corporation, organized under the
13      laws of the state of Delaware, which conducts substantial business on a
14      regular and continuous basis in the state of California.  HOMEGOODS's
15      principal place of business is in Framingham, Massachusetts.

16  16.   The true names and capacities of the Defendants named herein as DOES 1
17      through 100, inclusive, whether individual, corporate, associate or otherwise,
18      are unknown to Plaintiffs who therefore sue such Defendants under fictitious
19      names.  Plaintiffs are informed and believe, and on that basis allege, that
20      these Defendants, DOES 1 through 100, are in some manner or capacity, and
21      to some degree, legally responsible and liable for the damages of which
22      Plaintiffs complain.  Plaintiffs will seek leave of Court to amend this
23      Complaint to set forth the true names and capacities of all fictitiously-named
24      Defendants within a reasonable time after they become known.

## FACTUAL ALLEGATIONS

26  17.   During the Class Period, CHESTER bought 2 handbags from the TJ Maxx
27      store in Palm Desert, California.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

18.    During the Class Period, FRIEDMAN bought apparel and household items from the TJ Maxx store in Westlake Village, California.

19.    During the Class Period, BERKOFF bought tee shirts and other items from the Marshalls stores in Palm Desert and La Quinta, California.

20.    During the Class Period, BERKOFF also bought numerous items from the HomeGoods stores in Palm Desert and Bermuda Dunes, California, including, without limitation, home decorations, storage items, candles, and other items.

21.    During the Class Period, METOYER bought numerous items from the HomeGoods store in Mira Loma, California, including, without limitation, bath rugs, lamps, dinnerware, and other items.

22.    Plaintiffs were each lured into Defendants' stores with the promise of significant savings on name brand merchandise such as, without limitation, apparel, handbags, shoes, and bed, bath and home items.

**I.    Defendants Label Their Products With "Compare At" Reference Prices**:

23.    Each item offered for sale at TJ Maxx, Marshalls, and HomeGoods is displayed with a comparative price tag which provides 2 prices: the TJ Maxx, Marshalls, or HomeGoods sale price, and another significantly higher price described simply as the "Compare At" price.

24.    The price tags used by Defendants at TJ Maxx, Marshalls and HomeGoods stores are identical in all material respects.  They each have a sale price (i.e., a price at which the retailer is selling the item for), and a higher comparative reference price listed above the sale price accompanied by the phrase "Compare At."

25.    Consumers are not told exactly what the phrase "Compare At" means, or given any information about the comparative price other than the dollar amount and the phrase, "Compare At."  Nor are they told where Defendants

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

came up with the "Compare At" price.  They are simply presented with the 2 prices (the sale price, and the higher "Compare At" reference price), left to guess what the "Compare At" price is, and are led to believe that they are actually saving the difference between the 2 prices.

26.   In addition to Defendants' standard "Compare At" price tags, Defendants also label many of their products with a second price tag that purports to be the original price tag and which lists a manufacturer's suggested retail price, or "MSRP."

## II.   <u>Comparative Reference Prices Are Material to Consumers</u>:

27.   Defendants compare the prices of their products with higher reference prices which consumers are led to believe are the prices supposedly charged by other merchants for the same products.  Defendants label those higher comparative prices as the "Compare At" prices for those products.

28.   This type of comparison pricing, where the retailer contrasts its selling price for a product with a generally much higher reference price, has become increasingly common in the retail marketplace.

29.   Retailers, like Defendants, present these reference prices (commonly referred to as "advertised reference prices" or "ARPs") to consumers with short tag-line phrases such as "former price," "regular price," "list price," "MSRP," or "compare at."  These marketing phrases are commonly referred to as "semantic cues."

30.   Over 30 years of marketing research unanimously concludes that semantic cues presented with comparative reference prices are material to consumers.  That is, they influence consumers' purchasing decisions.

31.   For example, a well-respected and oft-cited study by Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?,* 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992), concludes that "[b]y creating an impression of savings, the presence of a higher reference price enhances

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

[consumers'] perceived value and willingness to buy [a] product."  In other words, comparative reference prices lead consumers to believe they are saving money, and increase their willingness to buy products.

32.   Numerous other consumer and marketing research studies arrive at similar conclusions.  For example, Compeau & Grewal, in *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002), conclude that "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."  They also conclude that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

33.   Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011), conclude that "[r]eference price ads strongly influence consumer perceptions of value. . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."

34.   Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003), similarly conclude that "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."

35.   The results of a study by Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Bus. Res. 1 (1990), conclude that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."  This study further concludes that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."

36.   The indisputable conclusion of decades of scholarly research concerning comparative reference prices, such as the "Compare At" reference prices used by Defendants, is that they matter – they are material to consumers.

**III.   Defendants Have a Duty to Verify Their "Compare At" Prices**:

37.   The FTC requires that "[a]dvertisers must have evidence to back up their claims ("substantiation"). . . . Before disseminating an ad, advertisers must have appropriate support for all express and implied objective claims that the ad conveys to reasonable consumers. When an ad lends itself to more than one reasonable interpretation, there must be substantiation for each interpretation. The type of evidence needed to substantiate a claim may depend on the product, the claims, and what experts in the relevant field believe is necessary."

38.   Defendants do not have sufficient evidence to substantiate the validity of their "Compare At" reference prices.

39.   The FTC Pricing Guides, 16 C.F.R. §233.2, provide rules for merchants such as Defendants that claim "to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area."

40.   The FTC Pricing Guides require that when merchants such as Defendants use advertising that compares their prices to higher comparative prices for the same merchandise, "the advertised higher price must be based on fact, and not be fictitious or misleading."  The FTC Pricing Guides further provide:

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

"Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which *substantial sales* of the article are being made in the area - that is, *a sufficient number of sales* so that a consumer would consider a reduction from the price to represent a genuine bargain or saving." (Emphasis added).

41.   Defendants thus have, and have had, a duty to provide "appropriate support" for, and "evidence to back up," their "Compare At" reference prices.

42.   Defendants have, and have had, a duty to verify that their "Compare At" reference prices do not "appreciably exceed the price at which substantial sales" of their products have been made in California.

43.   Defendants do not have such evidence, and have not in fact verified that their "Compare At" reference prices do not "appreciably exceed the price at which substantial sales" of their products have been made in California.

44.   Where the advertiser's comparison price is purportedly based on prices being charged for similar or "comparable" products, the FTC Pricing Guides require that the advertiser make "clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area."  In such a case:

"The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area."

45.   Where the advertiser's comparison price is purportedly based on a manufacturer's suggested retail price ("MSRP"), the FTC Pricing Guides provide as follows:

"Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which *a substantial*

*number of sales* of the article in question are made, the advertisement of a reduction may mislead the consumer." (Emphasis added).
. . .

"[t]he widespread failure to observe manufacturer's suggested or list prices, and the advent of retail discounting on a wide scale, have seriously undermined the dependability of list prices as indicators of the exact prices at which articles are in fact generally sold at retail. . . . Today, only in the rare case are all sales of an article at the manufacturer's suggested retail or list price."

46.  According to the FTC Pricing Guides, an advertised MSRP:

"[w]ill not be deemed fictitious if it is the price at which *substantial (that is, not isolated or insignificant) sales* are made in the advertiser's trade area (the area in which he does business). Conversely, if the list price is significantly in excess of the highest price at which *substantial sales* in the trade area are made, there is a clear and serious danger of the consumer being misled by an advertised reduction from this price. . . . [B]efore advertising a manufacturer's list price as a basis for comparison with his own lower price, the retailer should ascertain whether the list price is in fact the price regularly charged by principal outlets in his area." (Emphasis added.).

47.  The FTC concludes, in its Pricing Guides, that advertising an MSRP as a comparative reference price is "deceptive" if only "an insubstantial volume of sales" of the product in question have been made at the advertised MSRP in the retailer's trade area. Use of an MSRP as a comparative reference price is not considered "deceptive" if "[i]n a *substantial number of representative communities, the principal retail outlets* are selling the product at this price in the regular course of business and *in substantial volume*." (Emphasis added).

48.  Defendants thus have, and have had, a duty to verify that their "Compare At" reference prices are and have been prices at which substantial sales of their products are and have been made at other principal retail outlets in California.

**IV.   Defendants Do Not Adequately Verify Their "Compare At" Prices:**

49.  When Defendants advertised prices as "Compare At" prices on the price tags of items sold in their respective California TJ Maxx, Marshalls, and

HomeGoods stores, Defendants were not reasonably certain that the higher prices they advertised did not appreciably exceed the prices at which *substantial sales* of the items were being made in California.

50.     The "Compare At" prices on Defendants' price tags, including those alleged to be MSRPs, were not prices at which *substantial sales* of those products were made in California.  Rather, the "Compare At" reference prices advertised by Defendants, including those alleged to be MSRPs, were significantly in excess of the highest prices at which *substantial sales* of those products were made in California.

51.     Defendants did not ascertain whether the "Compare At" prices on their price tags, including those alleged to be MSRPs, were in fact the prices regularly charged by principal outlets in California, or whether their "Compare At" prices were prices at which *substantial sales* of such "comparable" products were made in California.

52.     Defendants systematically and routinely used unverified comparative prices, including supposed MSRPs, as comparative reference prices for their products which are not, in fact, prices at which the "principal retail outlets" in California have sold, or are selling, those products in any "substantial volume."  Thus, Defendants' "Compare At" prices are, and have been throughout the Class Period, deceptive.

53.     Plaintiffs are informed and believe, and on that basis allege, that often Defendants have not determined or verified the prices other merchants charge for the identical products they sell.  Rather, Defendants have used various misleading methods to make up prices which they claim other merchants charge for those products, and then claim that their own prices are significantly lower than those "Compare At" reference prices.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

54. Defendants failed to verify that their "Compare At" prices for their products did not exceed the prices at which substantial sales of the products were being made at principal retail outlets in California.

