**O**

# United States District Court
# Central District of California

| | |
|---|---|
| STACI CHESTER; DANIEL FRIEDMAN; ROBIN BERKOFF; and THERESA METOYER, individually and o/b/o those similarly situated, | Case № 5:15-cv-01437-ODW (DTB) |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS [36]** |
| v. | |
| THE TJX COMPANIES, INC.; TJ MAXX OF CA, LLC; MARSHALLS OF CA, LLC; HOMEGOODS, INC; and DOES 1–100, inclusive, | |
| Defendants. | |

*"You keep using that word.  I don't think it means what you think it means."*[1]

# I.    INTRODUCTION

Currently pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint ("Compl.").  (ECF No. 36.)  For the reasons discussed below, the Court **DENIES** Defendants' Motion.

# II.    FACTUAL BACKGROUND

## A. General Allegations

Plaintiffs, both individually and on behalf of those similarly situated, bring suit against TJX Companies, Inc. and three off-price retailers under its umbrella: TJ Maxx, Marshalls, and HomeGoods (collectively, "Defendants").  (Compl. ¶ 6, ECF No. 28.) Plaintiffs raise claims under the California Business & Professions Code § 17200, *et seq.* ("Unfair Competition Law," "UCL"), § 17500, *et seq.* ("False Advertising Law," "FAL"), and California Civil Code § 1750, *et seq.* ("California Consumer Legal Remedies Act," "CLRA").  (*Id.* ¶ 2.)

At issue is the mechanism by which Defendants advertise the price of items at each TJX Companies store.  The price tags Defendants use list (1) the price the retailer is selling the item for; and (2) a higher, comparative reference price accompanied by the phrase, "Compare At."  (*Id.* ¶ 24.)  No additional information is provided on the tag or near the advertisement itself that defines the term "Compare At" or otherwise offers context for the pricing provided.  (*Id.* ¶ 25.)  Some of Defendants' products also have a second price tag noting a purported manufacturer's suggested retail price, or "MSRP," for an item.  (*Id.* ¶ 26.)  The price tags are materially identical across all TJX Companies stores.  (*Id.* ¶ 7.)

Defendants' definition of "Compare At" can be found only by scouring the TJ Maxx website or by noticing a sign near the customer service and returns counter at

---

[1] *The Princess Bride* (Act III Communications & Twentieth Century Fox 1987).

one of its retailer stores.  (*Id.* ¶ 85; TJX "Compare At" Definition Signs (hereinafter "Definition Signs"), Def. Req. for Judicial Not., Exs. C–D, ECF No. 37.)   The "compare at pricing" link on the TJ Maxx website is found amongst the fine print, on the bottom-left of the page, alongside links to the stores' privacy policies, terms of use, and a site map.  (*Id.* ¶ 60.)  Only after clicking on this link would a consumer find a definition:

> What do we mean by "compare at"?  The "compare at" price is our buying staff's *estimate of the regular, retail price at which a comparable item in finer catalogs, specialty or department stores may have been sold.* We buy products from thousands of vendors worldwide, so the item may not be offered by other retailers at the "compare at" price at any particular time or location.  We encourage you to do your own comparison shopping as another way to see what great value we offer.

(*Id.* ¶ 61 (emphasis added).)

Plaintiffs contend that they, like other reasonable consumers, "do not interpret a 'Compare At' reference price to be merely an 'estimate' of what a 'comparable' product 'may' have sold for."  (*Id.* ¶ 82.)  Instead, they assume that the "Compare At" tags list "prices at which the 'principal retail outlets' in California have sold, or are selling, those products in any 'substantial volume.'"  (*Id.* ¶ 52.)  Because Defendants reach their "Compare At" pricing by relying on unverified comparative prices that are mere "estimates" of prices that retailers "may" have sold a similar item, and where "as here, the retailer and the consumer do not share the same meaning of the semantic cue ('compare at'), [] the phrase is open to more than one interpretation, [and] the use of that phrase is misleading and deceptive," Plaintiffs argue that Defendants are in violation of Federal Trade Commission ("FTC") Guidelines.[2]  (*Id.* ¶¶ 37–53, 86.)

---

[2] The FTC Pricing Guides provide rules for merchants that claim to "offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area."  16 C.F.R. § 233.2(a).   The FTC requires that, when merchants use advertisements that compare prices, "the advertised higher price must be based upon fact, and not be fictitious and misleading."   *Id.* Furthermore, when an advertiser "represents that he is selling below the prices being charged in his area for a particular article," that advertiser must be "reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being

**B. Plaintiff-Specific Allegations**

Plaintiffs bring this action against Defendants on behalf of themselves and all other consumers who have purchased items at a TJX Companies store in California between July 17, 2011, and present day. (Compl. ¶ 7.) Plaintiffs allege that:

> [They] reasonably believed, like all reasonable consumers, that the "Compare At" prices represented the prices that they would expect to play for those same products at other retailers in their general area. In other words, Plaintiffs reasonably believed that the "Compare At" prices referred to the then prevailing retail prices for those same items—that if they left Defendants' stores and shopped around for those same products, they would likely find them elsewhere at the higher "Compare At" prices provided by Defendants.

