SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
CRAIG CARDON, Cal. Bar No. 168646
JAY T. RAMSEY, Cal. Bar No. 273160
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:   310.228.3701
ccardon@sheppardmullin.com
jramsey@sheppardmullin.com

ROPES & GRAY LLP
JOHN P. BUEKER (admitted *pro hac vice*)
ALIKI SOFIS (admitted *pro hac vice*)
Prudential Tower -800 Boylston Street
Boston, Massachusetts  02199-3600
Telephone:  617.951.7951
Facsimile:   617.235.0609
john.bueker@ropesgray.com
aliki.sofis@ropesgray.com

Attorneys for Defendants
THE TJX COMPANIES, INC.,
T.J. MAXX OF CA, LLC,
HOMEGOODS, INC., and
MARSHALLS OF CA, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| IN RE THE TJX COMPANIES, INC. | Case No. 5:15-cv-01437-DDP-DTBx |
| STACI CHESTER, *et al*., | **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| Plaintiffs, | |
| vs. | Courtroom:  5D – First Street |
| THE TJX COMPANIES, INC., *et al*., | Date:         June 19, 2017 |
| Defendants. | Time:         1:30 p.m. |
| | Judge:        Hon. Otis D. Wright, II |

# <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF ARGUMENT ........................................................................... 1

ARGUMENT ................................................................................................... 3

I.   PLAINTIFFS FAIL TO PROVE THAT THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED ............................................................ 3

    A.   Plaintiffs Have Not Established Commonality ............................... 3

        1.   Plaintiffs concede that deception is not subject to common proof, but rather requires a product-by-product analysis. ................... 4

        2.   Reliance and materiality are not subject to common proof ................. 6

            a.   Overwhelming evidence shows that reliance under the CLRA varies from consumer to consumer ............................... 6

            b.   Materiality under the UCL and FAL is not subject to common proof because what reasonable consumers view as material varies from purchase to purchase ................. 8

        3.   Plaintiffs fail to submit any proof to show commonality ................. 10

    B.   Plaintiffs Are Not Typical and Fail to Establish Numerosity ..................... 11

    C.   Plaintiffs Will Not Adequately Protect the Interests of the Class ................. 13

II.   PLAINTIFFS FAIL TO PROVE THAT RULE 23(b)(3) IS SATISFIED ............. 14

    A.   Common Issues Do Not Predominate ............................................ 14

    B.   Plaintiffs Fail to Advance a Valid Model for Monetary Relief, as Required to Certify a Rule 23(b)(3) Class Seeking Monetary Relief ..... 15

        1.   A full refund is improper because Plaintiffs received value that cannot be returned. ............................................................. 17

        2.   Plaintiffs' so-called "false discount" or "loss of perceived value" model is both improper and unprovable. ............................... 19

        3.   In seeking full disgorgement, Plaintiffs seek a nonrestitutionary award that still depends on highly individualized, product-by-product proof. ...................................... 21

    C.   A Class Action Is Not Superior Because the Class Is Neither Ascertainable Nor Manageable ........................................ 22

III.   PLAINTIFFS HAVE NOT SHOWN RULE 23(b)(2) IS SATISFIED ................... 23

IV.   PLAINTIFFS HAVE NOT EXPLAINED HOW RULE 23(b)(1) IS MET ............ 24

V.      PLAINTIFFS DO NOT IDENTIFY ANY ISSUE THAT CAN BE
        RESOLVED ON A CLASSWIDE BASIS UNDER RULE 23(c)(4)..................... 25

CONCLUSION..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014) ............................................................ 11, 23, 24

*Backus v. ConAgra Foods, Inc.*,
   No. C 16-00454 WHA, 2016 WL 7406505 (N.D. Cal. Dec. 22, 2016) ............. 12

*Bodner v. Oreck Direct, LLC*,
   No. C 06-4756 MHP, 2007 U.S. Dist. LEXIS 30408 (N.D. Cal. Apr. 25,
   2007) .......................................................................................................... 13

*Brazil v. Dell, Inc.*,
   2010 WL 5387831 (Dec. 21, 2010) ................................................................. 5

*Briseno v. ConAgra*,
   844 F.3d 1121 (9th Cir. 2017) ....................................................................... 23

*Caldera v. J.M. Smucker Co.*,
   No. CV 12-4936-GHK VBKX, 2014 WL 1477400, at *4 (C.D. Cal. Apr.
   15, 2014) ...................................................................................................... 17

*Caro v. Procter & Gamble Co.*,
   18 Cal. App. 4th 644 (1993) ..................................................................passim

*Castano v. American Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) .......................................................................... 25

*Chowning v. Kohl's Dep't Stores, Inc.*,
   No. 15-cv-08673 RGK, 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016),
   *appeal pending*, No. 16-56272 (9th Cir. filed Sept. 2, 2016) .....................passim

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006) ........................................................................ 16

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ...........................................................................passim

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) ............................................................................. 16, 21

-iii-

*Diacakis v. Comcast Corp.*,
No. C 11-3002 SBA, 2013 WL 1878921, at *5 (N.D. Cal. May 3, 2013)......... 12

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ............................................................... 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014) ............................................................... 7, 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................... 13, 14

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ..................................................... 20

*Hodes v. Van's Int'l Foods*,
No. CV 09-01530 RGK, 2009 WL 2424214 (C.D. Cal. July 23, 2009) ........... 15

*Howard Gunty Profit Sharing Plan v. Superior Court*,
88 Cal. App. 4th 572 (2001) ............................................................ 13

*In re POM Wonderful LLC*,
2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................................. 17, 23

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) ("*Tobacco II*") ...............................passim

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ....................................................... 7, 8

*Johnson v. Harley-Davidson Motor Co. Grp.*, LLC,
285 F.R.D. 573 (E.D. Cal. 2012) .................................................... 8, 9

*Jones v. ConAgra Foods, Inc.*,
No. 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ........... 15, 23

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ............................................................ 16, 21

*Litty v. Merrill Lynch & Co.*,
No. CV 14-0425 PA, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015)................ 13

*Mahfood v. QVC, Inc.*,
2008 WL 5381088 (C.D. Cal. Sept. 22, 2008) ...................5, 15, 18, 24

*Marshalls v. Standard Ins. Co.*,
   214 F. Supp. 2d 1062 (C.D. Cal. 2000) .................................................................. 8

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .................................................................. 14

*Motty v. First Student, Inc.*,
   No. 2:15-CV-7463-ODW (E), 2016 WL 4498452 (C.D. Cal. Aug. 26,
   2016) .................................................................. 14

*Pedroza v. PetSmart, Inc.*,
   No. ED CV 11-298-GHK, 2013 WL 1490667 (C.D. Cal. Jan. 28, 2013) ......... 10

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
   No. CV 14-7242-DMG, 2016 WL 5920345 (C.D. Cal 2016) .................... 11, 25

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) .......................................... 16, 17, 19, 20

*Russell v. Kohl's Department Stores, Inc.*,
   No. 5:15-cv-01143-RGK-SP, slip op. (C.D. Cal., December 4, 2015) ............. 24

*Saavedra v. Eli & Lilly Co.*,
   2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ................................... 20, 21

*Sevidal v. Target Corp.*,
   189 Cal. App. 4th 905 (2010) .......................................... 4, 23

*Spann v. J.C. Penny Corp.*,
   2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) ......................... 16, 19, 21

