O

# United States District Court
# Central District of California

| | |
|---|---|
| STACI CHESTER; DANIEL FRIEDMAN; ROBIN BERKOFF; and THERESA METOYER, individually and o/b/o those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE TJX COMPANIES, INC.; TJ MAXX OF CA, LLC; MARSHALLS OF CA, LLC; HOMEGOODS, INC; and DOES 1–100, inclusive,<br><br>Defendants. | Case № 5:15-cv-01437-ODW (DTB)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS [112]** |

## I. INTRODUCTION

Before the Court is Plaintiffs Staci Chester, Daniel Friedman, Robin Berkoff and Theresa Metoyer's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class. (Mot., ECF No. 112.) Defendants The TJX Companies, Inc., T.J. Maxx of CA, LLC, Marshalls of CA, LLC, and HomeGoods, Inc. (collectively, "TJX" or "Defendants") do not oppose Plaintiffs' Motion. Having considered Plaintiffs' arguments in their moving papers, the accompanying declarations, and settlement agreement, the Court **GRANTS** preliminary approval of the class action settlement and conditionally certifies the settlement class.[1]

## II. BACKGROUND

### A. Factual and Procedural Background

In the operative Consolidated Amended Class Action Complaint ("CAC"), filed on September 3, 2015, Plaintiffs allege that from July 17, 2011 to the present (the "Class Period"), Defendants have engaged in a deceptive scheme advertising "sale" prices that were substantially lower than the advertised "Compare At" prices for the products sold in Defendants' stores. (CAC, ECF No. 28.) Plaintiffs further allege that the higher Compare At prices were deceptive because they were not based on actual prices that identical items sold for either in Defendants' stores or other retailers, and that Defendants failed to adequately disclose to consumers what its Compare At reference prices were intended to represent. (*Id.*) Plaintiffs raise claims under California Business & Professions Code § 17200, et seq. ("Unfair Competition Law," "UCL"), § 17500, et seq. ("False Advertising Law," "FAL"), and California Civil Code § 1750, et seq. ("California Consumer Legal Remedies Act," "CLRA"). (*Id.* ¶ 2.)

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

Plaintiffs moved to certify the class on March 1, 2017. (ECF No. 82.) Defendants moved for summary judgment on April 21, 2017. (ECF No. 93.) Before the Court ruled on either motion, the parties notified the Court that they reached a settlement, and the pending motions were dismissed as moot. (ECF Nos. 106, 107.) On September 18, 2018, Plaintiffs filed their first motion for preliminary approval. (ECF No. 109.) The Court denied preliminary approval at that time, citing a deficiency in the proposed class notice. (ECF No. 111.) On November 13, 2017, Plaintiffs filed their Amended Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class. (Mot.)

**B. Settlement Negotiations**

Throughout early 2017, the parties engaged in extensive negotiations concerning the possible structure of a class-wide settlement. (Decl. of Christopher J. Morosoff ("Morosoff Decl.") ¶ 13, ECF No. 112-2.) The parties settled after extensive written discovery, depositions, motions to compel, law and motion practice (including resolution of a motion to dismiss, and briefing on a motion for class certification and motion for summary judgment), and protracted settlement negotiations. (*Id.* ¶ 24.) The attorneys negotiated the settlement with the assistance of an experienced mediator, Hon. Margaret Nagle. (*Id.* ¶ 13.) Plaintiffs filed the resulting Settlement Agreement and the accompanying exhibits with the Court, which are incorporated by reference in this Order. (*See generally* Settlement Agreement ("SA"), ECF No. 112-3.)

**C. Proposed Terms of Class Action Settlement**

*1. Class Definition*

The parties seek to certify a class for settlement purposes only, defined as the following:

> All persons who in the State of California, and between July 17, 2011 and the present ("the Settlement Class Period"), purchased from a T.J. Maxx, Marshalls or HomeGoods store in California one or more items with a TJX price tag that included a Compare At price, and who have not

> received a refund or credit for all of their purchase(s). Excluded from the Settlement Class are the Settling Defendants as well as their past and present officers, directors, employees, agents or affiliates, and any judge who presides over this Litigation.

(SA ¶ 1.27.) The parties estimate that there are approximately 8,000,000 members of the proposed class ("Class Members"). (Mot. 11.)