55. Defendants were ignorant of the prices at which substantial sales of identical products were sold by other merchants in California, and Defendants did not know whether the "Compare At" prices they advertised accurately reflected the prices at which their products were typically offered in California.

56. Defendants' decision to use unverified reference prices, including supposed MSRPs, was likely to deceive consumers, including Plaintiffs, by, among other things, representing that the marketplace had assigned retail prices to their products, and that Defendants' discount off those retail prices made Defendants' prices attractive. Defendants' misrepresentation of the "Compare At" prices as actual prices at which substantial sales of their products had been made in California was deceptive, misleading, unlawful, unfair, and/or fraudulent.

## V. <u>Defendants' "Compare At" Reference Prices Are Misleading, Deceptive, and/or False</u>:

57. The result of Defendants' ignorance of the accuracy of their "Compare At" prices, and their failure to verify that accuracy, was that consumers, including Plaintiffs, were misled into believing that they were receiving substantial savings on the purchase of Defendants' products when compared to prices charged for those same products at other retailers. Plaintiffs and other Class Members were misled into paying more for Defendants' products than they would have paid for identical products sold by other merchants.

58. Plaintiffs were confronted with ARPs on the items they purchased from Defendants, accompanied by the undefined, unqualified phrase, "Compare At." Plaintiffs reasonably believed, like all reasonable consumers, that the

"Compare At" prices represented the prices that they would expect to pay for those same products at other retailers in their general area.  In other words, Plaintiffs reasonably believed that the "Compare At" prices referred to the then prevailing retail prices for those same items - that if they left Defendants' stores and shopped around for those same products, they would likely find them elsewhere at the higher "Compare At" prices provided by Defendants.

59.   Defendants, however, had a different definition of what they meant by "Compare At" - a definition undisclosed to consumers anywhere near the actual advertisement and not consistent with the common meaning of the phrase "compare at."

60.   Had Plaintiffs been savvy enough, and stopped their shopping to get to a computer, log onto Defendants' website, navigate to the bottom of the web page, find the "compare at pricing" link in the fine print on the left side of the bottom of the page along with a half-dozen other links (including, among others, site map, privacy, and terms of use), and click on the "compare at pricing" hyperlink, Plaintiffs would have found Defendants' definition of "Compare At."

61.   The following disclosure of what Defendants actually mean by "Compare At" is found deeply imbedded on Defendants' website, accessible only through a hyperlink near the small print at the bottom of the main page:

> **What do we mean by "compare at"?**
> **The "compare at" price is our buying staff's estimate of the regular, retail price at which a comparable item in finer catalogs, specialty or department stores may have been sold.  We buy products from thousands of vendors worldwide, so the item may not be offered by other retailers at the "compare at" price at any particular time or location. We encourage you to do your own comparison shopping as another way to see what great value we**

- 16 -
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

offer.  **We stand for bringing you and your family exceptional value** <u>**every day**</u> **– it's the foundation of our business.**

**A.**   <u>**Reasonable Consumers Do Not Interpret Defendants' "Compare At" Prices To Be Defendants' Estimates of the Prices of Comparable Products**</u>:

62.   Reasonable consumers, including Plaintiffs, believe the "Compare At" reference price on Defendants' price tags to be the price at which other merchants supposedly sell the same product.

63.   Reasonable consumers, including Plaintiffs, do not interpret a reference price preceded by the phrase "Compare At" to refer to a retailer's estimate of what a comparable product may have sold for at other retail outlets.

64.   Defendants' depiction of prices, as described herein, deceptively represented to consumers, including Plaintiffs, that the "Compare At" price was the price at which the product typically sold in the marketplace, from which Defendants offered a discount.

65.   A reasonable consumer would interpret Defendants' "Compare At" price as the price at which a substantial number of vendors are selling the identical product.

66.   Nowhere on Defendants' price tags, or in Defendants' price advertising, is it made clear to consumers, including Plaintiffs, that the advertised "Compare At" price is merely Defendants' buying staff's "estimate" of what a "comparable" item "may have" sold at.

67.   Nowhere on Defendants' price tags, or in Defendants' price advertising, is it made clear to consumers, including Plaintiffs, that the advertised "Compare At" price may not even be a price at which any other retailer ever offered the particular item at any time or location.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

68. Nowhere on Defendants' price tags, or in Defendants' price advertising, are consumers warned or told that they should do their own comparison shopping before relying on Defendants' "Compare At" prices.

69. Consumers should not have to sleuth their way into Defendants' website just to find Defendants' misleading, unreasonable, and non-intuitive interpretation of what they mean by the phrase "Compare At."

70. Even if a consumer were to find Defendants' interpretation of the phrase "Compare At" on their respective website before purchasing a product from either TJ Maxx, Marshalls, or HomeGoods, it is still not clear from Defendants' definition exactly what the "Compare At" price actually is.

71. Viewed in light of Defendants' definition, Defendants' "Compare At" price could be the regular, retail price of the same item at other department stores. Or, it could be the regular, retail price of a "comparable" item. It could simply be an "estimate" of what a comparable item might sell at. Or, it could be none of the above. It may be that the particular item, or even a comparable item, was never offered for sale at the "Compare At" price by any other retailer, at any time, or in any location. And consumers, even if they were to find Defendants' definition, would still be left to guess what a "comparable" item might be.

72. The Better Business Bureau ("BBB") Code of Advertising suggests that if a retailer means to compare its selling price to a higher reference price of supposed identical merchandise, the retailer should use clear language in its advertising such as "selling elsewhere at."

73. If the reference price provided by Defendants is meant by them to be the price of a "comparable item," then the semantic cue (or phrase) placed on the price tag by Defendants should inform the consumer that the reference price is supposedly the "regular, retail price" of a "comparable item."

74.     The BBB Code of Advertising suggests that if a retailer means to compare its selling price to a higher reference price of comparable merchandise, the retailer should use clear language in its advertising such as "comparative value," "compares with merchandise selling at," or "equal to merchandise selling for."

75.     Because Defendants' "Compare At" prices are based on Defendants' "estimate," they admittedly may not be the "regular" or "retail" price of either the same item or a comparable item.

76.     Confronted with the simple phrase, "Compare At," a reasonable consumer would believe that the higher reference price represents the price at which the same item currently sells for in the marketplace – the then-prevailing retail or market price.

77.     After reading Defendants' interpretation of the phrase "Compare At," a reasonable consumer would not know what the reference price represents.  It could be the actual original price of the same item; the actual original price of a comparable item; the regular, retail price of the same item; the regular, retail price of a "comparable" item, assuming there is such a "comparable" item; simply what Defendant "estimates" to be the original price of the same item; what Defendant "estimates" to be the price of a comparable item; or it may not be a price that any retailer ever sold the item, or a similar item, for at any time or in any location.

78.     Plaintiffs and all other Class Members reasonably relied upon Defendants' deceptive, misleading, and/or false representations of comparative prices and false representations of purported savings, discounts and bargains when purchasing merchandise from Defendants' California stores.

79.     Plaintiffs did not, and reasonable consumers would not, interpret the semantic phrase "Compare At" the way Defendants interpret it.

- 19 -

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

80.   Therefore, Defendants' use of the semantic phrase "Compare At" in connection with their ARPs for their products was, and is, false, misleading, and/or deceptive.

### B.   Defendants' "Compare At" Price Advertising Omits Necessary Information, Including Their Purported Disclosure:

81.   At all times relevant herein, Defendants have been under a duty to Plaintiffs and all other Class Members to adequately disclose the truth about their alleged "Compare At" prices.

82.   Defendants' "Compare At" reference prices required, and continue to require, a qualifying disclosure because, amongst other things, Defendants define and interpret the term "Compare At" in a way that reasonable consumers do not interpret it.  Reasonable consumers do not interpret a "Compare At" reference price to be merely an "estimate" of what a "comparable" product "may" have sold for.

83.   Defendants have provided a qualifying disclosure, but that disclosure is buried 2 layers deep on their respective websites, and not clearly and conspicuously next to the "Compare At" reference prices, as required by FTC rules.

84.   Over 30 years of empirical research, including, without limitation, a 2004 study in The Journal of Consumer Affairs by Larry D. Compeau, Ph.D., *et al.*, has concluded that the average reasonable consumer interprets the term "compare at," when presented in comparison to a lower selling price for an item, to refer to "prices found in a 'regular price' department store."  (The Journal of Consumer Affairs, Vol. 38, No. 1, 2004, at 184).  These studies conclude that "about two-thirds" of consumers "may be deceived by the 'Compare At' phrase if specific information regarding the comparison is not provided." Id. at 186.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

85. Defendants attempt to provide that additional "specific information" by way of a disclosure accessible only through a hyperlink at the bottom of their respective web pages, and in small print on signs in their stores not easily seen by, or made clear or conspicuous to, customers. Defendants' disclosure is inadequate and violative of FTC rules and guidelines.

86. Where, as here, the retailer and the consumer do not share the same meaning of the semantic cue ("compare at"), and thus the phrase is open to more than one interpretation, the use of that phrase is misleading and deceptive.

87. Where, as here, the retailer ascribes a secret, undisclosed meaning to the semantic cue that differs from that which reasonable consumers, including Plaintiffs, would ascribe to it, the use of that phrase is misleading and deceptive.

88. It is a deceptive marketing act and/or practice for Defendants to define their reference prices as "estimates" of what "comparable" products "may" have sold for, but fail to clearly and conspicuously disclose that definition to consumers. If the reference prices provided by Defendants on the price tags of their products are meant to be "estimates" of what "comparable" products "may" have sold for, those price tags should say so.