(*Id.* ¶ 58.) Each Plaintiff also alleges that, but for the perceived bargain implied by the "Compare At" pricing, they would not have purchased the items. (*Id.* ¶¶ 146, 155, 165, 175, 184.)

Plaintiff Staci Chester is a resident of Riverside County, California and alleges that, on at least two occasions, she purchased products from the Palm Desert, California TJ Maxx store. (*Id.* ¶ 8.) In June 2015, Plaintiff Chester "purchased 2 Jessica Simpson handbags . . . for $24.99 each, for a total payment, including sales tax, of $53.98." (*Id.* ¶ 139.) Each bag was advertised with two prices on the tag: a sale price of $24.99 and a "Compare At" reference price of "$48.00+UP." (*Id.* ¶ 140.) Each bag also included the purported original price tag, which listed an MSRP of $68.00. As such, Chester alleges that the "Compare At" price and the MSRP price were not accurate representations of the prices at which a "substantial volume of sales" of the Jessica Simpson handbag where made in principal retail outlets in California in June 2015. (*Id.* ¶¶ 141–42.)

---

made in the area." *Id.* At the core of this FTC guideline is the notion that consumers should be able to "consider a reduction from the price to represent a genuine bargain or saving" when they encounter a comparative reference price. Even where merchants compare not the *same* merchandise, but rather *comparable* merchandise, the advertised price cannot "exceed the price at which such merchandise is being offered by representative retail outlets in the area." 16 C.F.R. § 233.2(c).

Plaintiff Daniel Friedman is a resident of Los Angeles County, California who, at least ten times during the class period, purchased items from a TJ Maxx store in Westlake Village, California.  (*Id.* ¶ 9.)  On October 18, 2014, Friedman purchased men's clothing items; the prices of these items ranged from $5.99 to $49.99.  (*Id.* ¶ 147.)  One item listed a selling price of $5.99 alongside a "Compare At" price of $10.00.  (*Id.* ¶ 147.)  Similarly, on July 3, 2015, Friedman purchased a clothing item at Defendants' Westlake Village store that sold for $6.99 but offered a "Compare At" price of $14.00.  (*Id.* ¶ 149.)

Plaintiff Robin Berkoff is a resident of Riverside County, California.  She alleges that she purchased items from a Palm Desert, California Marshalls store at least five times and, at least ten times, made purchases at HomeGoods stores in Palm Desert and Bermuda Dunes.  (*Id.* ¶ 10.)  She purchased tee-shirts and other items from Marshalls and home décor, storage items, and candles from HomeGoods.  (*Id.* ¶¶ 19–20.)  On May 28, 2015, Berkoff purchased a "Missy" tee shirt from a Marshalls store that advertised a selling price of $12.99 alongside a "Compare At" price that, as she alleges, was a deceptive, untrue, and misleading price representation.  (*Id.* ¶ 157.)  On May 3, 2015, Berkoff purchased several items at a HomeGoods store, and these items ranged in price from $9.99 to $24.99.  (*Id.* ¶ 167.)  One such item listed a selling price of $24.99 as well as a "Compare At" price of $40.00.  (*Id.*)

Plaintiff Theresa Metoyer is a resident of Riverside County, California who, on over ten occasions, purchased products from a Mira Loma, California HomeGoods store.  (*Id.* ¶ 11.)  She purchased bath rugs, lamps, and dinnerware.  (*Id.* ¶ 21.)  On April 11, 2015, she spent $99.33 on HomeGoods items.  (*Id.* ¶ 177.)  One such item listed a selling price of $29.99 and a "Compare At" reference price of $75.00.  (*Id.*)

### III.   PROCEDURAL BACKGROUND

Plaintiffs Staci Chester and Daniel Friedman filed their original Complaint on July 17, 2015.  (ECF No. 1.)  Chester, Friedman, and the Plaintiffs in two related

actions (Robin Berkoff and Theresa Metoyer), along with Defendants, then stipulated to consolidate all three actions.   (ECF No. 23.)    After the Court granted the consolidation, Plaintiffs filed their Consolidated Complaint with this Court on September 3, 2015.  (ECF Nos. 23, 28.)   Defendants then moved to dismiss the Consolidated Complaint on October 19, 2015.  (ECF No. 36.)  Plaintiffs filed a timely opposition, and Defendants tendered a timely reply.  (ECF Nos. 38, 40.)  The Court held a hearing on the matter on January 11, 2016.  (ECF No. 54.)   The matter is now before the Court for decision.