*Spann v. J.C. Penney Corp.*,
   307 F.R.D. 508 (C.D. Cal. 2015) .......................................... passim

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) .......................................... 3

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................... 3, 4, 24

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) .......................................... 7

-v-

*Welling v. Alexy*,
 155 F.R.D. 654 (N.D. Cal. 1994) ........................................................................ 13

**Statutes**

Cal. Bus. & Prof. Code §§ 17200, 17500 .................................................................. 4

Cal. Bus. & Prof. Code §§ 17203, 17353 ................................................................ 16

Cal. Civ. Code § 1770(a)(13) ..................................................................................... 4

Cal. Civ. Code § 1782 ................................................................................................ 16

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................. passim

Fed. R. Civ. P. 23(a) .......................................................................................... 3, 13, 14

Fed. R. Civ. P. 23(b) ......................................................................................... passim

Fed. R. Civ. P. 23(c)(4) ............................................................................................. 25

## SUMMARY OF ARGUMENT

Plaintiffs' Motion for Class Certification should be denied.  Plaintiffs have not submitted for the Court's consideration, much less developed, any evidence satisfying the requirements of Rule 23.  Rule 23 imposes an evidentiary burden and class certification cannot be granted unless it is met.  What's more, what Plaintiffs argue can be shown on a class-wide basis cannot even be shown uniformly with respect to Plaintiffs' own experiences.  This undermines Plaintiffs' motion on all fronts: there are no issues subject to common proof, let alone common issues that predominate; and even if there were, Plaintiffs are neither typical of, nor adequate to represent, the proposed class.

In sharp contrast to the lack of evidence that Plaintiffs have submitted, TJX provides ample evidence showing that Plaintiffs cannot establish falsity or deception with common proof.  Plaintiffs concede that TJX's Compare At prices are fair and not deceptive if they can find the same—and in some cases, comparable—products selling at other retailers for the same or more than the advertised Compare At price. A representative sample of 348 products recently offered for sale at all three of TJX's chains in California shows that 96% of the time the same or a comparable product was indeed on sale at at least one other major California retailer for a price that was the same as or higher than the advertised Compare At price.  Ex. A, Buchan ¶ 72.[1]   In TJX's summary judgment motion filed concurrently, TJX has also demonstrated that the Compare At prices on products Plaintiffs bought were fair – and not false, deceptive, or misleading.

TJX's evidence also demonstrates that reliance and materiality are not common issues, let alone ones that predominate.  In fact, directly counter to Plaintiffs' claim that TJX's description of its Compare At prices is misleading, in a survey of 636 TJX customers, a clear majority (~60%) stated that they understood

---

[1] Evidence supporting this Opposition can be found attached to the Bueker and Sofis Declarations.

Compare At prices consistently with TJX's definition of them.  Ex. B, Scott ¶ 6(d).  To the extent there was any misunderstanding, 81.4% of respondents said that learning TJX's definition would not change the likelihood they would shop at a TJX store.  *Id.* ¶ 23.  If anything, upon learning the definition, respondents indicate that they would be *more likely* to shop there.  *Id.*  And asked directly, after being shown TJX's Compare At definition, whether they still would have bought the last product they purchased in a TJX store, a full 90.9% of respondents said "yes." *Id.* ¶ 24.  The survey confirmed that most customers buy a wide variety of products from TJX stores for many different reasons, most of the time without ever considering the Compare At price.  *Id.* ¶ 6(b).  This survey evidence is consistent with Plaintiffs' own experiences and their TJX shopping habits, which show that they too made purchases without regard to TJX's Compare At prices.  Plaintiffs have continued to shop regularly at TJX stores since filing their complaints and have testified that learning TJX's Compare At definition would not have changed at least some of their purchasing decisions.  Common proof of actual reliance under the CLRA is thus simply not available.  And because materiality varies purchase to purchase, even for a single consumer, class treatment under the FAL and UCL is similarly foreclosed.

Despite the obvious lack of commonality, Plaintiffs seek to certify a class for monetary relief, in addition to enjoining TJX's use of Compare At prices.  But again, they fail to meet their burden.  Plaintiffs ignore the Supreme Court's clear direction that Plaintiffs must identify a model for measuring monetary relief at the class certification stage that seeks "only" that relief "attributable" to their theory of harm.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013).  Here, Plaintiffs suggest that models are "available" and the Court can wait to decide which (if any) works.  But none of these models measures "only" the relief "attributable" to Plaintiffs' theory of harm or conforms with California's clear limits on monetary relief.  Instead, all would improperly award a windfall.

-2-

## **ARGUMENT**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23."  *Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 564 U.S. at 350).  A motion for class certification is evidentiary in nature.  Rule 23 "does not set forth a mere pleading standard."  *Id.*  Rather, a party must "satisfy through evidentiary proof" all of the requirements of Rule 23(a) and "at least one of the provisions of Rule 23(b)."  *Id.*  Here, Plaintiffs fall well short of meeting their burden.

## I.   PLAINTIFFS FAIL TO PROVE THAT THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

Plaintiffs do not meet their burden on any of Rule 23(a)'s four requirements: (1) commonality, (2) typicality, (3) numerosity, and (4) adequacy.  Fed. R. Civ. P. 23(a); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

### A.   Plaintiffs Have Not Established Commonality

Plaintiffs offer no evidence of commonality.  Plaintiffs merely recite six purportedly "common questions," Mot. 13-14, that boil down to: (1) Are TJX's Compare At prices false or deceptive?; and (2) Are any such allegedly false or deceptive advertisements material to a reasonable consumer? *See* Mot. 11-12.[2]

But "[r]eciting these questions is not sufficient to obtain class certification." *Wal-Mart*, 564 U.S. at 349 (observing that any competently crafted complaint will

---

[2] Plaintiffs' "six" questions all address one of these two issues.  *See* Mot. 13-14 (listing six questions: "whether: (1) during the Class Period, Defendants used deceptive 'Compare At' price representations; (2) Defendants' use of its 'Compare At' price tags constituted false or deceptive advertising under the UCL, FAL and/or CLRA; (3) Defendants misrepresented and/or failed to disclose material facts about 'Compare At' price advertising; (4) how a reasonable consumer would interpret Defendants' 'Compare At' price tags; (5) whether a reasonable consumer is or was likely to be deceived by Defendants' 'Compare At' price advertising; and, (6) whether Defendants continue to use deceptive or misleading price comparisons such that an injunction is necessary").

-3-

identify common questions).  Plaintiffs must instead submit evidence that shows the questions they identify are in fact "capable of classwide resolution" and so can be resolved in "one stroke."  *Id.*  Plaintiffs have not done so.  To the contrary, Plaintiffs concede that this cannot be done, because even the viability of their own claims must be determined on a product-by-product basis.

### 1.   Plaintiffs concede that deception is not subject to common proof, but rather requires a product-by-product analysis.