### 2. *Monetary Component*

The parties' Settlement Agreement provides that TJX will contribute $8,500,000 (the "Monetary Component"), in return for a release of claims against TJX. (SA ¶ 3.1.) The Monetary Component will be used to pay: (1) the actual costs incurred in providing notice of the settlement to the Class Members and the administration thereof, but not to exceed $1,000,000; (2) the award of reasonable attorneys' fees for the class counsel, not to exceed 25% of the Monetary Component, plus costs, not to exceed $50,000; and (3) an incentive award to each class representative in the amount of $7,500. (*Id.* ¶¶ 3.1–3.2.) After these payments are made, the Monetary Component will be distributed on a pro-rata basis in the form of TJX merchandise credits to members of the Settlement Class who submit a valid claim. (*Id.* ¶ 3.1.) The value of the merchandise credit shall be determined by dividing the remaining value of the Monetary Component by the number of Class Members who submit a valid claim. (*Id.*) The merchandise credits will have no expiration date and need not be used in full at any time. (*Id.* ¶ 1.14.) They will maintain a running balance that will be depleted based only on use until the claimant's balance is zero. (*Id.*) No minimum purchase is required to use them. (*Id.*) Additionally, each merchandise credit will be fully transferrable, stackable, and may be used in connection with any promotional discounts that are otherwise available. (*Id.*) Claimants will also have the option of redeeming an unused merchandise credit for cash in an amount equal to 75% of the merchandise credit at the time of its issuance by returning the merchandise credit to the Claims Administrator within one year after issuance. (*Id.*)

### 3. Claim Administration

The Settlement Agreement provides that JND Legal Administration will serve as Claims Administrator. (*Id.* ¶ 1.6.) JND estimates that all costs of notice and administration will not exceed $500,000, and the parties have agreed to cap such costs at $1,000,000. (Supp. Decl. of Jennifer Keough ("Keough Supp. Decl."), ECF No. 112-5; SA ¶ 3.1.2.) TJX will provide JND with a list of customers, and their email or physical mailing addresses, to the extent available. (SA ¶ 4.2.) Upon receipt of the data, JND will promptly load it into a database established for this case and prepare the notice for mailing. (Decl. of Jennifer Keough ("Keough Decl.") ¶ 13, ECF No. 112-4.) Additionally, JND will create a dedicated case website to enable Class Members to get more information about this litigation. (*Id.* ¶ 12(e).)

### 4. Class Notice

The Claims Administrator will provide notice to the Class Members as follows:

<u>Email Notice</u>: Where email addresses are available, the Claims Administrator will email notice to Class Members within thirty days of the Court's preliminary approval of the settlement. The form of the email notice to be sent to Class Members is attached as Exhibit 3 to the Settlement Agreement. (SA Ex. 3.)

<u>Postcard Notice</u>: Where only a physical address is available for a member of the class, within fifty days of the Court's preliminary approval, the Claims Administrator will mail a postcard with a notice in the form attached as Exhibit 4 to the Settlement Agreement. (SA Ex. 4.)

<u>Publication Notice</u>: Within sixty days of the Court's preliminary approval, the Claims Administrator will publish a notice in the form attached as Exhibit 5 to the Settlement Agreement in the following publications: Parade Magazine (California edition); USA Today; Los Angeles Times; San Francisco Chronicle; San Diego Union-Tribune; Sacramento Bee; Orange County Register; and San Jose Mercury News. (Keough Decl. ¶ 24; SA ¶ 4.1.2.)

<u>In-Store Notice</u>: Within fifty days of the Court's preliminary approval, TJX will post near the exit in each of Defendants' California stores, a copy of the In-Store Notice, attached as Exhibit 7 to the Settlement Agreement, with tear-away instructions on how to request a claim form and how to submit it. (SA ¶ 4.1.3.)

Each form of notice shall advise Class Members of the deadline for submitting claim forms, their right to opt out of, or object to, the Settlement Agreement, the process by which such opt-outs or objections must be made, and the date set by the Court for a hearing on final approval of the Settlement Agreement. (SA ¶ 4.1.)