89. Plaintiffs did not, and reasonable consumers would not, interpret the semantic phrase "Compare At" the way Defendants interpret it.

90. Therefore, Defendants' use of the semantic phrase "Compare At" in connection with their ARPs for their products was, and is, false, misleading, and/or deceptive.

91. The facts that Defendants misrepresented and/or failed to disclose are material facts that a reasonable person would have considered material; i.e., facts that would contribute to a reasonable person's decision to purchase merchandise offered for sale by Defendants. Defendants' deceptive comparison reference prices, and/or false representations of discounts from

misleading, deceptive, and/or false comparative prices, and false
representations of purported savings, discounts and/or bargains, are
objectively material to the reasonable consumer.

92.   Plaintiffs and all other Class Members reasonably and justifiably acted and
relied to their detriment on Defendants' failure to disclose, and concealment
of, the truth about their deceptive comparative prices, in purchasing
merchandise at Defendants' stores throughout California.

C.   **Defendants' Disclosures Do Not Comply With FTC Guidelines**:

93.   The FTC provides detailed requirements concerning the use of purported
disclosures in their ".com Disclosures" rules.

94.   Defendants provide a disclosure of their definition or interpretation of their
"Compare At" prices on their respective websites, and those disclosures
therefore are subject to the FTC's ".com Disclosures" rules.

95.   The FTC has a "clear and conspicuous requirement" for advertising
disclosures made online, which requires any such disclosures to be presented
to consumers "clearly and prominently."

96.   The FTC's "clear and conspicuous requirement" requires that "disclosures
must be clear and conspicuous."

97.   When making a disclosure related to an advertising claim, the FTC's clear
and conspicuous requirement requires that "[d]isclosures should be placed as
close as possible to the claim they qualify," or the "triggering claim."

98.   The FTC requires that "[w]hen the disclosure of qualifying information is
necessary to prevent an ad from being deceptive, the information should be
presented clearly and conspicuously so that consumers can actually notice
and understand it. A . . . disclaimer that is easily missed on a website [is] not
likely to be effective. Nor can advertisers use fine print to contradict other
statements in an ad or to clear up misimpressions that the ad would leave
otherwise. . . . To ensure that disclosures are effective, advertisers should use

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

clear and unambiguous language, [and] place any qualifying information close to the claim being qualified."

99.  Even if the advertisement is small and space-constrained, the FTC requires that "[i]f a space-constrained ad contains a claim that requires qualification, the advertiser disseminating it is not exempt from disclosure requirements."

100.  Defendants' "Compare At" reference prices require qualification.

101.  Defendants' qualifying disclosures are not presented clearly or conspicuously, nor are they presented so that consumers can notice them.

102.  Defendants' disclosures of qualifying information (i.e., that Defendants' "Compare At" reference prices refer to "estimates" of what "comparable" products "may" have sold for) are not placed close to the "Compare At" claims.  They are placed on a website only accessible by linking to them through a hyperlink, and on signage in Defendants' stores that is not easily seen by, nor made clear and/or conspicuous to, customers.

103.  Plaintiffs did not see, and were not aware of, Defendants' disclosures.

104.  When using a hyperlink to lead to a disclosure, the FTC requires, among other things, that the advertiser make the link "obvious."

105.  Defendants' hyperlinks to their disclosures are not obvious.

106.  The FTC's disclosure rules further provide that "[d]isclosures that are an integral part of a claim or inseparable from it should not be communicated through a hyperlink. Instead, they should be placed on the same page and immediately next to the claim, and be sufficiently prominent so that the claim and the disclosure are read at the same time, without referring the consumer somewhere else to obtain this important information."

107.  Defendants' qualifying disclosures are an "integral part" of their "Compare At" reference price claims. Those disclosures should not be, and should not have been, communicated to consumers through a hyperlink. Those

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

disclosures should be, and should have been, placed on the price tags of Defendants' products immediately next to the "Compare At" price claims.

108. The FTC's disclosure rules further provide that "[a]dvertisers are responsible for ensuring that their messages are truthful and not deceptive. Accordingly, disclosures must be communicated effectively so that consumers are likely to notice and understand them in connection with the representations that the disclosures modify. Simply making the disclosure available somewhere in the ad, where some consumers might find it, does not meet the clear and conspicuous standard."

109. Defendants' disclosure does not meet the FTC's "clear and conspicuous standard."

110. The FTC's disclosure rules further provide that "[i]t is the advertiser's responsibility to draw attention to the required disclosures."

111. Defendants do not draw attention to their disclosure.

112. The FTC's disclosure rules further provide that "[d]isclosures must be effectively communicated to consumers before they make a purchase or incur a financial obligation."

113. Defendants' disclosures are not communicated to consumers before they make their purchase(s) at TJ Maxx, Marshalls, or HomeGoods stores in California.

114. The FTC's disclosure rules further provide that "[i]f the disclosure needs to be in the ad itself but it does not fit, the ad should be modified so it does not require such a disclosure or, if that is not possible, that space-constrained ad should not be used. . . . If a disclosure is necessary to prevent an advertisement from being deceptive, unfair, or otherwise violative of a Commission rule, and if it is not possible to make the disclosure clear and conspicuous, then either the claim should be modified so the disclosure is not necessary or the ad should not be disseminated."

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

115. Defendants were required to put their qualifying disclosures on their price tags. Or, if putting their qualifying disclosures on their price tags was not possible, Defendants' "Compare At" reference prices should not have been, and should not be, used.

### D. Defendants' Use of Reference Prices Does Not Comply With Established Legal Requirements:

116. In advertising the "Compare At" price for a product, Defendants did not, and do not, actually present the prevailing market price for that product (i.e. the price at which other merchants were selling the identical product), or the price at which substantial sales of the product were made at principal retail outlets in California.  Rather, Defendants used, and continue to use, vague, misleading, and/or subjective measures to inflate the comparative prices, and thus artificially increase the discounts and savings they claimed to be offering consumers.

117. Through their deceptive, misleading, and/or false marketing, advertising and pricing scheme, Defendants have violated, and continue to violate, California law which prohibits advertising goods for sale at a discount when compared to unsubstantiated prices at which other merchants purportedly sell the goods, and prohibits misleading statements about the existence and amount of comparative prices.  Specifically, Defendants have violated, and continue to violate, the UCL, the FAL, the CLRA, and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)), and specifically prohibits false advertisements (15 U.S.C. §52(a)).

118. Under the FTCA, advertising must be truthful and non-deceptive, advertisers such as Defendants must have evidence to back up their claims, and advertisements cannot be unfair.  An advertisement is deceptive, according to the FTC, if it contains a misstatement or omits information that is likely to

mislead consumers acting reasonably under the circumstances, and the statement or omitted information is material - that is, important to a consumer's decision to buy or use the product.

119. The prices which Defendants advertise, and have advertised, as "Compare At" prices are misleading, fictitious, and/or are not based on fact.

120. Defendants failed to make clear to their customers, including Plaintiffs, that their "Compare At" reference prices were comparisons to "estimates" of "comparable" products.

121. Consumers should not have to sleuth their way into Defendants' websites just to find Defendants' misleading, unreasonable, and non-intuitive disclosures of what they mean by the phrase "Compare At."

122. Defendants' "Compare At" reference prices were likely to mislead reasonable consumers into believing that Defendants' prices were significantly lower than the prices offered by other merchants for the identical products, and that consumers would enjoy significant savings by purchasing those products from Defendants instead of from other merchants.

123. Defendants' false and/or misleading comparative pricing representations made it more likely that consumers would purchase particular products from Defendants.  Defendants' misleading claims of significant discounts were likely to persuade consumers who were not inclined to purchase products at all to buy them from Defendants solely because they were misled into believing that they were getting an unusually good deal.

124. Defendants' misrepresentations about their pricing were likely to mislead consumers, and in fact did mislead Plaintiffs, into believing that Defendants' prices would always be significantly lower than the prices offered by other merchants for the identical products.

125. Defendants misrepresented the existence, nature and amount of price discounts by purporting to offer specific dollar discounts from expressly

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

referenced comparative prices, which were misrepresented as "Compare At" prices.  These purported discounts were false, deceptive, and/or misleading, however, because the referenced comparative prices were not bona fide reference prices and did not represent true comparative prices for identical products sold by other merchants in California.

126.  Defendants have engaged in a company-wide, pervasive and continuous campaign of deceptively claiming that each of their products sold at a far higher price by other merchants in order to induce Plaintiffs and all Class Members to purchase merchandise at purportedly marked-down sale prices. California law prohibits such practices.

127.  Defendants' deceptive and misleading representations, as described herein, accompanied virtually every product sold in California TJ Maxx, Marshalls, and HomeGoods stores each and every day throughout the Class Period, and Defendants are still making such deceptive and misleading comparative price claims for many, if not all, of the products in their California stores.

128.  Throughout the Class Period Defendants routinely and systematically made untrue, deceptive, and misleading comparative advertising claims about the prices of their products, as described herein.

129.  Defendants advertised each of their products sold in their respective California TJ Maxx, Marshalls, and HomeGoods stores with a comparative reference price, preceded by the misleading phrase "Compare At." However, Defendants did not ensure that the "Compare At" reference prices they advertised in comparison to their sale prices in fact corresponded to prices at which a substantial number of sales of each such labeled product were made at other principal retail outlets in California.

130.  Throughout the Class Period, Defendants' "Compare At" prices constituted material misstatements, and/or omitted material information about their comparative prices, that were likely to mislead reasonable consumers.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

131.   Defendants have intentionally failed to disclose to, and/or fraudulently concealed from, Plaintiffs and all other Class Members the truth about their alleged comparative prices for the purpose of inducing Plaintiffs and other Class Members to purchase merchandise at each of their respective TJ Maxx, Marshalls, and HomeGoods stores throughout California.