## IV.    REQUEST FOR JUDICIAL NOTICE

Both Plaintiffs and Defendants filed Requests for Judicial Notice in conjunction with the motion at bar.   (ECF Nos. 37, 39.)  Both parties also filed several Notices of Recent Authority.  (ECF Nos. 42, 59–61.)  The Court **GRANTS** the parties' requests and hereby takes judicial notice of the recent, applicable case law, administrative opinions, and photographic evidence.

When considering a motion to dismiss, courts typically do not look beyond the complaint so as to avoid converting a motion to dismiss into a motion for summary judgment.  *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  Notwithstanding this principle, a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint and (2) matters in the public record.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). A court may also take judicial notice pursuant to Federal Rule of Evidence 201(b). Under the rule, a judicially noticed fact must be one that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court "must take judicial notice if

a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2); *see also In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). Courts regularly take judicial notice of filings in other proceedings.  *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) ("In particular, we 'may take notice of proceedings in other courts, *both within and without the federal judicial system*, if those proceedings have direct relation to matters at issue.'") (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Boreno, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992))) (emphasis added).

The parties request that the Court take notice of conflicting recent authority concerning the issues at bar.  Accordingly, the Court judicially notices *Sperling v. Stein Mart, Inc.*, 5:15-cv-01441-BRO-KKx (C.D. Cal. March 15, 2016); *Sperling v, DSW Inc.*, 5:15-cv-01366-JGB-SP (C.D. Cal. Jan. 28, 2016); *Sperling v. Stein Mart, Inc.*, 5:15-cv-01441-BRO-KKx (C.D. Cal. Jan. 26, 2016); *Sperling v, DSW Inc.*, 5:15-cv-01366-JGB-SP (C.D. Cal. Nov. 19, 2015); *Rubenstein v. The Neiman Marcus Grp. LLC*, No. 2:14-cv-07155 (C.D. Cal. Dec. 12, 2014); *Rubenstein v. The Neiman Marcus Grp. LLC*, No. 2:14-cv-07155 (C.D. Cal. May 12, 2015); *Russell v. Kohl's Dept. Stores, Inc.*, 5:15-cv-01143-RGK-SP (C.D. Cal. Oct. 6, 2015); *Branca v. Nordstrom, Inc.*, 14-cv-02062-MMA (JMA) (S.D. Cal. Oct. 9, 2015); and *Horosny v. Burlington Coat Factory of CA, LLC*, 15-cv-05005-SJO (MRWx) (C.D. Cal. Oct. 26, 2015).  The Court also takes notice of state court decision *People of the State of California v. Overstock.com, Inc.*, No. RG10-546833 (Alameda Super. Ct. Feb. 5, 2014).

Defendants also request judicial notice of an Opinion of the California Attorney General and a compilation of photographs of the "Compare At" signs posted in TJ Maxx and HomeGoods stores in Palm Desert, California and in a Marshalls store in La Quinta, California.  (*See* Definition Signs.)  Opinions of the California Attorney General are judicially noticeable public documents, and thus the Court will accept this Opinion for purposes of the instant motion.  *See Cent. Delta Water Agency v. U.S.*

*Fish & Wildlife Serv.*, 653 F. Supp. 2d 1066, 1079 (E.D. Cal. 2009) (where publicly available, Opinions of the California Attorney General are judicially noticeable).  The Court will likewise take notice of the photograph compilation, as they are not subject to reasonable dispute and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

## V.   LEGAL STANDARD

### A. Rule 12(b)(1)

A party may, at any time, move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1), h(3).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  The court "need not presume the truthfulness of the plaintiffs' allegations," *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), and may generally "resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 (9th Cir. 2003).  "Where jurisdiction is intertwined with the merits," the Court must "assume the truth of the allegations in a complaint . . . unless controverted by undisputed facts in the record."  *Warren. v. Fox*

*Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal citation and quotation marks omitted).

**B. Rule 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well*

*Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### C. Rule 9(b)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. *Odom*, 486 F.3d at 553. Although conclusory allegations of the circumstances constituting the alleged fraud are insufficient, *see Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989), a party is not required to plead with specificity the alleged wrongdoer's state of mind, *see Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."). Leave to amend, however, "is properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## VI.   DISCUSSION

Defendants move to dismiss Plaintiffs' Consolidated Complaint based on two, separate overarching arguments that Plaintiffs (1) lack standing to pursue their claims

and (2) have failed to state a claim.  The Court addresses each argument, and their subsets, in turn.

## A. Rule 12(b)(1): Standing

Defendants contend that Plaintiffs lack the requisite standing to even bring their claims.  (Mot. 19–24, ECF No. 36.)  However, because a 12(b)(1) motion cannot rely on factual issues that go to the merits of the case, the Court will not dismiss this case on standing grounds.

### 1. Injury in Fact

Article III, Section 2, of the United States Constitution restricts the federal "judicial Power" to the resolution of "Cases" and "Controversies," and this case-or-controversy requirement is met where the plaintiff has standing to bring his or her suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992); *see also Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  To satisfy Article III standing, a plaintiff must show that (1) he has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged actions of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868–69 (9th Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).  The plaintiff bears the burden of establishing these elements, and standing must be present at the time the action is brought.  *Lujan*, 504 U.S. at 561, 570 n.5.