False advertising claims depend upon false or misleading representations about the products sold.  *See* Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770(a)(13).   The false or misleading statement must be untrue or misleading as to the specific item purchased.  *See Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 919-20 (2010).  When, for example, Target applied a "Made in US" label correctly to some products, but incorrectly to others, the label was only false or misleading for those specific products that were not made in the United States.  *Id.* By contrast, the same "Made in US" label was not false or misleading—despite its unreliable application—for products that were in fact made in the United States.  *Id.*

TJX has established that, in most cases, its Compare At prices were not false or misleading.   This alone precludes proof of deception on a class-wide basis. Plaintiff Chester's Jessica Simpson handbags, for example, which were advertised with a Compare At price of "$48.00 + UP," were selling for $68.00 at other major retailers in California when Chester bought them in July 2015.  Ex. D, Gardella ¶¶ 9, 12.  Steve Madden satchel bags like the one for which Chester belatedly supplied a receipt were advertised with a Compare At price of $78.00, but sold at Macy's and Steve Madden stores, and Nordstrom online, for $98.00 when Chester made her purchase in February 2015.  Ex. E, Lapidus ¶ 9.  Berkoff's Leon Max/Max Studio tank top was sold in Leon Max stores, online, and at Dillard's for $38.00—more than TJX's advertised $28.00 Compare At price.  Ex. F, McQuesten ¶ 8.  These are

-4-

not isolated examples either.   Dr. Buchan studied a statistically representative sample of 348 products recently sold at TJX stores, and found that, in 334 cases (96%), the Compare At prices were the same as or lower than the prices at which at least one other major California retailer was selling the same or a comparable item. Ex. A, Buchan ¶ 72.  And for 9 of the 14 remaining products, TJX's Compare At price was within \$1.01 (or less) of the selling price at another major California retailer.[3]  *Id.* ¶¶ 63, 66, 69.

Class action treatment is not appropriate where, as here, the multitude of products renders common proof of deception impossible—even for claims involving the purchase of often inexpensive items.  *See Mahfood v. QVC, Inc.*, 2008 WL 5381088, at *4-5 (C.D. Cal. Sept. 22, 2008) (denying class certification because whether a listed Retail Value was misleading varied by product and time/location of purchase); *Brazil v. Dell, Inc.*, 2010 WL 5387831, at *5 (Dec. 21, 2010) (distinguishing between allegedly deceptive comparisons to other retailers' prices, which lack common proof, and purported discounts from defendant's prices, which could be established through common "pricing histories"); *see also Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 527 (C.D. Cal. 2015) (explaining common proof of deception was available only because class was limited to purchases of "private and exclusive branded items" whose market "consists [only] of defendant's stores").

Here, Plaintiffs concede, as they must, that whether any particular Compare At advertisement was false, deceptive, or misleading depends on an individualized product-by-product analysis.  Ex. I, Chester Tr. 75:8-78:23; Ex. J, Berkoff Tr.

---

[3] TJX's Compare At prices even reliably took into account promotional sales and discounts.  *See* Ex. A, Buchan ¶ 64 (89% accuracy for T.J. Maxx sample, with 8 of 12 "erroneous" Compare At prices being within \$1.01 of discounted selling prices at other retailers); *id.* ¶ 67 (91% accuracy for Marshalls sample, with 4 of 10 "erroneous" Compare At prices being within 50 cents of discounted selling prices at other retailers); *id.* ¶ 70 (92% accuracy for HomeGoods sample, with 4 of 10 "erroneous" Compare At prices being within 5 cents or less of discounted selling prices at other retailers).

-5-

116:1-5; Ex. L, Friedman Tr. 79:18-80:3; Ex. K, Metoyer Tr. 106:15-108:2. This is because the allegedly deceptive advertisements are not simply the words "Compare At" standing alone, but rather "Compare At" *and* a particular amount. That particular amount is crucial: By Plaintiffs' own admissions, Compare At prices are only misleading if they cannot go out to "Macy's or any other high-end store" and "be able to purchase that product for the 'Compare At' [price]." Ex. K, Metoyer Tr. 101:1-14. By contrast, if they can go to another store and find the same product retailing at or above the Compare At price, then TJX's Compare At price in question is "okay." *Id.* at 112:7-16. Whether putative class members were exposed to a false or misleading advertisement thus requires a product-by-product analysis.[4]

At TJX, each Compare At price is established on a product-by-product basis by one of more than 300 buyers in the U.S., each of whom evaluates the product's specific characteristics, using his or her extensive knowledge of that product's market and pricing at other retailers. *E.g.*, Ex. E, Lapidus ¶¶ 4-6. Not only is it not possible to resolve questions of deception on a class-wide basis, Plaintiffs offer no evidence—and have not investigated—other retailers' prices for even their own alleged purchases. Thus, it is not even possible to resolve questions of deception as they relate to any of the named Plaintiffs—much less on a class-wide basis.

### 2. Reliance and materiality are not subject to common proof.

#### a. Overwhelming evidence shows that reliance under the CLRA varies from consumer to consumer.

Plaintiffs cannot show commonality based on reliance under the CLRA. The

---

[4] What is more, Plaintiffs also admit that the relevant benchmark for determining the accuracy of a Compare At price may vary by product category. For some products, the comparison, they say, must be made to an identical product; for others, an item is the "same" if it is of the "same quality" as measured by features like material, shape, and size. Ex. K, Metoyer Tr. 106:13-108:2 (testifying that bath mats made by different manufacturers would be the "same" if they were of the "same quality"); Ex. I, Chester Tr. 75:8-78:23 (testifying that the method for determining the "same item"—*i.e.*, what the salient features are—differs depending on product type).

CLRA imposes a class-wide actual causation requirement: recovery is only allowed "when a consumer 'suffers damage as a result of' the unlawful practice." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (quoting Cal. Civ. Code § 1780(a)) (explaining that representation must induce consumer "to alter his position to his detriment"). Although Plaintiffs may establish causation "on a class-wide basis" by showing materiality, this inference of class-wide reliance is rebuttable, and not appropriate in the first place, when "materiality or reliance . . . vary from consumer to consumer." *Vioxx*, 180 Cal. App. at 129. An inference of class-wide reliance is improper, for example, where consumers make purchasing decisions based on individualized assessments of different factors, *id.* at 133-34, where consumers understand the representation differently, *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (1993), or where whether "any asserted misrepresentation [that] induced the purchase . . . would vary from consumer to consumer," *id.* at 668.[5] Where this occurs, "the issue is not subject to common proof," and a class "is properly not certified." *Vioxx*, 180 Cal. App. at 129.

TJX has offered "overwhelming evidence" that reliance under the CLRA is not subject to common proof. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2416 (2014) (holding courts must consider evidence "defeat[ing] [such] presumptions" "before class certification"). Survey evidence shows that a clear majority (~60%) of respondents understood Compare At prices either "similar[ly]" or "very similar[ly]" to TJX's definition. Ex. B, Scott ¶ 36. Moreover, to the extent that survey respondents previously misunderstood TJX's approach to Compare At prices, any such misunderstanding did not cause them to alter their behavior to their detriment. Over 80% indicated that learning TJX's Compare At definition would not change their likelihood of shopping at a TJX store, while an additional 10%

---

[5] *See also Webb v. Carter's Inc.*, 272 F.R.D. 489, 502-03 (C.D. Cal. 2011) (finding inference not appropriate where consumer behavior varied).