5. *Injunctive Relief*

In addition to the Monetary Component, the Settlement Agreement provides that TJX will change the disclosure/definition of its Compare At pricing on Defendants' websites and California in-store signage. The amended disclosure will include language indicating that: (a) TJX's comparison prices are references to identical items or similar items; (b) where TJX's comparison price refers to an identical item, TJX is reasonably certain that the comparison price does not appreciably exceed the price at which substantial sales of the item are being made in the area; and (c) where the Compare At price refers to a similar item, that item is of essentially similar quality and the comparison price does not appreciably exceed the price at which substantial sales of the similar item are being made in the area. (SA ¶ 3.4.) TJX also agrees that its comparison pricing practices in California as of the date of the Settlement Agreement, and continuing forward, will not violate Federal or California law, including California's specific price-comparison advertising statutes and FTC regulations. (*Id.* ¶ 3.5.)

6. *Release of Claims*

The Settlement Agreement provides that Class Members who do not opt out will be deemed to have released Defendants from claims related to this litigation. (*Id.* ¶ 10.)

## III. LEGAL STANDARD

### A. Class Certification

Class certification is appropriate only if "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are generally referred to as numerosity, commonality, typicality, and adequacy. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

Next, the proposed class must meet the requirements of at least one of the three types of class actions listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Those three types are class actions where: (1) individual class members' actions would create a risk of inconsistent adjudications or adjudications that would unfairly bind other class members; (2) the defendant's actions have made final injunctive relief appropriate for the class as a whole; and/or (3) questions of law or fact predominate over questions affecting only individual class members, and a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b).

Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("Settlement benefits cannot form part of a Rule 23(b)(3) analysis; rather the examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" (quoting *Amchem Prods.*, 521 U.S. at 620)).

**B.     Preliminary Approval of Settlement**

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In settlement classes, the class's motivations may not perfectly square with those of its attorneys. *See id.* An attorney representing a settlement class may be tempted to accept an inferior settlement in return for a higher fee. *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002). Likewise, defense counsel may be happy to pay his counterpart a bit more if the overall deal is better for his client. *See id.; see also In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that the settlement class "is a vehicle for collusive settlements that primarily serve the interests of defendants—by granting expansive protection from lawsuits—and of plaintiffs' counsel—by generating large fees gladly paid by defendants as a quid pro quo for finally disposing of many troublesome claims"). In addition, if the settlement agreement is negotiated before the class is certified, as it was in this case, the potential for an attorney's breach of fiduciary duty looms larger still. *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

To protect absent class members' due process rights, Federal Rule of Civil Procedure 23(e) permits a class action to be settled "only with the court's approval" "after a hearing and on finding" that the agreement is "fair, reasonable, and adequate." The "purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, "[t]o determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the

stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

At this preliminary stage and because Class Members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary . . ." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "(1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

## IV. DISCUSSION

**A. Certification of Settlement Class**

For the reasons discussed below, the Court finds that all of the requirements for class certification are met.

*1. Numerosity*

The approximately 8,000,000 potential class members represent a sufficiently numerous class. While no "exact numerical cut-off is required" for the numerosity requirement, "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). The proposed class easily meets this requirement.

### 2. *Commonality*

Next, the claims of the potential class members here demonstrate common questions of fact and law. All that is required is a "single significant question of law or fact." *Mazza*, 666 F.3d at 589. Here, there is a common question of whether Defendants' price comparison advertising resulted in deceptive price comparisons that were likely to deceive a reasonable consumer. Therefore, this element is satisfied for purposes of the settlement class.

### 3. *Typicality*

The named Plaintiffs in this action also meet the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs argue that their claims are based on the same facts and same legal and remedial theories as the claims of the rest of the Class Members. (Mot. 13.) Further, they contend that Plaintiffs and each Class Member they seek to represent have all been exposed to Defendants' allegedly deceptive comparative price advertising. (*Id*.) The Court agrees. Plaintiffs satisfy the typicality requirement.

### 4. *Adequacy*

Finally, named Plaintiffs and their counsel appear to satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Plaintiffs contend that they have no interests antagonistic to the interests of other Class Members and that is no conflict of interest. (Mot. 13.) The Court agrees and finds that this factor has been met.

### 5. *Rule 23(b)(3) Requirements*

The Court also concludes that at least one of the three Rule 23(b)(3) categories, predominance/superiority, is present in this case.

The predominance/superiority category means that the proposed class is sufficiently cohesive to warrant adjudication by representation. A class is sufficiently cohesive where "common questions present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. The basic common question here—whether Defendants' price comparison scheme generated false advertisements that deceived consumers—predominates under the UCL, CLRA, and § 17500 of the FAL. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 514 (C.D. Cal. 2015).