132.   Plaintiffs are informed and believe, and on that basis allege, that even if and when a "Compare At" price for a product may have represented an actual "recent documented selling price" of the same product, Defendants chose the highest price at which the product was selling in the marketplace, and presented that price to consumers as the "Compare At" price.

133.   Defendants knew or should have known that their representations concerning their "Compare At" prices, or the sales of other merchants' identical products, were untrue and/or misleading.

134.   Defendants know and have known, should reasonably know, or should have known, that their comparative price advertising is, and has been, deceptive, misleading, false, fraudulent, unfair and/or unlawful.

135.   Defendants knew or should have known that using inflated and/or unverified comparative reference prices without verifying that they were prices at which substantial sales of those products had been made in California, thereby creating either fictitious or inflated "Compare At" prices and either fictitious or inflated discounts or savings, was unlawful.

136.   The use of the phrase "Compare At" by Defendants on the price tags of the products sold in their respective California TJ Maxx, Marshalls, and HomeGoods stores constituted the dissemination of untrue, deceptive and/or misleading statements to consumers about the prices of the products so listed as compared with the prices offered by other merchants for the same products.  Defendants knew, or by the exercise of reasonable care should have known, that those statements were untrue, deceptive, and/or

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

misleading.  Each such statement constitutes, and has constituted, a separate violation of California Business & Professions Code §17500.  Each such statement also violates, and has violated, California Civil Code §1750(a)(13).

137.   Plaintiffs, individually and on behalf of all others similarly situated, seek restitution and injunctive relief under the UCL, FAL and CLRA to stop Defendants' pervasive and rampant false and misleading advertising and marketing campaign.

## PLAINTIFF'S PURCHASES

138.   Plaintiffs purchased numerous products throughout the Class Period from Defendants' California stores, in reliance on Defendants' false, deceptive and/or misleading advertising and false, deceptive, and/or misleading price comparisons, which they would not otherwise have purchased but for Defendants' false, deceptive and/or misleading advertising, and false, deceptive and/or misleading price comparisons as described herein.

**Plaintiff CHESTER's Purchases From TJ Maxx**:

139.   For example, and without limitation, in June 2015, CHESTER purchased 2 Jessica Simpson handbags from Defendants' Palm Desert, California, TJ Maxx store for $24.99 each, for a total payment, including sales tax, of $53.98.

140.   Each handbag was advertised with a price tag which had two prices advertised on it: a sale price of $24.99, and a "Compare At" reference price advertised as "$48.00 +UP."

141.   Each handbag also had attached to it a purportedly original price tag which listed a purported original, or "MSRP," price of "$68.00."

142.   The comparative prices of "$48.00" and "$68.00" were not true, bona fide reference prices as discussed herein – i.e., they did not represent the prices at

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1    which a substantial volume of sales of the Jessica Simpson handbags had
2    sold for at other principal retail outlets in California in or about June 2015.

143.   When CHESTER shopped at Defendants' Palm Desert, California, TJ Maxx
       store, she was exposed to, saw, believed, and relied on Defendants'
       "Compare At" price advertising.

144.   When CHESTER shopped at Defendants' Palm Desert, California, TJ Maxx
       store, she was unaware of Defendants' definition or interpretation of the
       "Compare At" price found on Defendants' website.  Defendants failed to
       disclose their definition or interpretation to CHESTER or any other Class
       Member.

145.   The comparison prices on the items purchased by CHESTER at Defendants'
       Palm Desert, California, TJ Maxx store, and the corresponding price
       reductions and/or savings, were false, misleading and/or deceptive.

146.   CHESTER is informed and believes, and on that basis alleges, that the
       prevailing retail prices for the items that she purchased from Defendants
       were materially lower than the "Compare At" prices advertised by
       Defendants.  CHESTER reasonably believed that the "Compare At" prices
       associated with the items that she purchased from Defendants' Palm Desert,
       California, TJ Maxx store were the then prevailing retail prices for the items
       at other full-price retailers.  She reasonably believed that the "Compare At"
       prices were the prices she would pay for those items at other retailers in her
       general area.  CHESTER did not interpret the "Compare At" prices provided
       by Defendants to be "estimates" of the prices of "comparable" items, for any
       of the items that she purchased.  CHESTER would not have purchased any
       such product from Defendants in the absence of Defendants' false,
       misleading and/or deceptive advertising, and/or misrepresentations as
       described more fully herein.

/ / /

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**Plaintiff FRIEDMAN's Purchases From TJ Maxx**:

147.   On October 18, 2014, FRIEDMAN purchased, among other things, numerous items of men's clothing from Defendants' Westlake Village, California, TJ Maxx store for prices ranging from $5.99 to $49.99.  Each item purchased by FRIEDMAN was advertised with a price tag which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.  For example, and without limitation, one item of clothing that FRIEDMAN purchased had a price tag which listed a selling price of "$5.99," and which also stated "Compare At $10.00."

148.   The comparative price of "$10.00" was not a true, bona fide reference price as discussed herein – i.e., it did not represent the prices at which a substantial volume of sales of the item had sold for at other principal retail outlets in California in or about October 2014.

149.   By way of additional example, and without limitation, on July 3, 2015, FRIEDMAN purchased 13 items from Defendants' Westlake Village, California, TJ Maxx store with prices ranging from $2.99 to $10.00.  Each item purchased by FRIEDMAN on July 3, 2015, was advertised with a price tag which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.  For example, and without limitation, one item of clothing that FRIEDMAN purchased had a price tag which listed a selling price of "$6.99," and which also stated "Compare At $14.00."

150.   The comparative price of "$14.00" was not a true, bona fide reference price as discussed herein – i.e., it did not represent the prices at which a

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1    substantial volume of sales of the item had sold for at other principal retail

2    outlets in California in or about July 2015.

3  151.  When FRIEDMAN shopped at Defendants' Westlake Village, California, TJ

4    Maxx store, he was exposed to, saw, believed, and relied on Defendants'

5    "Compare At" price advertising.

6  152.  When FRIEDMAN shopped at Defendants' Westlake Village, California, TJ

7    Maxx store, he was unaware of Defendants' definition or interpretation of

8    the "Compare At" price found on Defendants' website.  Defendants failed to

9    disclose their definition or interpretation to FRIEDMAN or any other Class

10    Member.

11  153.  The comparison prices on the items purchased by FRIEDMAN at

12    Defendants' Westlake Village, California, TJ Maxx store, and the

13    corresponding price reductions and/or savings, were false, misleading and/or

14    deceptive.

15  154.  FRIEDMAN is informed and believes, and on that basis alleges, that the

16    prevailing retail prices for the items that he purchased from Defendants were

17    materially lower than the "Compare At" prices advertised by Defendants.

18    FRIEDMAN reasonably believed that the "Compare At" prices associated

19    with the items that he purchased from Defendants were the then prevailing

20    retail prices for the items at other full-price retailers.  He reasonably believed

21    that the "Compare At" prices were the prices he would pay for those items at

22    other retailers in his general area.  FRIEDMAN did not interpret the

23    "Compare At" prices provided by Defendants to be "estimates" of the prices

24    of "comparable" items for any of the items that he purchased.  FRIEDMAN

25    would not have purchased any such product from Defendants in the absence

26    of Defendants' false, misleading and/or deceptive advertising, and/or

27    misrepresentations as described more fully herein

28

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

155.   In addition to FRIEDMAN's purchases described herein, FRIEDMAN made numerous other purchases of products from Defendant's Westlake Village, California, TJ Maxx store throughout the Class Period.  With respect to each such purchase, including the purchases described herein, FRIEDMAN purchased those products from Defendants after viewing and relying on Defendants' advertising which included the false, deceptive, and/or misleading comparison prices discussed herein placed on the price tags of the items which he purchased.  The comparison prices, and the corresponding price reductions and/or savings, were false, misleading and/or deceptive.  The prevailing retail prices for the items that he purchased from Defendants were materially lower than the "Compare At" prices advertised by Defendants.  FRIEDMAN reasonably believed that the "Compare At" prices associated with the items that he purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  He reasonably believed that the "Compare At" prices were the prices he would pay for those items at other retailers in his general area.  FRIEDMAN did not interpret the "Compare At" prices provided by Defendants to be "estimates" of the prices of "comparable" items, for any of the items that he purchased.  FRIEDMAN would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

**Plaintiff BERKOFF's Purchases From Marshalls**:

156.   Plaintiff BERKOFF purchased numerous products throughout the Class Period from Defendants' Marshalls stores in Palm Desert and La Quinta, California, in reliance on Defendants' false advertising and false price comparisons, which she would not otherwise have purchased but for Defendants' false, deceptive and/or misleading advertising, and false, deceptive and/or misleading price comparison scheme as described herein.

- 33 -
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

157. For example, and without limitation, on May 28, 2015, BERKOFF purchased a "Missy" tee shirt from Defendants' La Quinta, California, Marshalls store for $12.99, for a total payment, including sales tax, of $14.03.  The shirt purchased by BERKOFF was advertised with a price tag which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.

158. The comparative price listed on the price tag of the "Missy" shirt was not a true, bona fide reference price as discussed herein – i.e., it did not represent the prices at which a substantial volume of sales of Missy tee shirts had sold for at other principal retail outlets in California in or about May 2015.

159. As another example, and without limitation, on June 25, 2015, BERKOFF purchased another shirt from Defendants' Palm Desert, California, Marshalls store for $12.99, for a total payment, including sales tax, of $14.03.  The shirt purchased by BERKOFF at Defendants' Palm Desert Marshalls store was also advertised with a price tag which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.