Furthermore, the UCL, FAL, and CLRA have their own statutory requirements beyond the constitutional minimums.  "Under California's UCL and FAL, a private person has standing only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'"  *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1087 (N.D. Cal. 2013) (quoting Cal. Bus. & Prof. Code § 17204).  A plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury

was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (2011) (emphasis in original); *see also Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA JMA, 2015 WL 1841231, at *3 (S.D. Cal. Mar. 20, 2015) ("*Branca I*"). Similarly, under CLRA, the plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage." *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (internal quotation marks omitted).   In sum, to have standing to sue under the FAL, UCL, or CLRA, the plaintiff must allege (1) that he suffered an economic injury, and (2) that he actually relied on the purported material misrepresentation. *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111–12 (S.D. Cal. 2011) (citing *Kwikset*, 51 Cal.4th at 326–27).

Defendants maintain that Plaintiffs' failure to "identify the products they purchased, specify the corresponding selling and 'Compare At' prices, and allege what the 'Compare At' prices should have been" leaves them without standing, both constitutional and statutory, in this Court.  (Mot. 21; Reply 18, ECF No. 40.)  They claim that, without a showing that the "Compare At" prices "were not a reasonable indicator of prevailing market prices," Plaintiffs have failed show that they were injured.  (Reply 18.)

Yet at the crux of Defendants' jurisdictional argument sits the merits of this case.  An assessment of the merits informs whether the purportedly necessary facts are, in fact, necessary.  Whether the "Compare At" price was or was not an accurate reflection of prevailing prices for the advertised item, or whether the difference between the selling price and the reference price was large enough to be material, are questions this litigation was designed to answer—and where standing requires factual determinations on the merits, courts must refrain from deciding such issues on a motion to dismiss.

The Ninth Circuit has explained that, in the context of false advertising claims under California law, consumers suffer an "injury-in-fact" for Article III purposes

when, as a result of false advertising, they purchase a product "when they otherwise would not have done so." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013), as amended on denial of reh'g and reh'g en banc (July 8, 2013); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("To the extent that class members were relieved of their money by [defendant's] deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'" (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011))); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (explaining that plaintiffs' "claim that, as a result of defendants' actions, they paid more for their homes than the homes were worth at the time of sale," and "claim that they would not have purchased their homes had defendants made the disclosures allegedly required by law" constituted "a quintessential injury-in-fact").

However, this Court "may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). The question of whether Plaintiffs have standing in this case is dependent on the resolution of factual issues going to the merits—namely whether Defendants' conduct was deceptive and/or misleading, and thus the cause of an economy injury. This Court in *Sperling v. Stein Mart, Inc.*, 15-cv-1411-BRO-KK, ECF No. 41 (C.D. Cal. Mar. 15, 2016) ("*Sperling II*") (Not. of Decision, ECF No. 61), likewise refrained from hearing defendant's standing arguments at the motion to dismiss stage. *Id.* at 9. While the *Sperling II* defendant did not argue that a lack of specificity in the complaint warranted dismissal under 12(b)(1)—but rather that plaintiff quite simply could not be injured by a "Compare At" price tag—the difference is immaterial. *See id.* Whether a plaintiff would need certain facts in her complaint to prove a false advertising claim, or whether the lack of those facts prove the veracity of those same ads, asks questions at the heart of the merits inquiry. Moreover, with Defendants already challenging the

factual support, or lack thereof, in Plaintiffs' Consolidated Complaint in their Rule 12(b)(6) arguments, *see infra*, the Court has a more appropriate avenue to consider the sufficiency of Plaintiffs' pleadings. Accordingly, the Court **DENIES** Defendants' standing challenge at this stage of the litigation.

### 2. Standing to Bring Claims for Items Purchased by Others

Defendants next challenge Plaintiffs' abilities to bring claims on behalf of other consumers who may have purchased items at a TJX Companies retail store. (Mot. 22.) Because the Court recognizes that standing is to be a jurisdictional benchmark and not a bludgeon with which to bat litigants out of the courthouse, the Court **DENIES** Defendants' 12(b)(1) motion on such grounds.

Without a limit on what "items" may fall within Plaintiffs' putative claims, Defendants argue that Plaintiffs' class action now falls outside the scope of the UCL and FAL. (*Id.*) Plaintiffs counter and argue that litigants "may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Dorsey v. Rockhard Labs., LLC*, No. CV 13-07557 DDP RZX, 2014 WL 4678969, at *3 (C.D. Cal. Sept. 19, 2014) (citing *Miller v. Ghiradelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Because the Court does not undertake the selective reading of case law that Defendants request, the Court finds that Plaintiffs have standing to raise claims for items purchased by unnamed class members.