-7-

indicated that they would be *more likely* to shop there having been shown the definition. Ex. B, Scott ¶ 23. A full 90% said, upon viewing TJX's Compare At definition, that they would still make the same purchases. *Id.* at ¶ 36 ("Either the [Compare At] definition was what or close to what they expected, or it was of virtually no importance to them."). Indeed, most TJX customers surveyed reported buying a wide variety of products from TJX stores for many different reasons unrelated to the Compare At price on the item they purchased. *Id.* at ¶¶ 6(b), 24; *Vioxx*, 180 Cal. App. at 133-34. Put simply, most of the putative class did not rely to their detriment on TJX's Compare At prices or definition. Plaintiffs fail to offer any evidence to the contrary, and have admitted they too were not harmed. *See infra*; *e.g.*, Exs. P–W (showing over $4,500 in purchases by Plaintiffs at TJX stores since filing their complaints). Because of this evidence, no presumption applies and individualized proof of reliance is required.[6] *Vioxx*, 180 Cal. App. at 133-34; *Caro*, 18 Cal. App. 4th at 668.

> **b.** **Materiality under the UCL and FAL is not subject to common proof because what reasonable consumers view as material varies from purchase to purchase.**

Plaintiffs' argument based on materiality under the UCL and FAL fares no better. The UCL and FAL, unlike the CLRA, evaluate materiality with respect to the "reasonable consumer." *Vioxx*, 180 Cal. App. at 130. But materiality is not always subject to common proof.

Materiality under the FAL and UCL requires individualized proof where resolving "what the reasonable consumer" would find material implicates "numerous individualized issues" that vary across the class. *Johnson v. Harley-*

---

[6] Plaintiffs might argue that TJX "should welcome" class certification given the survey's favorable results. *See* Mot. 14. This argument should be rejected. TJX opposes class certification, and Plaintiffs cannot salvage their failure of proof by self-interested statements about what is in TJX's best interests. *See Marshalls v. Standard Ins. Co.*, 214 F. Supp. 2d 1062, 1068 (C.D. Cal. 2000).

-8-

*Davidson Motor Co. Grp.*, LLC, 285 F.R.D. 573, 581 (E.D. Cal. 2012).   For example, where a defendant sells multiple makes and models, a reasonable consumer might find the same purported misrepresentation material when buying some models, but not others.  *Id.* ("[W]hile materiality is generally determined by the 'reasonable consumer standard,' there are numerous individualized issues as to whether the reasonable consumer purchasing one of Defendants' motorcycles would find the excessive heat material.").  Individualized proof is also required when the materiality of a representation varies with the information class members have.  *See Caro*, 18 Cal. App. 4th at 668 (noting that the materiality of a claim of "no additives" depended on whether the individual saw the qualification "from concentrate").

Individualized proof of materiality is required here, given the incredible diversity of products TJX sells.  Such diversity means that the reasonable consumer's reasons for an individual purchase vary—across product types and even product by product.  Ex. B, Scott ¶ 26.  In fact, individualized proof of materiality is required for each of Plaintiffs' own purchases, as confirmed by Plaintiffs' own testimony.  Plaintiffs concede that they had different reasons for each purchase, and different information as to each one.  For example, Berkoff testified that the considerations affecting how much she would pay differ across TJX products because "each item is its own."  Ex. J, Berkoff Tr. 119:11-16.  Chester refused to speculate on Compare At pricing in relation to apparel because it would necessarily differ from her experience purchasing accessories.  Ex. I, Chester Tr. 75:8-78:23.  Metoyer admits she would have purchased some of the same products again, even knowing the Compare At definition—and Friedman has done so already.  Ex. K, Metoyer Tr. 135:13-136:1; Ex. L, Friedman Tr. 147:24-148:1.  Any purported misrepresentation was therefore not uniformly material even for Plaintiffs, let alone the reasonable consumer.  *See Caro*, 18 Cal. App. 4th at 668 ("[M]ateriality means that without the misrepresentation, the plaintiff would not have acted as he did.");

-9-

*see also* Ex. B, Scott ¶ 26 (noting that survey respondents made TJX purchases for reasons ranging from brand or product features, to circumstances like convenience or necessity, and out-the-door price); *id.* ¶ 29, 33 (finding respondents also had different and differing amounts of information available to them in making purchasing decisions, including as a result having already shopped elsewhere for the item and/or using a comparison shopping app while at TJX); *id.* ¶ 30-31 (finding also that about 62% did not even remember, or were unsure about seeing, a Compare At price on an unaided basis, while 37% were still not sure they had seen a Compare At price even on an aided or recognition basis, and of those who did remember seeing a Compare At price, approximately 62% indicated it was either about what they thought it should be or lower than they would have expected).

### 3.   Plaintiffs fail to submit any proof to show commonality.

Against this evidence establishing that deception, reliance, and materiality are not common, Plaintiffs submit only their say-so and a handful of articles. Plaintiffs' self-serving (and inconsistent[7]) declarations are not enough to overcome summary judgment, let alone to meet the higher burden at class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (requiring courts to evaluate evidence's "persuasiveness"). Plaintiffs' only other "proof"—the five academic articles attached to Attorney Morosoff's Declaration—are not only inadmissible hearsay, but also an improper attempt to shield opinion testimony from scrutiny. *See* Defs. Mot. to Strike; Ex. B, Scott ¶¶ 34-45 (explaining flawed assumptions and methodology). If, as here, "expert testimony is not admissible, the inquiry ends there." *Pedroza v. PetSmart, Inc.*, No. ED CV 11-298-GHK, 2013 WL 1490667, at *3 (C.D. Cal. Jan. 28, 2013). But even if considered, the most these articles show is

---

[7] *Compare, e.g.*, Metoyer Decl. ¶ 14 ("I would not otherwise have purchased anything from Defendants."), *with* Ex. K, Metoyer Tr. 135:13-136:1 (identifying examples of products she "love[s]" and would buy again). *See also infra* I.B.

1    that many in the putative class could not have been harmed, and that any effect the

2    Compare At prices had is not measureable on a class-wide basis.  Ex. B, Scott ¶¶ 34-

3    45; Ex. C, David ¶¶ 21-27.

4    **B.  Plaintiffs Are Not Typical and Fail to Establish Numerosity**

5    "[T]he typicality requirement . . . assure[s] that the interest of the named

6    representative aligns with the interests of the class."  *Pierce-Nunes v. Toshiba Am.*

7    *Info. Sys., Inc.*, No. CV 14-7242-DMG (KSx), 2016 WL 5920345, at *2 n.4 (C.D.

8    Cal 2016).   "[C]lass certification is inappropriate where a putative class

9    representative is subject to unique defenses."  *Id.*  As TJX's summary judgment

10   motion demonstrates, Plaintiffs face unique and substantial defenses, and so are not

11   typical of the class they seek to represent.  *See* Defs.' Mot. Summ. Jdgmt.

12   On Plaintiffs' theory, the typical class member is a TJX customer who would

13   not have made purchases at TJX had they known that TJX's Compare At prices

14   were "estimates" of the regular, retail price of "comparable" products.  But none of

15   the Plaintiffs fit their own description of a typical class member.  Credit card records

16   and receipts show that Berkoff has spent at least $3,255.55 on 74 separate occasions

17   shopping at HomeGoods since filing her Complaint.  Ex. Q–S, U; Ex. J, Berkoff

18   Tr. 71:19-25 (confirming she still shops "very frequently" at HomeGoods).

19   Friedman and Metoyer have also continued to shop at TJX stores regularly, making

20   hundreds of dollars in purchases, and in some cases buying the exact same

21   products—including with the same retail and Compare At prices—both before and

22   after filing their complaints.  Ex. T; *compare* Exs. Y–Z, Ex. H at FRIEDMAN00005

23   (Friedman's July 3, 2015 purchase of diffusers), *with* Exs. M–P at

24   PL.Friedman00014 (Friedman's Dec. 17, 2016 purchase of same diffusers),.

25   Plaintiffs are thus not typical of the proposed class because their actions confirm

26   they did not rely on, and did not find the Compare At prices material to, their

27   purchasing decisions.  *See Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D.