Thus, the Court conditionally certifies the Settlement Class.

## B. Preliminary Approval of Class Settlement

The Court determines that the settlement negotiations appear fair and adequate and observes that the proposed settlement has no obvious deficiencies.

### 1. Adequacy of Negotiations

The Court is satisfied that the settlement here was the product of "serious, informed, non-collusive negotiations." *See Spann*, 314 F.R.D. at 319. The parties negotiated the Settlement Agreement with the assistance of an experienced mediator. Further, Plaintiffs' counsel declares that the Settlement Agreement is the product of non-collusive, arms-length negotiations. (Morosoff Decl. ¶ 25.) Plaintiffs' counsel also explained that the parties did not discuss or negotiate proposed class counsel's attorneys' fees and costs, or Plaintiffs' proposed class representative payments, until after agreeing on all other material terms of the Settlement Agreement. (*Id.*) Under these circumstances, the Court is convinced that the settlement negotiations were adequate.

### 2. Settlement Terms

After reviewing the terms of the Settlement Agreement, the Court determines that there are no obvious deficiencies, the Settlement Agreement does not unfairly give preferential treatment to named Plaintiffs, and it falls within the range of possible approval.

"Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004) (internal citations and quotation marks omitted). Thus, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved. It is through this lens of avoided risk that the Court now considers the fairness of the terms of the settlement.

<u>Incentive Awards</u>

In the Ninth Circuit, there is no per se rule against incentive awards for class representatives. However, "district courts [should] scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe*, 715 at 1163. "If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* In evaluating incentive awards, the Court should look to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).

The Court concludes that the incentive awards here fall within these guidelines. The four named Plaintiffs will each receive $7,500, for a total incentive award of $30,000, which is a small fraction of the total Monetary Component. Nothing about the incentive awards suggests that Plaintiffs might have been induced to accept a subpar settlement. *Cf. Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (disapproving incentive awards where the number of class representatives and award amounts were too high; awards averaged $30,000 each for 29 representatives).

Attorneys' Fees

Class counsel intends to seek attorneys' fees in an amount not to exceed 25% of the Monetary Component. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

The Court will consider the specific amount requested at the time Plaintiffs move for attorneys' fees, but at this stage, it notes no impropriety with reserving a portion of the settlement amount for attorneys' fees.

Release of Claims

"Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability." *Spann*, 314 F.R.D. at 317. Here, Class Members who do not opt out of the settlement will release "any and all claims . . . arising out of or in connection with all of the claims or causes of action that were made or could have been made in this Litigation . . . including assertions that TJX has used false or misleading Compare At price advertising on TJX price tags on items sold at TJX stores in California during the Class Period." (SA ¶ 10.1.1.) On the understanding that this release of claims relates only to claims that have been or could have been asserted in this litigation, the Court concludes that the release "adequately balances fairness to absent class members and recovery for plaintiffs with defendants'

1 business interest in ending this litigation with finality." *See Spann*, 314 F.R.D. at 327–28.

Notice of Class Settlement

For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). The notice "does not require detailed analysis of the statutes or causes of action forming the basis of the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Here, the parties have agreed that the Claims Administrator will distribute notice to Class Members. (SA ¶¶ 4.1–4.4.) TJX will provide the Claims Administrator email and physical mailing addresses for Class Members where available, which the Claims Administrator will use to send out email and postcard notices. Additionally, the Claims Administrator will publish notices in a variety of magazines aimed to reach the California-based class. TJX will also post notices in Defendants' stores. In addition, the Claims Administrator will set up an informational website.

After reviewing this procedure, as well as a proposed copy of the notices that will be sent to Class Members, and published in magazines and in Defendants' stores, the Court is satisfied that the proposed notice here is the best practicable under the circumstances.

//
//
//

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Preliminary Approval of Class Settlement and conditionally certifies the Settlement Class. (ECF No. 112.) The hearing on the Motion is **VACATED**. A hearing on the final approval of the class action certification and settlement, as well as Class Counsel's motion for fees and costs, shall be held on **May 14, 2018** at 1:30 p.m. at the United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012.

**IT IS SO ORDERED.**

December 5, 2017

_____
**HON. OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**