160. The comparative price listed on the price tag of the shirt she purchased at Defendants' Palm Desert Marshalls store on June 25, 2015, was not a true, bona fide reference price as discussed herein – i.e., it did not represent the prices at which a substantial volume of sales of Missy tee shirts had sold for at other principal retail outlets in California in or about June 2015.

161. When BERKOFF shopped at Defendants' La Quinta and Palm Desert, California, Marshalls stores, she was exposed to, saw, believed, and relied on Defendants' "Compare At" price advertising.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

162.   When BERKOFF shopped at Defendants' La Quinta and Palm Desert, California, Marshalls stores, she was unaware of Defendants' definition or interpretation of the "Compare At" price found on Defendants' website. Defendants failed to adequately disclose their definition or interpretation to BERKOFF or any other Class Member.

163.   The comparison prices on the items purchased by BERKOFF at Defendants' La Quinta and Palm Desert, California, Marshalls stores, and the corresponding price reductions and/or savings, were false, misleading and/or deceptive.

164.   BERKOFF is informed and believes, and on that basis alleges, that the prevailing retail prices for the items that she purchased from Defendants were materially lower than the "Compare At" prices advertised by Defendants.  BERKOFF reasonably believed that the "Compare At" prices associated with the items that she purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  She reasonably believed that the "Compare At" prices were the prices she would pay for those items at other retailers in her general area.  BERKOFF did not interpret the "Compare At" prices provided by Defendants to be "estimates" of the prices of "comparable" items for any of the items that she purchased. BERKOFF would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

165.   In addition to BERKOFF's purchases described herein, BERKOFF made numerous other purchases of products from Defendant's La Quinta and Palm Desert, California, Marshalls stores throughout the Class Period.  With respect to each such purchase, including the purchases described herein, BERKOFF purchased those products from Defendants after viewing and relying on Defendants' advertising which included the false, deceptive,

and/or misleading comparison prices discussed herein placed on the price tags of the items which she purchased.  The comparison prices, and the corresponding price reductions and/or savings, were false, misleading and/or deceptive.  The prevailing retail prices for the items that BERKOFF purchased from Defendants, and the prices at which a substantial volume of sales of those items had sold for at other principal retail outlets in California, were materially lower than the "Compare At" prices advertised by Defendants.  BERKOFF reasonably believed that the "Compare At" prices associated with the items that she purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  She reasonably believed that the "Compare At" prices were the prices she would pay for those items at other retailers in her general area.  BERKOFF did not interpret the "Compare At" prices provided by Defendants to be "estimates" of the prices of "comparable" items for any of the items that she purchased. BERKOFF would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

**Plaintiff BERKOFF's Purchases From HomeGoods**:

166.    Plaintiff BERKOFF purchased numerous products throughout the Class Period from Defendants' HomeGoods stores in Palm Desert and Bermuda Dunes, California, in reliance on Defendants' false advertising and false price comparisons, which she would not otherwise have purchased but for Defendants' false, deceptive and/or misleading advertising, and false, deceptive and/or misleading price comparison scheme as described herein.

167.    By way of example, and without limitation, on May 3, 2015, BERKOFF purchased candles, storage items, and other housewares from Defendants' Palm Desert, California, HomeGoods store for prices ranging from $9.99 to $24.99.  Each item purchased by BERKOFF was advertised with a price tag

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.  For example, and without limitation, one item that BERKOFF purchased had a price tag which listed a selling price of "$24.99," and which also stated "Compare At $40.00."

168.    The comparative price of "$40.00," as well as the other "Compare At" prices on the other items she purchased on May 3, 2015, were not true, bona fide reference prices as discussed herein – i.e., they did not represent the prices at which a substantial volume of sales of the items had sold for at other principal retail outlets in California in or about May 2015.

169.    By way of additional example, and without limitation, on May 9, 2015, BERKOFF purchased 3 items from Defendants' Bermuda Dunes, California, HomeGoods store with prices ranging from $6.99 to $14.99.  Each item purchased by BERKOFF on May 9, 2015, was advertised with a price tag which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.

170.    The comparative prices of the items she purchased on May 9, 2015 not true, bona fide reference prices as discussed herein – i.e., they did not represent the prices at which a substantial volume of sales of the items had sold for at other principal retail outlets in California in or about May 2015.

171.    When BERKOFF shopped at Defendants' Palm Desert and Bermuda Dunes, California, stores, she was exposed to, saw, believed, and relied on Defendants' "Compare At" price advertising.

172.    When BERKOFF shopped at Defendants' Palm Desert and Bermuda Dunes, California, stores, she was unaware of Defendants' definition or interpretation of the "Compare At" price found on Defendants' website.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1    Defendants failed to adequately disclose their definition or interpretation to

2    BERKOFF or any other Class Member.

3    173.   The comparison prices on the items purchased by BERKOFF at Defendants'

4    Palm Desert and Bermuda Dunes, California, HomeGoods stores, and the

5    corresponding price reductions and/or savings, were false, misleading and/or

6    deceptive.

7    174.   The prevailing retail prices for the items that she purchased from

8    Defendants' HomeGoods stores, and the prices at which a substantial

9    volume of sales of those items had sold for at other principal retail outlets in

10    California, were materially lower than the "Compare At" prices advertised

11    by Defendants.  BERKOFF reasonably believed that the "Compare At"

12    prices associated with the items that she purchased from Defendants'

13    HomeGoods stores were the then prevailing retail prices for the items at

14    other full-price retailers.  She reasonably believed that the "Compare At"

15    prices were the prices she would pay for those items at other retailers in her

16    general area.  BERKOFF did not interpret the "Compare At" prices provided

17    by Defendants to be "estimates" of the prices of "comparable" items for any

18    of the items that she purchased.  BERKOFF would not have purchased any

19    such product from Defendants in the absence of Defendants' false,

20    misleading and/or deceptive advertising, and/or misrepresentations as

21    described more fully herein.

22    175.   In addition to BERKOFF's purchases described herein, BERKOFF made

23    numerous other purchases of products from Defendants' Palm Desert and

24    Bermuda Dunes, California, HomeGoods stores throughout the Class Period.

25    With respect to each such purchase, including the purchases described

26    herein, BERKOFF purchased those products from Defendants after viewing

27    and relying on Defendants' advertising which included the false, deceptive,

28    and/or misleading comparison prices discussed herein placed on the price

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

tags of the items which she purchased.  The comparison prices, and the corresponding price reductions and/or savings, were false, misleading and/or deceptive.  The prevailing retail prices for the items that she purchased from Defendants' HomeGoods stores, and the prices at which a substantial volume of sales of those items had sold for at other principal retail outlets in California, were materially lower than the "Compare At" prices advertised by Defendants.  BERKOFF reasonably believed that the "Compare At" prices associated with the items that she purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  She reasonably believed that the "Compare At" prices were the prices she would pay for those items at other retailers in her general area.  BERKOFF did not interpret the "Compare At" prices provided by Defendants to be "estimates" of the prices of "comparable" items, for any of the items that she purchased. BERKOFF would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

**Plaintiff METOYER's Purchases From HomeGoods**:

176. Plaintiff METOYER purchased numerous products throughout the Class Period from Defendants' HomeGoods store in Mira Loma, California, in reliance on Defendants' false advertising and false price comparisons, which she would not otherwise have purchased but for Defendants' false, deceptive and/or misleading advertising, and false, deceptive and/or misleading price comparison scheme as described herein.

177. For example, and without limitation, on April 11, 2015, METOYER purchased storage items, bath rugs, dinnerware, and other home décor items from Defendants' Mira Loma, California, HomeGoods store for a total payment, including sales tax, of $99.33.  Each item purchased by METOYER was advertised with a price tag which contained an untrue,

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.  For example, the one home décor item selling for $29.99 stated "Compare At $75.00."

178.   The comparative prices on the items METOYER purchased on April 11, 2015, including, without limitation, the "Compare At" price of "$75.00," on the home décor item, were not true, bona fide reference prices as discussed herein – i.e., they did not represent the prices at which a substantial volume of sales of the items had sold for at other principal retail outlets in California in or about April 2015.

179.   As a further example, and without limitation, on May 30, 2015, METOYER purchased a food product, bath rugs, and a lamp from Defendants' Mira Loma, California, HomeGoods store for a total payment, including sales tax, of $85.58.  Each item purchased by METOYER was advertised with a price tag which contained an untrue, deceptive, and/or misleading "Compare At" price representation, as discussed herein – i.e., a higher, yet false, deceptive, and/or misleading "Compare At" reference price.

180.   When METOYER shopped at Defendants' Mira Loma, California, HomeGoods store, she was exposed to, saw, believed, and relied on Defendants' "Compare At" price advertising.

181.   When METOYER shopped at Defendants' Mira Loma, California, HomeGoods store, she was unaware of Defendants' definition or interpretation of the "Compare At" price found on Defendants' website. Defendants failed to adequately disclose their definition or interpretation to METOYER or any other Class Member.

182.   The comparison prices on the items purchased by METOYER at Defendants' Mira Loma, California, HomeGoods store, and the

- 40 -
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

corresponding price reductions and/or savings, were false, misleading and/or deceptive.