The Court's decision in *Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA (JMA), 2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) ("*Branca II*"), is illustrative. Just like Plaintiffs at bar, Branca claimed that Nordstrom Rack's "Compare At" pricing scheme violated the UCL, FAL, and CLRA. *Id.* at *5. After a detailed tour through the applicable precedent (or lack thereof), the Court determined that the level of similarity between the items purchased by unnamed class members and those purchased by the named plaintiff informs the standing inquiry. *Id.* at *4–5. The Court then found that, while a careful look at the type of consumer targeted and the

similarities in usage of the products can help the Court, *id.* at *5, sufficient similarities in the *misrepresentations* may afford a litigant standing to sue on behalf of the unnamed class where the composition of the products themselves are of lesser importance to the litigant's claims. *Id.* (citing *Miller*, 912 F. Supp. 2d at 869). The *Branca II* Court then found that a challenge to reference pricing is more analogous to cases challenging labeling practices, not the products themselves, and thus the variance in product is of little importance in comparison to the misrepresentation scheme. *Branca II*, 2015 WL 10436858, at *5. The Court further held that "[t]he 'Compare At' tags are substantially similar because the characteristics and format that Plaintiff complains of remain consistent across such tags," and thus the plaintiff had standing to sue on behalf of purchasers of other Nordstrom Rack items with the "Compare At" tags. *Id.*

The Court sees no reason to depart from it sister court's thorough and informed analysis. Plaintiffs here challenge the "Compare At" price labeling, which remains consistent across items in each of Defendants' stores, regardless of its placement in the home goods, shoe, or men's clothing departments. To say that Plaintiff Chester only has standing to sue on behalf others who purchased a Jessica Simpson handbag in a TJ Maxx store—and only a Jessica Simpson handbag—is to make a mockery of the false advertising class action itself and, based on such logic, a clear way to burden an already overburdened judicial system. No court wishes to become a pit of despair, whereby it must adjudicate a claim for each individual item on a TJ Maxx shelf in order to rectify an alleged UCL, FAL, or CLRA violation.

### 3. Prospective Injunctive Relief

Finally, Defendants argue that Plaintiffs cannot establish standing for prospective relief. (Mot. 23.) Without an allegation in the Consolidated Complaint that these Plaintiffs intend to purchase any items from its retailers in the future, Defendants argue, Plaintiffs have no likelihood of again suffering a similar injury and thus lack standing to seek prospective relief. (*Id.* 23–24.)

To establish Article III standing for injunctive relief, in addition to the constitutional standing elements described above, plaintiffs must show "a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). Furthermore, in the context of a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

It is inconceivable to think prospective relief in the false advertising context is bound by the rules of "fool me once, shame on you; fool me twice shame on me." The Court is unwilling to play Defendants' game, and refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not voluntarily be deceived again—and thus no court can enjoin deceptive practices without ignoring Article III's standing requirements. Instead, the Court looks to the reasoning of our sister courts, which have held that California's consumer laws are designed "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset*, 51 Cal.4th at 320. To follow Defendants' arguments would "eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012); *see also Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 46822, at *10 (N.D. Cal. Jan. 6, 2014). This Court will not, as Defendants wish, sound the death knell over California's consumer protection scheme. Defendants' motion to dismiss the injunctive relief claim is denied.

## B. Rule 12(b)(6): Plaintiffs' FAL, UCL, and CLRA Claims

Plaintiffs allege that Defendants' "Compare At" price tags violate the FAL, UCL, and CLRA because they are interpreted as listing actual retail prices at which

consumers have purchased the item—not, as Defendants argue, "comparable value comparisons." (Opp'n 1, ECF No. 38.)  Defendants move to dismiss Plaintiffs' FAL, UCL, and CLRA claims under Rules 12(b)(6) and 9(b) on the grounds that Plaintiffs have failed to provide (1) factual support for their argument that the "Compare At" prices are inflated or unverified; (2) proper identification of the products they allegedly purchased, their selling prices, and the "Compare At" prices on which they relied; and (3) any basis for concluding that a "reasonable" consumer would be duped by Defendants' reference pricing scheme.  (Mot. 2.)

## 1.  California's FAL, UCL, and CLRA

California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17500.  Under the FAL, "it is unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]'"  *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023–24 (N.D. Cal. 2011) (internal citation omitted).  Furthermore,

> [t]he statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. . . . Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under this section.

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (internal citations, quotations, and alterations omitted); *see also Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679 (2006) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The UCL provides a separate theory of liability under each of the three prongs: "unlawful," "unfair," and "fraudulent."  *Stanwood v. Mary Kay, Inc.*,

941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007)). "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition." *Hinojos*, 718 F.3d at 1103. Accordingly, any violation of the FAL also violates the UCL. *L v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002)).

Finally, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Specifically, the law makes illegal various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan*, 135 Cal. App. 4th at 680 (quoting *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 54 (2003)).