28

-11-

Cal. 2014) ("[I]t sounds in common sense that making repeat purchases indicates that the customer's expectations have been met.").[8]

What's more, when the Court reviews Plaintiffs' deposition testimony, and not just the declarations drafted to support their filing, it will see that at least Metoyer testified to an understanding of Compare At that is not materially different from TJX's definition.   Ex. K, Metoyer Tr. 106:15-108:2. And Friedman acknowledged that it would be practically impossible for TJX to ensure that the "identical" product was being sold for the advertised Compare At price on the "exact same day," evidencing an understanding that even he does not entirely believe his own claimed interpretation of Compare At pricing.  Ex. L, Friedman Tr. 42:17-43:10.  But, none of this much matters because survey evidence shows that a clear majority of TJX's customers understood Compare At prices "similar[ly]" or "very similar[ly]" to TJX's definition, *see* Ex. B, Scott ¶ 36 – which is to say differently than the class Plaintiffs seek to represent.

But the problems do not end there for Plaintiffs' motion.  Not only are Plaintiffs not typical of the class they seek to represent, but the survey evidence also shows almost no one would be.  A full 90% of survey respondents would have made the same purchase even knowing TJX's definition.  *Id.* at ¶ 24.  And so numerosity cannot be established.  "The mere fact that there are numerous [customers], standing alone, is insufficient to show numerosity" where, as here, there is "no evidence regarding the number . . . allegedly misled." *Diacakis v. Comcast Corp.*, No. C 11-

---

[8] Plaintiffs Chester, Metoyer and Friedman are not typical for another reason.  Each admitted to making at least some, and in Chester's and Metoyer's cases all, of their alleged purchases only after talking with Attorney Morosoff about comparative pricing litigation.  Mot. Summ. Jdgmt. at 2; *see Caro*, 18 Cal. App. 4th at 668 (finding no reliance or materiality where the consumer "did not believe" the allegedly misleading statement); *see also Backus v. ConAgra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 7406505, at *4-6 (N.D. Cal. Dec. 22, 2016) ("[F]rom testimony residing in his deposition [about his relationship with counsel], our jury might infer that Backus is not truly an aggrieved consumer but a hired plaintiff executing his attorney's raids on the deep pockets of food manufacturers.").

-12-

3002 SBA, 2013 WL 1878921, at *5 (N.D. Cal. May 3, 2013).

## C.   Plaintiffs Will Not Adequately Protect the Interests of the Class

The Court may not certify a class if the named representatives will not fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  A representative who allows her interests to conflict with the class's and who does not vigorously protect the class's interests is not adequate.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  A telltale sign that a named plaintiff is inadequate is when she fails to even read the operative pleadings.  *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (deeming plaintiff inadequate given "his apparent unfamiliarity with the allegations in the amended complaint"); *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 U.S. Dist. LEXIS 30408, at *5 (N.D. Cal. Apr. 25, 2007) (refusing to certify where named plaintiff "did not read the complaint before" filing and was not the action's "driving force").  By their own admissions, Plaintiffs are not adequate class representatives.

First, Metoyer has already served as the named plaintiff in another comparative pricing case—represented by the same attorneys—and compromised the interests of the class; she settled that case on an individual basis for $10,000.  When asked, Metoyer testified that she did not even know what relief, if any, other class members had received (none), or how much her attorneys were paid.  Ex. K, Metoyer Tr. 117:8-121:17.  *See Howard Gunty Profit Sharing Plan v. Superior Court*, 88 Cal. App. 4th 572, 579-80 (2001) ("[C]ourt acts properly when it refuses to certify class actions in which the named plaintiff is simply 'lending his name to a suit controlled entirely by the class attorney.'"); *cf. Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWX), 2015 WL 4698475, at *10 (C.D. Cal. Apr. 27, 2015) ("[C]ourts must evaluate . . . [whether] class interests gave way to self interests.").

Berkoff testified that she was unsure whether she had ever read the Complaint, Ex. J, Berkoff Tr. 102:19-103:8, or reviewed her (still unverified)

-13-

interrogatory responses, *id.* at 43:8-16.  Berkoff also did not know that the proposed class excludes those (like herself) who had returned products for a full refund, *id.* at 80:7-14, and even relies on a product she undisputedly returned to request appointment as the Marshalls' class representative, *id.* at 41:1-4.  Chester, likewise, admitted that she did not review the complaint before filing, Ex. I, Chester Tr. 12-13:25-9, and testified she could not "speak to" whether Compare At prices were misleading for products other than the kind she bought, *id.* at 77:22-78:23.  Finally, each Plaintiff is inadequate because he or she has failed to preserve key evidence. Mot. Summ Jdgmt. 12, 13 n.3; *see Motty v. First Student, Inc.*, No. 2:15-CV-7463-ODW (E), 2016 WL 4498452, at *3 (C.D. Cal. Aug. 26, 2016) ("failures to comply with reasonable disclosure obligations or discovery requests" are one indicia of the "vigor" with which the litigation will be pursued).

## II.   PLAINTIFFS FAIL TO PROVE THAT RULE 23(b)(3) IS SATISFIED

To certify a class for monetary relief, Plaintiffs also need to satisfy the requirements of Rule 23(b)(3), which are, "[if] anything, . . . more demanding" than those of Rule 23(a).  *Comcast*, 133 S. Ct. at 1432.  Not only must Plaintiffs prove there are common questions susceptible to classwide proof, but Plaintiffs must also show (1) that such common questions "predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Hanlon*, 150 F.3d at 1022; *Halliburton*, 134 S. Ct. at 1432. Plaintiffs have failed on both counts.

### A.   Common Issues Do Not Predominate

Common issues do not predominate unless they form "a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (vacating certification under Rule 23(b)(3) where class as defined "almost certainly includes

-14-

members who were not exposed to, and therefore could not have relied on" alleged misrepresentations).   Under Ninth Circuit precedent, common issues do not predominate where a class lacks "cohesion."  *See Jones v. ConAgra Foods, Inc.*, No. 12-01633 CRB, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014).

Plaintiffs' proposed class is prototypical of a class that lacks cohesion, and so is not certifiable under Rule 23(b)(3).  Even if there are common questions—and there are not—such questions do not predominate over the myriad individualized questions as to who purchased what, when, for what reasons, and whether, in the context of a given purchase, the advertised Compare At price was even false, misleading, deceptive, or material.  *See Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK (FFMx), 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009) (finding that common questions of liability did not predominate "over the individual questions of *who* purchased Van's frozen waffles during the relevant class period, *which kind* of frozen waffles they purchased, *how many* they purchased, and whether the kinds they purchased contained false nutritional information"); *Jones*, 2014 WL 2702726, at *14 ("[T]here is a lack of cohesion among the class members here, both because consumers were exposed to label statements that varied by can size, variety, and time period (and the challenged ingredients also differed), but more importantly, because even if the challenged statements were *facially* uniform, consumers' *understanding* of those representations would not be."); *see also Mahfood*, 2008 WL 5381088, at *4 ("If the Retail Value for a given product was not appreciably higher than the actual retail value of that product . . . then the consumer *could not have* suffered any injury from relying upon it.") (emphasis added).