183.    The prevailing retail prices for the items that she purchased from Defendants, and the prices at which a substantial volume of sales of the items had sold for at other principal retail outlets in California, were materially lower than the "Compare At" prices advertised by Defendants. METOYER reasonably believed that the "Compare At" prices associated with the items that she purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  She reasonably believed that the "Compare At" prices were the prices she would pay for those items at other retailers in her general area.  METOYER did not interpret the "Compare At" prices provided by Defendants to be "estimates" of the prices of "comparable" items for any of the items that she purchased. METOYER would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

184.    In addition to METOYER's purchases described herein, METOYER made numerous other purchases of products from Defendant's Mira Loma, California, HomeGoods store throughout the Class Period.  With respect to each such purchase, including the purchases described herein, METOYER purchased those products from Defendants after viewing and relying on Defendants' advertising which included the false, deceptive, and/or misleading comparison prices discussed herein placed on the price tags of the items which she purchased.  The comparison prices, and the corresponding price reductions and/or savings, were false, misleading and/or deceptive.  The prevailing retail prices for the items that she purchased from Defendants were materially lower than the "Compare At" prices advertised by Defendants.  METOYER reasonably believed that the "Compare At"

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

prices associated with the items that she purchased from Defendants were the then prevailing retail prices for the items at other full-price retailers.  She reasonably believed that the "Compare At" prices were the prices she would pay for those items at other retailers in her general area.  METOYER did not interpret the "Compare At" prices provided by Defendants to be "estimates" of the prices of "comparable" items, for any of the items that she purchased. METOYER would not have purchased any such product from Defendants in the absence of Defendants' false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

## CLASS ACTION ALLEGATIONS

185.  Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated in 3 Subclasses.

**The TJ Maxx Subclass**:

186.  Plaintiffs CHESTER and FRIEDMAN bring this action on behalf of themselves and on behalf of all other persons similarly situated (the "TJ Maxx Subclass" or "TJ Maxx Subclass Members") against Defendants TJX and MAXX in the "TJ Maxx Subclass," namely:

All persons who, while in the State of California, and between July 17, 2011, and the present (the "Class Period"), purchased from TJ Maxx one or more items at any TJ Maxx store in the State of California with a price tag that contained a "Compare At" price which was higher than the price listed as the TJ Maxx sale price on the price tag, and who have not received a refund or credit for their purchase(s). Excluded from the Class are Defendants, as well as Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any Defendant.

187.  Plaintiffs CHESTER and FRIEDMAN reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**The Marshalls Subclass**:

188.   Plaintiff BERKOFF brings this action on behalf of herself and on behalf of all other persons similarly situated (the "Marshalls Subclass" or "Marshalls Subclass Members") against Defendants TJX and MARSHALLS in the "Marshalls Subclass," namely:

> All persons who, while in the State of California, and between July 17, 2011, and the present (the "Class Period"), purchased from Marshalls one or more items at any Marshalls store in the State of California with a price tag that contained a "Compare At" price which was higher than the price listed as the Marshalls sale price on the price tag, and who have not received a refund or credit for their purchase(s). Excluded from the Class are Defendants, as well as Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any Defendant.

189.   Plaintiff BERKOFF reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

**The HomeGoods Subclass**:

190.   Plaintiffs METOYER and BERKOFF bring this action on behalf of themselves and on behalf of all other persons similarly situated (the "HomeGoods Subclass" or "HomeGoods Subclass Members") against Defendants TJX and HOMEGOODS in the "HomeGoods Subclass," namely:

> All persons who, while in the State of California, and between July 17, 2011, and the present (the "Class Period"), purchased from HomeGoods one or more items at any HomeGoods store in the State of California with a price tag that contained a "Compare At" price which was higher than the price listed as the HomeGoods sale price on the price tag, and who have not received a refund or credit for their purchase(s). Excluded from the Class are Defendants, as well as Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any Defendant.

- 43 -

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

191.   Plaintiffs METOYER ad BERKOFF reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

**Class Action Allegations Common To Each Subclass**:

192.   Defendants' deceptive, misleading, and/or false comparative price advertising scheme, disseminated to California consumers via representations on the price tags of each of Defendants' items in their California TJ Maxx, Marshalls, and HomeGoods stores, has been rampant throughout California as part of a massive, years-long, pervasive campaign and has been consistent across all of Defendants' merchandise at each of their stores throughout California.  For example, Defendants' pricing scheme has throughout the Class Period been prominently displayed directly on the price tag of each item sold, with express references to alleged comparative prices that have never existed and/or do not, and/or did not then, currently constitute the prevailing market retail prices for such merchandise or prices at which a substantial volume of sales of each such product had been made in California.

193.   Plaintiffs and all other Class Members were each exposed to Defendants' deceptive, misleading, and/or false comparative price advertising as described herein.

194.   Plaintiffs are informed and believe, and on that basis allege, that hundreds of thousands, of California consumers have been victims of Defendants' deceptive, misleading and unlawful pricing scheme.

195.   Plaintiffs CHESTER and FRIEDMAN are and have been members of the proposed TJ Maxx Subclass described herein.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

196. Plaintiff BERKOFF is and has been a member of the proposed Marshalls Subclass described herein.

197. Plaintiffs BERKOFF and METOYER are and have been members of the proposed HomeGoods Subclass described herein.

198. The number of persons in each proposed subclass herein is so numerous that joinder of all such persons would be impracticable.  While the exact number and identities of all such persons are unknown to Plaintiffs at this time and can only be obtained through appropriate discovery, Plaintiffs are informed and believe, and on that basis allege, that each proposed Subclass herein includes over 100,000 persons.

199. Common questions of law and/or fact exist in this case with respect to each proposed Subclass which predominate over any questions affecting only individual members of the Subclass, which do not vary between members thereof, and which drive the resolution of the claims of Plaintiffs and all other Subclass Members.

200. The common questions of law and/or fact include, but are not limited to:

   a. Whether products at TJ Maxx, Marshalls, and HomeGoods stores in California are advertised with "Compare At" reference prices;

   b. Whether a reasonable consumer would interpret the phrase "Compare At" as Defendants interpret it;

   c. How a reasonable consumer interprets the phrase "Compare At" on a price tag;

   d. Whether a reasonable consumer is likely to be deceived by Defendants' use of its "Compare At" reference prices;

   e. Whether the phrase "Compare At" is susceptible to more than one reasonable interpretation;

   f. Whether the phrase "Compare At" is misleading and/or deceptive;

- 45 -

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

g. Whether, during the Class Period, Defendants used false and/or misleading "Compare At" prices on the price tags of items sold in their California stores, and whether Defendants falsely advertised comparative price discounts for their merchandise;

h. Whether, during the Class Period, the "Compare At" prices advertised by Defendants were in fact the prevailing market prices for the respective identical items sold by other retailers in the marketplace at the time of the dissemination and/or publication of the advertised "Compare At" prices;

i. Whether, during the Class Period, the "Compare At" prices advertised by Defendants were in fact prices at which substantial sales of those products were made at principal retail outlets in California;

j. Whether Defendants' disclosures of their interpretation of their "Compare At" reference prices comply with established legal requirements for online disclosures;

k. Whether Defendants' price tags omit necessary information;

l. Whether Defendants adequately verify that their "Compare At" reference prices meet FTC and/or other legal requirements;

m. Whether Defendants' price-comparison advertising was false, deceptive or misleading within the meaning of the UCL, FAL, CLRA and/or FTCA;

n. Whether Defendants' comparative pricing on their "Compare At" price tags would be material to a reasonable consumer's purchasing decisions;

o. Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices under California law;

p. Whether Defendants misrepresented and/or failed to disclose material facts about their product pricing and purported discounts;

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

q.  Whether Defendants have made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

r.  Whether Class Members are entitled to damages and/or restitution; and, if so, what the proper measure of restitution is; and,

s.  Whether Defendants continue to use false, deceptive, misleading and/or unlawful price comparisons such that injunctions are necessary.

201.  Plaintiffs' claims and those of all other Class Members arise out of a common course of conduct by Defendants.

202.  All Subclass Members, including the respective proposed Plaintiff Subclass representatives, were exposed to each respective Subclass Defendants' misrepresentations or omissions of material fact claiming that their "Compare At" prices were accurate bona fide comparison prices. Each Subclass Defendants' misrepresentations or omissions of material fact were uniformly made to all respective Subclass Members.  In addition, it can be reasonably presumed that all Class Members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendants' false comparative price advertising scheme when purchasing merchandise at each and any of Defendants' stores in California.

203.  The common questions of law and/or fact in this case are susceptible to common proof.

204.  Resolution of the common questions of law and/or fact in this case will resolve issues that are central to Plaintiffs' claims and the claims of all other Class Members.

205.  The claims of Plaintiffs and all Class Members involve the same untrue, deceptive, and/or misleading representations by Defendants conveyed to

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

each Class Member by way of representations on the price tags of each product sold to each Class Member.

206. Each Class Members' claim, including those of Plaintiffs, alleges that Defendants' price tags convey a deceptive, misleading, and/or untrue representation that the price at which Defendants offered a product was lower compared to a fictitious, deceptive, or misleading "Compare At" price.

207. Common proof in this case will produce a common answer as to whether Defendants' use of their "Compare At" reference prices complies with legal requirements for the use of such reference prices, and whether Defendants' price-comparison advertising resulted in false, deceptive, or misleading price comparisons.

208. Common proof will resolve the common questions essential to resolution of the Class claims in this case in one stroke for all Class Members.

209. The claims of the named Plaintiffs in this case are typical of, and not antagonistic to, those of the other Subclass Members which each seeks to represent.  Plaintiffs and the Subclasses each seeks to represent have all been exposed to and deceived (or were likely to be deceived) by Defendants' false comparative price advertising scheme, as alleged herein.

210. The crux of Plaintiffs' claims - that Defendants' price tags on each item in each of their California stores convey false, deceptive, and/or misleading comparative prices as described more fully herein - is common to all Class Members.

211. Plaintiffs' claims, and those of all Class Members, are based on conduct which is not unique to any named Plaintiff.