## 2.  The Reasonable Consumer Test

To state a claim under the FAL, UCL, or the CLRA, the plaintiff must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer. *See Williams*, 552 F.3d at 938 (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) ("To state a claim under the [UCL and FAL] one need not plead and prove the elements of a tort. Instead, one need only show that 'members of the public are likely to be deceived.'") (citations omitted). "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Davis*, 691 F.3d at 1161–62 (quoting *Colgan*, 135 Cal. App. 4th at

682).  "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *In re Sony*, 903 F. Supp. 2d at 967 (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Instead, "the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be mislead [sic]."  *Id.*  "In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself."  *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1092 n.20 (N.D. Cal. 2013) (quoting *Colgan*, 135 Cal. App. 4th at 679) (internal quotation marks omitted).

Finally, courts have recognized that "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on [a motion to dismiss]."  *Williams*, 552 F.3d at 939 (internal quotations removed) (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (2007).

### 3.  Analysis

#### i.  Consolidated Complaint Adequately States a Claim

Defendants move to dismiss Plaintiffs' Consolidated Complaint on the grounds that the pleading is conclusory and devoid of supporting facts, and thus insufficient under Rule 8.  (Mot. 9.)  The retailers contend that Plaintiffs must offer "actual facts explaining how and why the claims about the product were false or misleading."  (*Id.* 10.)  Plaintiffs, in turn, remind the Court that all allegations must be taken as true at the pleading stage, and argue that it is only in the "rare situation" where an advertisement itself "ma[kes] it impossible for the plaintiff to prove that a reasonable consumer [could be] deceived" should a court dismiss a false advertising claim at the pleading stage.  *Williams*, 552 F.3d at 939.  (Opp'n 6–7.)  The Court agrees with Plaintiffs.

At the heart of parties' battle of wits is whether a consumer would "reasonably" find Defendants' reference prices to be misleading or deceptive.  *See Reid*, 780 F.3d at 958.   The advertising itself, and not any additional facts designed to prove the effectivity of the ad, serves as the "primary evidence" in a false advertising action. *Williams*, 522 F.3d at 938.   Plaintiffs argue that Defendants cannot claim with a straight face that consumers assume a comparison price refers to a "value estimate." (*See* Compl. ¶¶ 62–65, 76, 79; Opp'n 10.)   Instead, a reasonable consumer would assume that the "Compare At" price has some basis in reality, and that consumers are at least being asked to compare current or recent sales of the item at other similar stores. (*Id.*)  Defendants counter and claim that advertisers are fully within their rights under the FTC Guidelines to offer price comparisons between one item and another of comparable value, and that those comparisons can be based on good faith estimates. (Mot. 13–14.)

What Defendants do not address is that, while the FTC does allow for comparisons between items, those comparison prices cannot "appreciably exceed the price at which substantial sales of the article are being made in the area." 16 C.F.R. § 2332(a).  The FTC Guidelines clearly state that comparisons must be based on actual prices, not "estimates" of prices at which "a comparable item" in another store or catalog "may" have been sold.  (Compl. ¶ 61.)  Moreover, Defendants' full definition of its "Compare At" pricing scheme even says that the item "may not be offered by other retailers at the 'compare at' price at any particular time or location." (*Id.*)  If Defendants believe that "estimates" are the same as "comparisons with actual merchandise," then the Court is here to say that this word does not mean what you think it means.  In fact, the FTC guidelines clearly outline that reference prices meant to reflect comparable values must be actual "prices being charged" by other, similar retailers in the geographical region at that point in time, and not "estimates" of what a fictitious retailer *may* charge.  16 C.F.R. § 233.2(c).

Moreover, even if the "Compare At" tags *are* proper comparisons of like-valued items, the Federal Trade Commission sets a further limitation on how far retailers may stretch their price representations before crossing the line into the fire swamp of misrepresentation and deceit.  The Guidelines require retailers who use reference pricing to make "clear to the consumer that a comparison is being made with other merchandise."  *Id.*  Defendants have failed to communicate their definition of "Compare At" to their customers, and a link at the bottom of a webpage and a sign near the return counter, not the sales counter, will not suffice.  Defendants use the "Compare At" pricing for every item in each of their stores, and consumers are confronted with those advertisements when they make their decision to purchase an item.  Yet nowhere on the tag is there even an asterisk or hint that the comparison price is not comparing the same item, or may not be based on real sales.  The more precise definition of the "Compare At" price is kin to the ever-elusive six-fingered man, and it is unrealistic for Defendants to expect consumers to pull out their smart phones and search the retailer's website[3] for a definition of the seemingly clear phrase, or chance that they see a sign offering insight before they reach the check-out counter. *See Williams*, 522 F.3d at 939 (reasonable consumers should not "be expected to look beyond misleading representations . . . to discover the truth" beyond an advertiser's claims).  The advertisements, therefore, are not clearly communicating that the comparison is not between the same item, but *like* items.