**B.**   **Plaintiffs Fail to Advance a Valid Model for Monetary Relief, as Required to Certify a Rule 23(b)(3) Class Seeking Monetary Relief**

Plaintiffs fail to show Rule 23(b)(3) is satisfied for yet another reason: They fail to advance a valid model that measures "only" that monetary relief "attributable

-15-

to" their theory of harm. *Comcast*, 133 S. Ct. at 1433. Because their identified models "do[] not even attempt to do that," they "cannot possibly establish that [relief is] susceptible of measurement across the entire class." *Id.*

This Court's rigorous analysis should begin with an unremarkable premise: Relief here is limited to restitution—to "a specific amount" that Plaintiffs show they lost "as a result of" the purported deception. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 699 (2006) (requiring substantial evidence). Plaintiffs are not entitled to damages.[9] *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). And they may not seek a windfall. *In re Tobacco Cases II,* 240 Cal. App. 4th 779, 801 (2015) ("*Tobacco II*") (requiring proof of loss). To the contrary, "a party seeking restitution must return any benefit received." *Id.* at 795.

Because Plaintiffs may not seek a windfall, California and federal courts have generally recognized only one viable measure of harm: "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received." *E.g.*, *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (adopting the *Cortez* definition). To the extent alternative measures are available (and they are not), Plaintiffs must prove their entitlement to them. *Tobacco II*, 240 Cal. App. 4th at 795.

Ignoring these precedents, Plaintiffs instead rely almost exclusively on the "alternative methods" identified in *Spann v. J.C. Penny Corp.*, 2015 WL 1526559, at *5-8 (C.D. Cal. Mar. 23, 2015). But *Spann* was decided before the California Court of Appeal decided *Tobacco II*, and is irreconcilable with that opinion and the

---

[9] Damages are never available under the UCL and FAL. Cal. Bus. & Prof. Code §§ 17203, 17353; *Cortez*, 23 Cal. 4th at 172; *Korea Supply*, 29 Cal. 4th at 1144. And Plaintiffs neither seek nor are entitled to damages under the CLRA. Cal. Civ. Code § 1782 (requiring amendment of complaint within 30 days of filing after providing notice and opportunity to cure); Ex. G, CAC ¶ 263 (no prayer for damages).

-16-

principles set forth therein.[10]  For that reason (and others), another judge on this court has since "part[ed] ways with *Spann*."  *Chowning v. Kohl's Dep't Stores, Inc.*, No. 15-cv-08673 RGK (SPx), 2016 WL 1072129, at *8 (C.D. Cal. Mar. 15, 2016), *appeal pending*, No. 16-56272 (9th Cir. filed Sept. 2, 2016).  As the *Chowning* Court recognized, the California Supreme Court has made clear that "restitution, as distinguished from damages, must account for any value the plaintiff received."  *Id.* at *8; *accord Pulaski*, 802 F.3d at 988.  Plaintiffs do not attempt to account for any value received through their or the putative class members' purchases, so they "cannot possibly establish that [relief is] susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Comcast*, 133 S. Ct. at 1433.**.**

## 1. A full refund is improper because Plaintiffs received value that cannot be returned.

*Tobacco II* held that the UCL does not permit a full refund where, as here, Plaintiffs and putative class members indisputably "obtained value . . . apart from the deceptive advertising."  *Tobacco II*, 240 Cal. App. 4th at 794.  Rather, to show entitlement to a full refund, plaintiffs must show that "not a single class member received any benefit."  *Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK VBKX, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) (collecting cases).  Consistent with this proposition, "[n]umerous district courts have held that consumers alleging mislabeling or deceptive advertising are not entitled to a full refund where the challenged product conferred some benefit notwithstanding the false advertising."  *Chowning*, 2016 WL 1072129, at *7 (collecting cases).  It is no fix that Plaintiffs or the putative class might return the goods in exchange for a full refund.  Plaintiffs have already obtained value that cannot be returned and so must be accounted for.  *See Tobacco II*, 240 Cal. App. 4th at 794; *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014).  Moreover, full refunds are inappropriate

---

[10] *Spann* was decided on May 18, 2015.  *Tobacco II* was decided on September 28, 2015.

1   where it is not feasible for everyone to return their goods, nor plausible they would

2   want to.  *See Tobacco II*, 240 Cal. App. 4th at 795.

3        Plaintiffs own experiences illustrate why a "full refund" is not feasible here.

4   Plaintiffs themselves, notwithstanding bringing this action, have discarded, disposed

5   of, or lost many of the products they allegedly purchased from TJX since filing their

6   Complaints.  *E.g.*, Ex. K, Metoyer Tr. 115:22-116:1.  Other products, like candles,

7   they have used up.  For one reason or another then, Plaintiffs do not have many of

8   the products to return for a full refund.  Moreover, except for a few products that

9   Friedman produced for inspection still in their wrapping, Plaintiffs testified that they

10  have used and enjoyed nearly all products bought from TJX, deriving value from

11  their use that can never be returned.  *E.g.*, Ex. I, Chester Tr. 55:6-7; Ex. K, Metoyer

12  Tr. 85:10-12.  In this limited but important respect, Plaintiffs are likely typical of

13  most putative class members who have also likely used and enjoyed the products

14  they purchased from TJX.  Any remedy that involves Plaintiffs and putative class

15  members returning items for a full refund without accounting for this value already

16  received would result in a windfall.  Ex. C, David ¶¶ 33-37.  But there is no way to

17  determine such value without extensive individualized fact-finding.  *Mahfood*, 2008

18  WL 5381088, at *4.  Plaintiffs cannot escape this reality.

19       Insofar as *Spann* suggests otherwise, it is in error.  Doing so would grant an

20  improper windfall and thus is irreconcilable with the principles governing relief, as

21  the *Chowning* court recognized.  Courts may not award monetary relief without

22  reference to those "*measurable amounts*" that the plaintiff lost as a result of

23  defendant's conduct.  *Tobacco II*, 240 Cal. App. 4th at 795.  If full refunds are ever

24  available, it is only where plaintiffs "prove the product had *no* value."  *Id.*  "[A] full

25  refund is unavailable . . . when [as here] the product had value to consumers

26  notwithstanding the alleged deceptive advertising."  *Id.*

27

28                                          -18-

As to this measure of monetary relief in particular, Plaintiffs' heavy reliance on *Spann* is a mistake. Mot. 21-22. In *Spann*, the court recognized that this measure of monetary relief might potentially be viable only after concluding that plaintiffs had presented evidence that "every dollar" spent was "as a result of" JC Penney's advertising *and* defendants failed to present any "evidence to the contrary." *Spann*, 2015 WL 1526559, at *6. By contrast, Plaintiffs here have offered no evidence that TJX's advertising harmed them or possible class members, and TJX has offered ample evidence that it did not. On these facts, this measure of monetary relief simply cannot apply.