212. Plaintiffs and all Subclass Members each seeks to represent have been injured by the same common course of conduct by the respective Subclass Defendants, and have suffered the same or similar injury, as alleged herein.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

213. Disposition of Plaintiffs' claims in a class action will benefit all parties and the Court.

214. A class action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented herein.

215. If individual Class Members were each required to bring his or her own individual claims, any potential recovery by any such Class Member would be dwarfed by the cost of litigating on an individual basis.

216. In this case, Plaintiffs seek to recover relatively small sums for themselves and all other respective Subclass Members. Accordingly, the disparity between the cost of litigating individual claims and the individual recoveries sought make individual claims highly unlikely, if not impossible. Litigation costs would render individual prosecution of Class Members' claims prohibitive. In cases such as this, where the individual recoveries sought by each Class Member are relatively small and eclipsed by the cost of litigating an individual claim, a class action is the only method by which Class Members may hope to resolve their claims.

217. The prosecution of separate actions by individual members of the proposed Subclasses herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of the proposed Subclasses which would or may establish incompatible standards of conduct for Defendants, and which would also create a risk of adjudications with respect to individual members of the proposed Subclasses herein which would, as a practical matter, be dispositive of the interests of other members of the proposed Subclasses not parties to the particular individual adjudications, and/or would or may substantially impede or impair the ability of those other members to protect their interests.

218. Plaintiffs are each adequate representatives of the respective Subclasses they seek to represent because each is a member of the Subclass she seeks to

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

represent, and no Plaintiffs' interests conflict with the interests of the Subclass Members she seeks to represent.  Each Plaintiff will fairly and adequately represent and protect the interest of the Subclass she seeks to represent because no Plaintiffs' interests are antagonistic to the Subclass she seeks to represent.  No Plaintiff has any conflict of interest with any other Subclass Member she seeks to represent.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.  Plaintiffs and their counsel will prosecute this action vigorously on behalf of each Subclass.

219.  Plaintiffs are informed and believe, and on that basis allege, that Defendants have one or more databases through which a significant majority of Class Members may be identified and ascertained, and that Defendants each maintain contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

220.  The definition of the proposed Subclasses herein objectively depict who the members of each proposed Subclass are, making it administratively feasible to determine whether a particular person is a Member of any Subclass described herein.  Because the alleged misrepresentations in this case (i.e., the false, deceptive, and/or misleading comparative prices) appear on the price tags of each product purchased, there is no concern that any Subclass may include individuals who were not exposed to the respective Subclass Defendants' misrepresentations.

/ / /
/ / /
/ / /
/ / /
/ / /

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# FIRST CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES

(California Business & Professions Code §17200 *et seq.*)

(By Plaintiffs CHESTER and FRIEDMAN on behalf of themselves and all others similarly situated, and the general public, against Defendants TJX and MAXX)

(By Plaintiff BERKOFF on behalf of herself and all others similarly situated, and the general public, against Defendants TJX and MARSHALLS)

(By Plaintiffs METOYER and BERKOFF on behalf of themselves and all others similarly situated, and the general public, against Defendants TJX and HOMEGOODS)

221. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

222. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code §17200.

223. Advertising or promotional practices are unlawful under the UCL if a reasonable consumer is likely to be deceived by them.

224. Defendants have violated the "unfair" prong of the UCL by representing false, deceptive, and/or misleading comparative prices and corresponding price discounts and/or savings for merchandise where Defendants, in fact, inflated, estimated, or fabricated the purported "Compare At" prices for such products, and failed to disclose to consumers that such "Compare At" prices were inflated, estimated, or fabricated, such that the promised discount and/or saving was false, misleading and/or deceptive.

225. These acts and practices were unfair because they caused Plaintiffs, and were likely to cause reasonable consumers, to falsely believe that Defendants are, and have throughout the Class Period been, offering value, discounts or bargains from the prevailing market price, value or worth of the

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid.  This perception has induced reasonable purchasers, including Plaintiffs, to buy such products, which they otherwise would not have purchased.

226.   Plaintiffs and all other Class Members were likely to be deceived by Defendants' use of the phrase "Compare At" on the price tags of merchandise at TJ Maxx, Marshalls, and/or HomeGoods stores in California.

227.   In deciding to purchase merchandise at Defendants' stores, Plaintiffs relied on Defendants' misleading and deceptive representations regarding supposed "Compare At" prices.  The comparative "Compare At" prices placed by Defendants on the price tags of merchandise at their California stores played a substantial role in each Plaintiff's decisions to purchase the products she purchased from Defendants, and Plaintiffs would not have purchased those items in the absence of Defendants' misrepresentations. Accordingly, Plaintiffs have suffered monetary loss as a direct result of Defendants' unlawful practices described herein.

228.   The gravity of the harm to Class Members resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Defendants for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of California Business & Professions Code §17200, *et seq.*

229.   Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs requests that this Court cause Defendants to restore this money to Plaintiffs and all Subclass Members, and to enjoin Defendants from

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiffs, the Subclasses described herein, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CAUSE OF ACTION

### FRAUDULENT BUSINESS PRACTICES

(California Business & Professions Code §17200 *et seq*.)

(By Plaintiffs CHESTER and FRIEDMAN on behalf of themselves and all others similarly situated, and the general public, against Defendants TJX and MAXX)

(By Plaintiff BERKOFF on behalf of herself and all others similarly situated, and the general public, against Defendants TJX and MARSHALLS)

(By Plaintiffs METOYER and BERKOFF on behalf of themselves and all others similarly situated, and the general public, against Defendants TJX and HOMEGOODS)

230. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

231. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

232. Defendants' false comparative prices, including, but not limited to, their "Compare At" prices placed on the price tags of the products sold in their California TJ Maxx, Marshalls, or HomeGoods stores, were "fraudulent" within the meaning of the UCL because they deceived Plaintiffs, and were likely to deceive reasonable consumers and Subclass Members, into believing that Defendants were offering value, discounts or bargains from the prevailing market price, value or worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more)

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

than what they paid.  This perception induced reasonable purchasers, including Plaintiffs, to buy such products from Defendants' stores in California, which they otherwise would not have purchased.

233.  Defendants' acts and practices as described herein have deceived Plaintiffs and were highly likely to deceive reasonable members of the consuming public.  Specifically, in deciding to purchase merchandise at Defendants' stores, Plaintiffs relied on Defendants' misleading and deceptive representations regarding their supposed "Compare At" prices.  The comparative "Compare At" prices placed by Defendants on the price tags of merchandise at TJ Maxx, Marshalls, and/or HomeGoods stores in California played a substantial role in each Plaintiff's decisions to purchase those products, and Plaintiffs would not have purchased those items in the absence of Defendants' misrepresentations.  Accordingly, Plaintiffs have suffered monetary loss as a direct result of Defendants' unlawful practices described herein.

234.  As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs and all other respective Subclass Members.  Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained absent their false, misleading and/or deceptive conduct.

235.  Through their fraudulent acts and practices, Defendants have improperly obtained money from Plaintiffs and all other respective Subclass Members.  As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all Class Members, and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiffs, the respective Subclasses they seek to represent, and members of the general public may be irreparably harmed

1  and/or denied an effective and complete remedy if such an order is not

2  granted.

### THIRD CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES

(California Business & Professions Code §17200 *et seq*.)

(By Plaintiffs CHESTER and FRIEDMAN on behalf of themselves and all others

similarly situated, and the general public, against Defendants TJX and MAXX)

(By Plaintiff BERKOFF on behalf of herself and all others similarly situated, and

the general public, against Defendants TJX and MARSHALLS)

(By Plaintiffs METOYER and BERKOFF on behalf of themselves and all others

similarly situated, and the general public, against Defendants TJX and

HOMEGOODS)

236.  Plaintiffs re-allege and incorporate by reference, as though fully set forth

herein, all previous paragraphs of this Complaint.

237.  A business act or practice is "unlawful" under the UCL if it violates any

other law or regulation.

238.  The FTCA prohibits "unfair or deceptive acts or practices in or affecting

commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false

advertisements.  15 U.S.C. §52(a)).

239.  Cal. Civ. Code §1770(a)(13), prohibits a business from "[m]aking false or

misleading statements of fact concerning reasons for, existence of, or

amounts of price reductions."

240.  Defendants' use of and reference to materially misleading, deceptive, and/or

false "Compare At" prices on the price tags of merchandise sold to

consumers in California TJ Maxx, Marshalls, and/or HomeGoods stores

violated and continues to violate the FTCA, 15 U.S.C. §45(a)(1) and 15

U.S.C. §52(a), as well as FTC Pricing Guides.  It also violated and continues

to violate Cal. Bus. & Prof. Code §§17200 and 17501, and Cal. Civ. Code

§1770(a)(13), by, among other things, advertising false comparative prices that were, in fact, not the prevailing market prices at other retailers in the marketplace at the time of the publication.

241.   As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs and other Subclass Members. Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained absent their false, misleading and deceptive conduct.

242.   Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiffs and all other respective Subclass Members. As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all respective Subclass Members they seek to represent, and to enjoin Defendants from continuing to violate the UCL, and/or from violating the UCL in the future.  Otherwise, Plaintiffs, the Subclasses they seek to represent, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# FOURTH CAUSE OF ACTION

## FALSE ADVERTISING

(California Business & Professions Code §17500 *et seq.*)

(By Plaintiffs CHESTER and FRIEDMAN on behalf of themselves and all others similarly situated, and the general public, against Defendants TJX and MAXX)

(By Plaintiff BERKOFF on behalf of herself and all others similarly situated, and the general public, against Defendants TJX and MARSHALLS)

(By Plaintiffs METOYER and BERKOFF on behalf of themselves and all others similarly situated, and the general public, against Defendants TJX and HOMEGOODS)

243. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

244. The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value and former price.

245. The FAL makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

246. Defendants' practice of disseminating allegedly comparative "Compare At" prices associated with their merchandise, which were materially greater than the true prevailing prices of those products, and/or not true or verified comparative prices for those products, as alleged more fully herein, was an unfair, deceptive and/or misleading advertising practice because it gave the false impression that the products sold by Defendants regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than they actually were.