Defendants, however, ask this Court to look to *Sperling v. Stein Mart, Inc.*, 15-cv-1411, ECF No. 35 (Jan. 26, 2016 C.D. Cal.) ("*Sperling I*").  (Not. of Recent Authority, ECF No. 59.)  The facts between *Sperling* and the case at bar are strikingly similar, with Stein Mart using "Compare At" pricing, just like Defendants, but with an added asterisk after the reference price.  *Sperling I* at 13.  In Judge Beverly Reid O'Connell's first order granting defendant Stein Mart's Motion to Dismiss, the Court

---

[3] This assumes the consumer is shopping at TJ Maxx, the only TJX Companies retailer that lists the "Compare At" definition online.  (Mot. 17 n.12.)

found plaintiffs' lack of detail concerning the "Compare At" pricing scheme to be "unqualified," and thus insufficient to properly allege that the reference pricing was "misleading." *Id.* However, this order was not the last in *Sperling v. Stein Mart*; less than three months later, the same court denied defendant's next Motion to Dismiss, finding Plaintiff Sperling's minor adjustments in her Third Amended Complaint to be sufficient to allege misrepresentation. *Sperling v. Stein Mart, Inc.*, 15-cv-1411, ECF No. 41 (Mar. 15, 2016 C.D. Cal.) ("*Sperling II*"). Where Sperling's first complaint did not address the asterisk after Stein Mart's "Compare At" pricing label, her amended pleading noted that, even with an asterisk to potentially direct consumers to seek out a proper definition of the phrase, the asterisk did not "serve to adequately disclose to consumers that comparisons are being made to non-identical items," and that consumers would reasonably believe the "Compare At" price would denote comparisons to the same item. *Id.* at 7.

The Court finds *Sperling II* to be the more persuasive of the series, and more applicable to the instant case. Plaintiffs have sufficiently alleged that the price tag *could* mislead a reasonable consumer, and that a reasonable consumer does not believe that "Compare At" refers to an *estimated value* instead of an actual item in a competitor's store. (Compl. ¶¶ 62–65, 76, 79.) What is more, the plaintiff in *Sperling II* satisfied Rule 9's heightened pleading standard even where Stein Mart's asterisk begged consumers to dig deeper into their suggested definition of the reference price. Defendants here offer no such asterisk, that little grammatical wink to imply that there is more for the consumer to know and understand—such as the side effects of a miracle drug, the vast limitations of an insurance plan provision, or the "real" meaning behind the wording in an advertisement.

Finally, there is a reason Defendants, just like Stein Mart and others, use reference pricing: it makes consumers think they are getting a deal. If the phrasing did not work just so, retailers would find another way to get consumers in the door and its merchandise in people's shopping carts. Consumers are easily wooed by "Compare

At" pricing advertisements because they believe that they are not only getting a deal, but also a high-quality item at a wallet-friendly price.  When these reference prices are misleading, the consumer suffers an "obvious economic injury as a result of false advertising . . . because the bargain hunter's expectations about the product he just purchased is precisely that it has a higher perceived value and therefore has a higher resale value." *Hinojos*, 718 F.3d at 1106.  Defendants' game of relying on the plain meaning of the "Compare At" phrase to get people to shop at its stores while also claiming that the phrase's definition is, in fact, qualified beyond recognition is not very sportsmanlike.  Anyone who says differently is selling something.

In sum, because the question of whether an advertiser's actions are deceptive is not usually proper for decision at the pleading stage, *Williams*, 552 F.3d at 938–39, and because Defendants' "Compare At" price tag is not so wholly clear that any misconception as to its meaning is, *ipso facto*, unreasonable, the Court denies Defendants' claim.

### ii.  Additional Pleading Requirements under FAL, UCL, and CLRA

Similarly, Defendants contend that Plaintiffs' pleading falls short of Rule 9(b)'s heightened pleading standards.  (Mot. 8.)  They assert that, without alleging (1) the item each Plaintiff purchased; (2) the selling price for that item; (3) the advertised "Compare At" price for that item; and (4) *what the "Compare At" price should have been and why*, Plaintiffs have failed to plead their fraud claims with sufficient particularity.  (*Id.* (emphasis added).)

Claims made under the UCL, FAL, and CLRA must also meet the heightened pleading standards required by Rule 9.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9 adds additional heft to Rule 8's pleading standards, and mandates that litigants bringing deceptive practices claims allege "the who, what, when, where, and how" of the supposedly fraudulent conduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  "It is well settled that fraud [a]llegations based on

1    'information and belief' do not satisfy the particularity requirement of Rule 9(b)

2    unless the complaint sets forth the facts on which the belief is founded." *Comwest,*

3    *Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) (alteration

4    in original).

5          The Court does not agree with Defendants' interpretation of Rule 9's strictures.

6    Plaintiffs are not required to list the selling price, "Compare At" price, and *what the*

7    *reference price should have been* in order to survive a Motion to Dismiss. (*See* Mot.

8    8.) Contrary to Defendants' wishes, litigants do not need to plead the "who, what,

9    when, where, and how" when access to answers for those questions is in Defendants'

10   control. Instead, a plaintiff must "plead[] with particularity how and why he was

11   personally deceived by the 'Compare At' tags." *Branca II*, 2015 WL 10436858, at *7.

12   The focus is on whether enough facts support a reasonable consumer's reaction to an

13   allegedly deceptive advertisement—not whether enough facts can definitively prove

14   fraud at the pleading stage.

15         Defendants turn to *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) for

16   support, yet the pleading at issue in *Kearns* is inapposite. (*See* Mot. 8–9.) In *Kearns*,

17   the Ninth Circuit found that the plaintiff's pleading did not "articulate the who, what,

18   when, where, and how of the misconduct alleged" where he offered no facts

19   concerning (1) the material statements in the allegedly deceptive advertisements; (2)

20   when he saw these advertisements; (3) which materials he relied on when making his

21   purchasing decision; (4) who told him that certified pre-owed vehicles were "the best

22   used vehicles available"; or (5) when this alleged statement was made. *Id.* at 1126.

23   Such is not the case here. Plaintiffs have clearly plead that Defendants (the "who"),

24   with their use of "Compare At" pricing tags ("what")[4], mislead consumers into

---

25   

26   [4] With every item in Defendants' stores sold with a "Compare At" pricing label, the exact identity of each item is immaterial. Plaintiffs' claims are rooted in the misrepresentations that the labels provide, and how they induce consumers to purchase Defendants' items under the veil of a perceived

27   bargain. These claims are not item-specific, and as such the "what" in the Rule 9 calculus must properly refer to the label, not the item itself. However, even if the items themselves are material to

28   the analysis, plaintiffs in similar actions who merely allege that they purchased "one pair of pants,"

believing that the reference price reflected the selling prices offered at other similar retailers in the region.  (Compl. ¶¶ 146, 155, 165, 175, 184.)  Each named Plaintiff also pleads "when" he or she purchased an item with the suspect price reference tag: Chester in June 2015; Friedman on October 18, 2014 and July 3, 2015; Berkoff on May 3, 2015 and May 28, 2015; and Metoyer on April 11, 2015.  (*Id.* ¶¶ 139, 147, 149, 157, 167, 177.)  Each Plaintiff also notes the store "where" he or she shopped. (*Id.* ¶¶ 8–11.)

As for the "how," Defendants misrepresent this final Rule 9 hurdle.  Defendants argue that, without noting what the "Compare At" price should have been and why, Plaintiffs cannot establish whether they received the benefit of their bargain and were, therefore, harmed (and if not, then the reference price could not be misleading).  (Mot. 8.)  Yet Plaintiffs do not need to allege that the deal they received on their purchases was subpar, or even that the items were unfairly priced—such allegations are not required to state a UCL, FAL, or CLRA claim.  *See Branca II*, 2015 WL 10436858, at *8.   These statutes aim to curb deceptive or false price reductions, and where a litigant, as here, pleads that the "Compare At" price tag would deceive a reasonable consumer, then Rule 9(b) is satisfied.

However, even if the extent of Plaintiffs' bargain *was* relevant, this Court refuses to require Plaintiffs to know what the reference price "should have been," as "facts supporting allegations of fraud that are exclusively within the defendant's possession and of which a plaintiff cannot be expected to have personal knowledge prior to discovery" are not held to Rule 9's heightened strictures.  *Id.* (citing *Estate of Migliaccio v. Midland Nat'l Life Ins.*, 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006)).  Plaintiffs cannot be expected to know what a particular item sold for in every retailer in southern California in a given month; to require a litigant to plead with such an

---

or a "pair of cargo fleece pants," or even "an unspecified number of purchases" and were misled by the attached price tags have survived motions to dismiss.  *Branca II*, 2015 WL 10436858, at *1; *Horosny v. Burlington Coat Factory of CA, LLC*, 15-cv-05005-SJO (MRWx), ECF No. 30 at 3 (C.D. Cal. Oct. 26, 2015).  Plaintiffs' lack of perceived specificity here likewise will not doom their case.

exacting level of specificity is akin to requiring the consumer to tell the merchant what price it is allowed to fetch without running afoul of FTC Guidelines or state law. Such an absurd requirement would leave every litigant outside the courthouse gate and the UCL, FAL, and CLRA unused and useless.   Instead, simply meeting the "reasonable consumer test" will suffice to meet the "how" prong, and Plaintiffs here have properly alleged that the "Compare At" price can deceive a reasonable consumer into assuming that the price is comparing the selling prices of like items in like stores. (Compl. ¶¶ 62–65, 76, 79.)

Accordingly, and swearing it will be done, the Court **DENIES** Defendants' Motion and holds that Plaintiffs have sufficiently plead their UCL, FAL, and CLRA claims.

## VII.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Dismiss in its entirety.  (ECF No. 36.)

**IT IS SO ORDERED.**

August 18, 2016

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**