### 2. Plaintiffs' so-called "false discount" or "loss of perceived value" model is both improper and unprovable.

Plaintiffs' second proposed measure of monetary relief is even less viable than their first. As the court in *Chowning* explained, a "promised discount" model is "not actually a measure of restitution," but "erroneously emphasizes the value of the transaction Plaintiff had anticipated." *Chowning*, 2016 WL 1072129, at *10. Under the guise of this "false discount" model, Plaintiffs argue that the proper measure of relief is Plaintiffs' "loss in perceived value," which, they say, is "the difference between the 'Compare At' price and the price the consumer paid." Mot. 23. But, this is not a valid measure of monetary relief. *See Pulaski*, 802 F.3d at 985-86. Rather than restoring money to Plaintiffs, it grants them a windfall.

As TJX's expert Dr. David explains, if TJX were (erroneously) ordered to return the amount of the so-called "false discount" to Plaintiffs, Plaintiffs would wind up owning many valuable products for absurdly low amounts. In the case of Plaintiff Chester's Jessica Simpson handbags, for example, she would end up owning each bag for a mere $1.98. Ex. C, David ¶ 31. Even apart from the windfall that this relief would confer on Plaintiffs and putative class members, this "but for" world is entirely unrealistic. In their own sworn deposition testimony, not one of the

-19-

1    Plaintiffs could name a single other retailer that had sold the products that they had
2    purchased from TJX for a price less than TJX's retail selling price.   *E.g.*, Ex. K,
3    Metoyer Tr. 140:19-22.   It is, moreover, unimaginable that TJX would continue
4    selling Jessica Simpson handbags, or other products for that matter, for such
5    absurdly low prices.   "[N]o case hold[s] that a consumer may recover based on
6    consumers' willingness to pay irrespective of what would happen in a functioning
7    market (i.e. what could be called sellers' willingness to sell)."   *Saavedra v. Eli &*
8    *Lilly Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014).

9        A "loss of perceived value" or "false discount" measure is also hopelessly
10   unprovable and mired in individualized issues of proof that could not be resolved on
11   a class-wide basis.   Plaintiffs try to escape these individualized issues by asserting,
12   without evidence, that "[t]he perceived value of an item [advertised] with an
13   unqualified 'Compare At' price is" for *every single class member* "the 'Compare At'
14   price."   Mot. 23.   As Dr. David explains, however, Plaintiffs' premise contravenes
15   even basic economic principles.   Ex. C, David ¶ 19.   And, contrary to Plaintiffs'
16   unprovable premise, less than 30% of TJX's customers said they would have paid
17   the full Compare At price to purchase the product they bought.   Ex. B, Scott ¶ 32.

18       Plaintiffs' reliance on *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013),
19   *see* Mot. 23, as support for this measure of monetary relief is also misplaced.   In
20   *Hinojos*, the Ninth Circuit held only that loss of "perceived value" was sufficient to
21   establish *standing*, but it did not hold that loss of "perceived value" is a proper
22   *measure* of restitution or monetary relief.   *Hinojos*, 718 F.3d at 1104, 1106.   And
23   since then, the Ninth Circuit has made clear that restitution is the difference between
24   "what the plaintiff gave the defendant" (the price he paid) *and* "the value of what
25   the plaintiff received."   *Pulaski*, 802 F.3d at 985-86.   "[V]alue" in this context
26   means "fair market value," *Saavedra*, 2014 7338930, at *4-5, as measured "at the
27   time of purchase," *Pulaski*, 802 F.3d at 988.   "Fair market value" is not Plaintiffs'

28

                              -20-

perceived value, but rather "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market." *Saavedra*, 2014 WL 7338930, at *4-5 (citing Black's Law Dictionary 18c (10th ed. 2014) ("Value")).  Determining the fair market value of a product can only be done product by product.  Plaintiffs proffer no evidence establishing the value of any of their purchases—let alone explain how they might do so for putative class members' purchases on a class-wide basis.

### 3.   In   seeking   full   disgorgement,   Plaintiffs   seek   a nonrestitutionary   award   that   still   depends   on   highly individualized, product-by-product proof.

*Tobacco II* also expressly rejected the notion that disgorgement of full profits is an appropriate remedy where, as here, Plaintiffs have received value.  *Tobacco II*, 240 Cal. App. 4th at 799-801.   Disgorgement is limited to restitutionary disgorgement.  *See Korea Supply*, 29 Cal. 4th at 1145, 1152; *Cortez*, 23 Cal. 4th at 168-72.  That is, disgorgement cannot exceed what plaintiffs have lost.  *Tobacco II*, 240 Cal. App. 4th at 801-02.   Where, as here, Plaintiffs received some value, disgorgement of full profits exceeds their losses, giving them an improper windfall.

To the extent *Spann* held otherwise, it is in error and courts have already rejected its reasoning.  *E.g.*, *Tobacco II*, 240 Cal. App. 4th at 801-02; *Chowning*, 2016 WL 1072129, at *8-9.  The *Spann* court contemplated awarding profits on the grounds that "the measure is based upon defendant's benefit . . . and involve[s] a return of what defendant gained."  *Spann*, 2015 WL 1526559, at *8 (quoting *Park v. Cytodyne Technologies, Inc.*, 2003 WL 21283814, *24 (Cal. Super. Ct. 2003)).  But as *Tobacco II* explained, "[c]ourts ordering restitution under the UCL 'are not concerned with restoring the violator to the status quo ante.'"  *Tobacco II*, 240 Cal. App. 4th at 801 (quoting *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 455 (2005)).  Rather, "the focus . . . is on the victim."  *Id.*  "Obviously, restitution without proof of any loss to any plaintiff cannot be characterized as *restitutionary*."

*Id.* And so "when consumers received some benefit from products, disgorgement of full profits 'would constitute nonrestitutionary disgorgement.'" *Id.* (quoting *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRX, 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012); *see also Chowning*, 2016 WL 1072129, at *8 ("[R]estitutionary disgorgement cannot simply be the profit that a defendant earns by defrauding a plaintiff, instead it must represent the amount the plaintiff lost as a result of the defendant's deceptive practices.").

That is not the only problem with this proposed measure. To be proper, disgorgement should not exceed the amount of profits actually caused by the false advertisement—or the difference between the profits actually earned and the profits that would have been earned in the absence of the false advertisement. As Dr. David explains, Plaintiffs have offered no method to measure incremental profits, unless their position is that TJX would have sold nothing but for its use of allegedly deceptive Compare At prices. Ex. C, David ¶ 39. Plaintiffs provide no evidence of that and their own shopping habits refute the possibility. The academic literature (to the extent at all relevant) finds that external reference prices have differing impacts on different people, and those impacts depend on the product's specific characteristics and its selling environment. *Id.* ¶ 22. Plaintiffs offer no method to determine which products TJX could have continued to sell at the retail prices paid by customers without the Compare At prices and at what rate. *Id.* ¶ 40. Finally, Plaintiffs offer no method to measure TJX's profits, despite the difficulties presented by issues like sell-through time, inventory costs, and stocking expenses that affect each product's profitability individually. *Id.* ¶ 41.

## C.   A Class Action Is Not Superior Because the Class Is Neither Ascertainable Nor Manageable

Even if Plaintiffs somehow showed predominance (which they do not and cannot), they have also failed to establish that a Rule 23(b)(3) class is the superior

method for "fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Here, the same issues that undermine commonality and predominance bar class treatment under Rule 23(b)(3).  There is no manageable way to make all of the necessary findings—*e.g.*, as to each product's market price and market value—that are needed to resolve issues of liability and measure the relief attributable to only the allegedly resulting harm.  *POM Wonderful*, 2014 WL 1225184, at*5; *Jones*, 2014 WL 2702726, at *10.  And there is no manageable way to ascertain who is in the putative class and who is not.  Plaintiffs' proposal is overly broad and includes consumers who neither saw nor relied upon a misleading Compare At price.[11]  *See Sevidal*, 189 Cal. App. 4th at 919-20 (affirming denial of certification where not feasible to ascertain which putative class members were exposed to the false designations).  In light of these and the other difficulties noted above, and Plaintiffs' failure to even propose a way forward, certification under Rule 23(b)(3) would simply not be proper.[12]

### III.   **PLAINTIFFS HAVE NOT SHOWN RULE 23(b)(2) IS SATISFIED**

Rule 23(b)(2) is not a catchall mechanism that allows a class to be certified on an injunction-only basis.  Where "monetary relief is 'predominant' over injunctive

---

[11] By precisely how much the proposed class is over-inclusive does not really matter.  Even if it is just the 34% of consumers Plaintiffs' inadmissible articles suggest completely disregard comparative reference prices as unreliable in making purchasing decisions, Plaintiffs' proposed class includes members who did not rely on, or were not harmed by, the alleged misrepresentations at all.  *Algarin*, 300 F.R.D. at 455; *Sevidal*, 189 Cal. App. 4th at 926-28.

[12] The Ninth Circuit's recent decision in *Briseno v. ConAgra*, 844 F.3d 1121, 1124 n.3 (9th Cir. 2017), recognizes that ascertainability is properly considered under the Rule 23(b)(3) superiority analysis as has traditionally been the case.  *See, e.g.*, *POM Wonderful*, 2014 WL 1225184, at *6 n.8.  Moreover, even though there is a presumption against declining certification based solely on administrative concerns, it does not apply here, where Rule 23's procedural tools for managing the case are not up to the task.  *Compare Briseno*, 844 F.3d at 1128 (explaining the presumption is based on "the variety of procedural tools" available (citing Fed. R. Civ. P. 23(c)(4), (5)), *with, e.g.*, *Algarin*, 300 F.R.D. at 452-53 (concluding that subclasses would not resolve problems "[g]iven the number of differences between . . . *two* products, including . . . pricing differences, claims differences, labeling differences, and ultimately merits differences" (emphasis added)).

-23-

relief," Rule 23(b)(2) certification is inappropriate.  *Wal-Mart*, 564 U.S. at 360 (expressing "serious doubt" about whether *any* monetary claims may be certified under Rule 23(b)(2)).

Plaintiffs attempt to avoid this general rule by disguising their request for monetary relief—rescission with full refund—as "an injunction." Mot. 17-18.  The attempt fails.  Rescission with restitution is still a claim for monetary relief, and such claims generally predominate over injunctive relief.  *See, e.g.*, *Russell v. Kohl's Department Stores, Inc.*, No. 5:15-cv-01143-RGK-SP, slip op. at 7-8 (C.D. Cal., December 4, 2015) (Rule 23(b)(2) does not apply when seeking "disgorgement, rescission with restitution, [or] false discount value"); *Algarin*, 300 F.R.D. at 458 (finding "restitution and disgorgement sought" in false advertising action "not 'incidental'"); *Mahfood*, 2008 WL 5381088, *3-4 (finding "claims for monetary damages predominate over . . . claims for injunctive . . . relief" in "misleading pricing" case).  Certification under Rule 23(b)(2) would thus be improper.

Plaintiffs' brief mischaracterizes *Kohl's* on this point.  Plaintiffs argue that "in [a] similar comparative price tag case, [the] court certified [a] Rule 23(b)(2) class stating, 'This case typifies the kind of action properly certified under Rule 23(b)(2)…'" Mot. 18 (quoting *Kohl's*, slip op. at 5).  But the sentence Plaintiffs quote contains an important qualifier: "…*insofar as Plaintiffs seek a single injunction prohibiting Defendant from further disseminating false price-comparison advertising*." *Kohl's*, slip op. at 5 (emphasis added).  In fact, the *Kohl's* court expressly rejected Plaintiffs' argument here that any "monetary relief sought [was] merely incidental to . . . the injunctive relief," and thus certified a class *only* for the purpose of prospective injunctive relief—not for the purpose of awarding restitution, rescission, or any other form of monetary damages.  *Id*.

## IV.   <u>PLAINTIFFS HAVE NOT EXPLAINED HOW RULE 23(b)(1) IS MET</u>

Rule 23(b)(1) is typically reserved for those situations, such as competing

-24-

claims for limited assets, in which inconsistent results risk prejudicing absent class members.   Such circumstances do not exist here, and Plaintiffs submit neither argument nor evidence to suggest they do.   In fact, Plaintiffs do nothing more than recite the Rule's requirements and argue that "more than 1 million individuals . . . could individually file suits."   Mot. 16.   If that were enough to create the risk of inconsistent results contemplated by Rule 23(b)(1), then every dispute with a large number of possible plaintiffs could be certified.   That is not the law.   Rule 23(b)(1) is wholly inapplicable given Plaintiffs' requested monetary relief, and "Plaintiffs' [relative] silence on this issue is well taken, as they hold the losing position." *Kohl's*, slip op. at 3 (certifying a class but only as to prospective injunctive relief).

## V.   <u>PLAINTIFFS DO NOT IDENTIFY ANY ISSUE THAT CAN BE RESOLVED ON A CLASSWIDE BASIS UNDER RULE 23(c)(4).</u>

Plaintiffs also move for certification under Rule 23(c)(4), which permits a court to certify an issue-specific class.  *Pierce-Nunes*, 2016 WL 5920345, at *2 n.4. Essentially admitting that monetary relief cannot be determined on a class-wide basis, Plaintiffs urge the Court to consider a liability-specific class, leaving monetary relief (and the attendant individualized fact finding) for a later date.   Mot. 25.   TJX agrees that the individualized nature of monetary relief in this case renders it wholly inappropriate for class certification, but removing monetary relief from the case will not create a certifiable class.   Instead, the individualized issues of falsity, reliance, and materiality described herein render a liability-specific class equally inappropriate, even one certified as to only specific questions.  *Accord Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4).").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be denied.

-25-

Dated:  April 21, 2017

Respectfully submitted,

 /s/ Jay T. Ramsey
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
CRAIG CARDON, Cal. Bar No. 168646
JAY T. RAMSEY, Cal. Bar No. 273160
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6055
Telephone:  310.228.3700
Facsimile:   310.228.3701
ccardon@sheppardmullin.com
jramsey@sheppardmullin.com

ROPES & GRAY LLP
JOHN P. BUEKER (admitted *pro hac vice*)
ALIKI SOFIS (admitted *pro hac vice*)
Prudential Tower -800 Boylston Street
Boston, Massachusetts  02199-3600
Telephone:  617.951.7951
Facsimile:   617.235.0609
john.bueker@ropesgray.com
aliki.sofis@ropesgray.com

Attorneys for Defendants
THE TJX COMPANIES, INC.,
T.J. MAXX OF CA, LLC,
HOMEGOODS, INC., and
MARSHALLS OF CA, LLC