247. Defendants' practice of disseminating reference prices they allege to be estimates of what comparable products may have sold for, without

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

disclosing to consumers that their "Compare At" prices were meant to be such estimates, was misleading to Plaintiff and all other Class Members. Defendants knew, or by the exercise of reasonable care should have known, that reasonable consumers, such as Plaintiffs, would not interpret the statement "Compare At" to be a reference to an estimate of what comparable products may have sold for.

248. On each day throughout the Class Period, Defendants, with the intent to induce members of the public to purchase products offered at their respective California stores, made or caused to be made each of the untrue and/or misleading statements, claims, and/or representations described herein.

249. On each day throughout the Class Period, Defendants, with the intent to induce members of the public to purchase products offered at their respective California stores, made or caused to be made untrue and/or misleading claims to consumers throughout California including, but not limited to, the following claims with respect to products offered for sale at California TJ Maxx, Marshalls, and/or HomeGoods stores:

    a.  That when other merchants offered an identical product for sale, Defendants had previously ascertained and/or determined the price at which substantial sales of that product had been made by principal retail outlets in California.

    b.  That the "Compare At" price for a product was the price at which other principal retail outlets in California regularly sold that identical product.

    c.  That Defendants' sale price for a product was lower than the price at which other principal retail outlets in California regularly sold that identical product.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

d.  That Defendants' sale price for a product was a discount from the price at which other principal retail outlets in California regularly sold that identical product.

250.  Defendants knew, or by the exercise of reasonable care should have known, that these claims were untrue, deceptive, and/or misleading.

251.  In addition to the allegations made above, each of Defendants' statements, claims, and/or representations described herein were untrue, deceptive, and/or misleading because, among other things:

a.  Defendants set "Compare At" prices without ascertaining and/or determining the prices at which other principal retail outlets in California regularly sold the identical products;

b.  Defendants' "Compare At" prices were fictitious, having been based on something other than the prices at which other principal retail outlets in California regularly sold the identical products;

c.  Defendants' "Compare At" prices were calculated by using the highest sales price at which another merchant was offering, or had offered, the identical product for sale, instead of the price at which other principal retail outlets in California regularly sold the identical products;

d.  A reasonable consumer would not interpret the phrase "Compare At" the way Defendants interpret it; and/or

e.  Defendants' "Compare At" prices were higher than the lowest price at which a consumer would commonly be able to purchase the identical product at a retail establishment in the consumer's area, and:

i.  Defendants knew that the "Compare At" price was higher than the lowest price at which a consumer would commonly be able to purchase the identical product at other retail establishments in the consumer's area; or

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

ii.  Defendants did not know whether merchants regularly sold the product at the "Compare At" price.

252.  When Defendants made or caused to be made the untrue and/or misleading claims, statements, and/or misrepresentations described herein to consumers in California, Defendants failed to adequately disclose the facts pleaded herein.

253.  Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiffs and all other respective Subclass Members. As such, Plaintiffs requests that this Court cause Defendants to restore this money to Plaintiffs and all other respective Subclass Members, and to enjoin Defendants from continuing to violate the FAL, and/or from violating the FAL in the future.  Otherwise, Plaintiffs, the Subclasses they seek to represent, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

(California Civil Code §1750 *et seq*.)

(By Plaintiffs CHESTER and FRIEDMAN on behalf of themselves and all others similarly situated, and the general public, against Defendants TJX and MAXX)

(By Plaintiff BERKOFF on behalf of herself and all others similarly situated, and the general public, against Defendants TJX and MARSHALLS)

(By Plaintiffs METOYER and BERKOFF on behalf of themselves and all others similarly situated, and the general public, against Defendants TJX and HOMEGOODS)

254.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

- 60 -

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

255.   On each day throughout the Class Period, Defendants, with the intent to induce members of the public to purchase products offered at their respective California stores, made or caused to be made false and/or misleading claims to consumers throughout California including, but not limited to, the following claims with respect to products offered for sale at their respective California stores:

    a.   The existence and/or amounts of price reductions represented by the difference between Defendants' "Compare At" reference price and their sale price; and,

    b.   The existence and/or amount of the savings to a consumer purchasing a particular product from Defendants instead of another merchant represented by the difference between Defendants' "Compare At" reference price and their sale price.

256.   Plaintiffs and each respective Subclass Member are "consumers" within the meaning of California Civil Code §1761(d).

257.   Defendants' sale of merchandise at its respective TJ Maxx, Marshalls, and/or HomeGoods stores in California to Plaintiffs and other Subclass Members are "transactions" within the meaning of California Civil Code §1761(e).

258.   The merchandise purchased by Plaintiffs and other Subclass Members at Defendants' respective stores in California throughout the Class Period are "goods" within the meaning of California Civil Code §1761(a).

259.   Defendants have engaged in unfair methods of competition, and/or unfair and/or deceptive acts or practices against Plaintiffs and other respective Subclass Members, in violation of the CLRA, by making false and/or misleading statements of fact concerning the reasons for, the existence of, and/or the amount(s) of price reductions for products sold to Plaintiffs and other respective Subclass Members at California TJ Maxx, Marshalls, and/or

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

HomeGoods stores throughout the Class Period.  Defendants provided false, deceptive, and/or misleading "Compare At" prices on the price tags of the merchandise sold in their respective California stores, and compared those false and/or misleading comparative prices to the prices at which Defendants sold their merchandise, to give the illusion to consumers that they were receiving a discount, or achieving a saving or bargain when compared to the purchase of those same items at other retailers in the consumers' area.  The promised discounts, savings, and/or bargains, however, were deceptive, misleading, and/or false.

260.    The price reductions alleged by Defendants to be the difference between the "Compare At" prices and Defendants' sale prices did not exist, and were false, deceptive, and/or misleading.

261.    Defendants' acts and/or practices described herein are in violation of California Civil Code §1770(a)(13).

262.    As a result of Defendants' acts and/or practices described herein, Plaintiffs and other respective Subclass Members have been damaged in that Defendants' unlawful, false and/or misleading acts and/or practices described herein played a substantial and material role in each respective Plaintiff's and other respective Subclass Members' decisions to purchase products at Defendants' TJ Maxx, Marshalls, and/or HomeGoods stores in California.  Absent these acts and/or practices, Plaintiffs and other respective Subclass Members would not have purchased the products that they did from Defendants.

263.    Pursuant to California Civil Code §1780(a)(2), Plaintiffs, on behalf of themselves and all other respective Subclass Members, request that this Court enjoin Defendants from continuing to engage in the unlawful and deceptive methods, acts and/or practices alleged herein.  Unless Defendants are permanently enjoined from continuing to engage in such violations of the

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1  CLRA, California consumers will continue to be damaged by Defendants'

2  acts and/or practices in the same way as those acts and/or practices have

3  damaged Plaintiff and other Class Members.

4

5  **PRAYER FOR RELIEF**

6  WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all

7  respective Subclass Members, pray for judgment against Defendants as follows:

8  **CLASS CERTIFICATION**

9  1.  That the Court certify the subclasses herein to proceed as class actions

10  pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or 23(b)(3), adjudge Plaintiffs

11  CHESTER and FRIEDMAN to be adequate representatives of the TJ Maxx

12  Subclass, adjudge Plaintiff BERKOFF to be an adequate representative of

13  the Marshalls Subclass, adjudge Plaintiffs METOYER and BERKOFF to be

14  adequate representatives of the HomeGoods Subclass, and appoint Plaintiffs'

15  counsel as class counsel for each subclass herein.

16  **VIOLATION OF BUSINESS & PROFESSIONS CODE §§17200 *et seq*., and**

17  **17500 *et seq*.:**

18  2.  A judgment awarding Plaintiffs and all respective Subclass Members

19  restitution and/or other equitable relief, including, without limitation,

20  restitutionary disgorgement of all profits, or some portion of profits, and/or

21  unjust enrichment that Defendants obtained from Plaintiffs and the

22  respective Sublasses as a result of the unlawful, unfair and/or fraudulent

23  business practices described herein.

24  3.  An order enjoining Defendants from continuing to violate the UCL and/or

25  FAL as described herein, and/or an order enjoying Defendants from

26  violating the UCL and/or FAL in the future.

27  4.  A judgment awarding Plaintiffs their costs of suit, including reasonable

28  attorneys' fees pursuant to California Code of Civil Procedure §1021.5 and

- 63 -
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1   as otherwise permitted by statute or law, and pre- and post-judgment

2   interest; and,

3   5.   For such other and further relief as the Court may deem proper.

4   **VIOLATION OF CIVIL CODE §1770**:

5   6.   An order enjoining Defendants from continuing to violate the CLRA as

6   described herein, and/or an order enjoying Defendants from violating the

7   CLRA in the future;

8   7.   A judgment awarding Plaintiffs their costs of suit, including reasonable

9   attorneys' fees pursuant to California Civil Code §1780(d) and as otherwise

10   permitted by statute, and pre- and post-judgment interest; and,

11   8.   For such other and further relief as the Court may deem proper.

12

13   **DEMAND FOR JURY TRIAL**

14   Plaintiff hereby demands a trial by jury for all claims so triable.

15

16

17   Dated: September 3, 2015          By:

18   */s/ Christopher J. Morosoff*

19   CHRISTOPHER J. MOROSOFF,
     LAW OFFICE OF CHRISTOPHER J.

20   MOROSOFF

21   Attorneys for Plaintiffs

22

23

24

25

26

27

28

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT