Douglas Caiafa, Esq. (SBN 107747)
DOUGLAS CAIAFA, A Professional Law Corporation
11845 West Olympic Boulevard, Suite 1245
Los Angeles, California 90064
(310) 444-5240 - phone; (310) 312-8260 - fax
Email: dcaiafa@caiafalaw.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
42-215 Washington Street, Suite A-37
Palm Desert, California 92211
(760) 469-5986 - phone;(760) 345-1581 - fax
Email:cjmorosoff@morosofflaw.com

Greg K. Hafif, Esq. (SBN 149515)
Michael G. Dawson, Esq. (SBN 150385)
LAW OFFICE OF HERBERT HAFIF
269 W. Bonita Avenue
Claremont, California 91711
(909) 624-1671 - phone; (909) 625-7772 - fax
Email: ghafif@hafif.com

Attorneys for Plaintiffs STACI CHESTER, et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| STACI CHESTER, et al,<br><br>              Plaintiffs,<br><br>     vs.<br><br>THE TJX COMPANIES, INC., et al.,<br><br>              Defendants. | **EDCV 15-01437 ODW (DTBx)**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' RESPONSE TO OBJECTIONS FILED BY STEVEN F. HELFAND, ESQ., RHADIANTE VAN DE VOORDE, BARBARA S. COCHRAN, AND PATRICK S. SWEENEY, AND JESSIE R. PARKER**<br><br>Courtroom:  5D – First Street<br>Date:           May 14, 2018<br>Time:           1:30 p.m.<br>Judge:          Hon. Otis D. Wright, II |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................ 1

II.   ARGUMENT............................................................................. 2

A.   Helfand, Sweeney, Cochran, and Van de Voorde are Professional, Serial
Objectors.................................................................................... 2

B.   The Objection by Parker is Untimely, Lacks Merit, and
Should be Overruled ................................................................. 5

C.   The Settlement Is Fair, Adequate and Reasonable, and Therefore Each
Objection Should be Overruled on the Merits.............................. 6

    1.   The Settlement Is Not a "Coupon" Settlement Under CAFA, and
Compensating Claimants with Merchandise Credits Redeemable for
Cash Is Fair, Reasonable, and Adequate............................. 6

    2.   The Amount Sought by Plaintiff's Counsel for Attorneys' Fees
Is Fair, Reasonable, and Adequate...................................... 12

    3.   Payments of $7,500 to Each Class Representative Is Fair,
Reasonable, and Adequate ................................................. 14

    4.   The Amount to be Distributed to Each Class Member is Fair,
Reasonable, and Adequate ................................................. 16

    5.   Van De Voode's Claim of Collusion is Baseless................................ 17

    6.   Giving Each Claimant a Pro Rata Share of the Settlement Fund
Is Fair, Reasonable, and Adequate...................................... 18

    7.   Redeeming Merchandise Credit for Cash is not Usury ...................... 18

    8.   The Injunctive Relief is Fair, Reasonable, and Adequate................... 19

    9.   Certifying a California-Only Settlement Class is Fair, Reasonable,
and Adequate .................................................................... 20

III.   CONCLUSION ......................................................................... 21

# TABLE OF AUTHORITIES

**Page Nos.**

**FEDERAL CASES**

*Bezdek v. Vibram USA, Inc.*

      809 F.3d 78 (1st Cir. 2015) ...........................................................................20

*Brown v. Hain Celestial Grp., Inc.*

      2016 WL 631880 (N.D. Cal. 2016).................................................................4

*Caligiuri v. Symantec Corp.*

      855 F.3d 860 (8th Cir. 2017).....................................................................13,14

*Chalkin v. Lululemon USA INC.*

      2014 WL 1245461 (S.D. Cal. May 17, 2014) ..............................................17

*Chambers v. Whirlpool Corp.*

      214 F. Supp. 3d 877 (C. D. Cal. October 11, 2016)....................................4

*Edelson PC v. The Bandas Law Firm PC, et al.*

      No. 16 C 11057 (N.D.Ill Feb. 6, 2018) .........................................................2

*Dennis v. Kellogg Co.*

      2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)...............................................2

*Fernandez v. Victoria Secret Stores, LLC*

      2008 WL 8150856 (C.D. Cal. Jul. 21, 2008) ...............................................11

*Gay v. Tom's of Maine, Inc.*

      Case No. 14-CV-60606-KMM (S.D. Fla. March 11, 2016) ........................3

*Hall v. Bank of Am., N.A.*

      2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ..............................................20

*Hendricks v. Starkist Co.*

      2016 WL 5462423 (N.D. Cal. Sept. 9, 2016)...............................................8

*In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*

      2011 WL 1790603 (W.D. Mo.2011)............................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*

PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

654 F.3d 935 (9th Cir. 2011) .......................................................................12

*In re Carrier IQ, Inc., Consumer Privacy Litig.*

2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)..............................................5

*In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*

2010 WL 3328249 (W.D. Ky. Aug.24, 2010).................................................3

*In re Easysaver Rewards Litig.*

2016 WL 4191048 (S.D. Cal. Aug. 9, 2016).................................................7

*In re HP Inkjet Printer Litigation*

716 F.3d 1173 (9th Cir. 2013) ......................................................................8

*In re Law Office of Jonathan E. Fortman, LLC*

2013 WL 414476 (E.D. Mo. Feb.1, 2013) ....................................................3

*In re Online DVD-Rental Antitrust Litig.*

779 F.3d 934 (9th Cir. 2015) .............................................................. passim

*In re Polyurethane Foam Antitrust Litig.*

168 F. Supp. 3d 985 (N.D. Ohio 2016) ........................................................5

*In re TRS Recovery Servs.*

2016 WL 543137 (D. Me. Feb. 10, 2016)......................................................5

*Johnson v. Ashley Furniture Industries, Inc.*

2016 WL 866957 (S.D. Cal. Mar. 7, 2016)...................................................8

*Keil v. Lopez*

862 F.3d 685 (8th Cir. 2017) ..................................................................13,14

*Larsen v. Trader Joe's Co.*

2014 WL 3404531 (N.D. Cal. July 11, 2014) ..............................................4

*Legg v. Lab. Corp. of Am. Holdings*

2016 WL 3944069 (S.D. Fla. Feb. 18, 2016)................................................5

*Parsons v. Brighthouse Networks, LLC*

2015 WL 13629647 (N.D. Ala. Feb. 5, 2015) ............................................11

*Petersen v. Lowe's HIW, Inc.*

-iii-

Nos. C 11–01996 RS, C 11–03231 RS, C 11–02193 RS

(N.D. Cal. Aug. 24, 2012) ..................................................................11

*Powers v. Eichen*

229 F.3d 1249 (9th Cir. 2000)........................................................13

*Radcliffe v. ExperianInfo. Solutions Inc.*

715 F.3d 1157 (9th Cir. 2013)........................................................14

*Redman v. RadioShack Corp.*

768 F.3d 622 (7th Cir. 2014)..........................................................9

*Reibstein v. Rite Aid Corp.*

761 F. Supp. 2d 241 (E.D. Pa.2011)...........................................11

*Roberts v. Electrolux Home Prod., Inc.*

2014 WL 4568632 (C.D. Cal. Sept. 11, 2014)...........................3,5

*Seebrook v. Children's Place Retail Stores, Inc.*,

No. C 11–837 CW, 2013 WL 6326487 (N.D.Cal. Dec.4, 2013) ................17

*Spann v. J.C. Penney Corp.*

211 F.Supp.3d 1244 (C.D. Cal. 2016)..........................................4

*Staton v. Boeing Co.*

327 F.3d 938 (9th Cir. 2003) ................................................ 13,14,15


**STATUTES AND RULES**

CAFA, 28 U.S.C. §1712 .................................................... passim

Fed. R. Civ. Proc. 23.......................................................... passim

Cal. Const. Art. XV............................................................19

Cal. Civ. Code § 1916........................................................19

PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Staci Chester, Robin Berkoff, Theresa Metoyer, and Daniel Friedman (collectively, "Plaintiffs") provide their response to the objections filed by Steven F. Helfand, Esq. ("Helfand"), Rhadiante Van De Voorde ("Van De Voorde"), Barbara S. Cochran ("Cochran"), and Patrick S. Sweeney ("Sweeney") (referred to collectively herein as "Objectors"), as follows:

## I. __INTRODUCTION__:

Four timely objections have been made to the instant Settlement from the following objectors: (1) Helfand (ECF No. 117); (2) Van De Voorde (ECF No. 119); (3) Cochran (ECF No. 120); and, (4) Sweeney (ECF No. 121). Taken together, the objections erroneously argue that:

1. The settlement is a "coupon" settlement under the Class Action Fairness Act ("CAFA");

2. The attorneys' fees sought by Plaintiffs' counsel are excessive;

3. The enhancement payments to the named class representatives are excessive;

4. Settlement Class Members who submit claims ("Claimants") will receive only $0.66 under the Settlement;

5. The Court should re-evaluate the Settlement was the product of collusion;

6. The amount of the Settlement should be based on the number of purchases, not the number of Claimants;

7. The redemption of Merchandise Credit for cash constitutes usury;

8. Class Counsel should be paid with merchandise credit, not money;

9. The injunctive relief achieved as a result of the Settlement is illusory; and,

10. Any Class Members residing out-of-state cannot use Merchandise Credits.

As shown below, each of the Objectors are professional serial objectors who routinely file objections to class settlements for the obvious objective of extracting "pay-offs" as a condition of withdrawing their objections. Further, the same

arguments raised here by these Objectors have been rejected repeatedly in prior cases. Each respective objection should be overruled as the Settlement here is fair, reasonable, and adequate, pursuant to Fed. R. Civ. Proc 23(e)(2).

In addition, a late "objection" was filed by Jessie R. Parker (ECF No. 122]) on April 11, 2018, two days after the deadline to object.[1]  Mr. Parker's "objection," however, is not an objection to the Settlement.  Rather, he claims that nothing should be paid to the roughly 210,000 Settlement Class Members who have submitted claims because the lawsuit lacks merit and TJX is a great store with really good bargains.

**II.**    **ARGUMENT**:

**A.**    **Helfand, Sweeney, Cochran, and Van de Voorde are Professional, Serial Objectors**:

Many courts have recognized that so-called "serial objectors," who frequently file boilerplate objections to class settlements, do so for the sole purpose of extracting a quick payoff from the settling parties with the threat of tying up a proposed settlement for months, or even years, on appeal. See e.g., *Edelson PC v. The Bandas Law Firm PC, et al*., No. 16 C 11057 (N.D.Ill Feb. 6, 2018) (the typical tactics of professional serial objectors "appears to be in bad faith, to have no genuine social value, and to be inconsistent with the ethical standards of the legal profession. Gaming the rules of the legal system solely for personal self-enrichment wastes the time and money of courts and attorneys, wrests funds away from deserving litigants, and tarnishes the public's view of the legal process.").

In *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *4 (S.D. Cal. Nov. 14, 2013), the Court made the following cogent observation which is equally applicable here:

> Many jurists and commentators bemoan that "too much of the
> controversy in many class action litigations seems to center on the issue
> of attorneys' fees" and that, as a result, "a cottage industry has developed

---

[1] At the time of this filing, the Parties just received notice that another late objection was filed on April 13, 2018, five days after the deadline, by Kevan Peters. Plaintiffs' counsel respectfully request that the Court dismiss Mr. Peters' objection as untimely.

PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

of professional objectors, where again the emphasis or at least the primary motivation is attorneys' fees.*" In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3328249, at *4 (W.D. Ky. Aug.24, 2010). As a corollary, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *In re Law Office of Jonathan E. Fortman, LLC*, 2013 WL 414476, at *5 (E.D. Mo. Feb.1, 2013).

Here, the background and intent of the Objectors and their counsel speak volumes.  Sweeney, for example, has been found to raise objections to class settlements that "are not made for the purpose of benefitting the Class," "are meritless in all respects." *Roberts v. Electrolux Home Prod., Inc.*, 2014 WL 4568632, at *12 (C.D. Cal. Sept. 11, 2014).  Helfand, Sweeney, Cochran (and her husband), and Van de Voorde (and her attorney Caroline Tucker) are each serial professional objectors.[2] Indeed, several district court have taken notice of the frivolous nature of the objections raised by these professional extortionists.

For example, in *Gay v. Tom's of Maine, Inc.*, Case No. 14-CV-60606-KMM (S.D. Fla. March 11, 2016), the United States District Court for the Southern District of Florida overruled "serial objector" Helfand's objection, noting:

> Helfand, an attorney, is a well-known serial objector who has represented himself and third parties in objecting to multiple class action settlements. *See, e.g., Chavez v. Netflix, Inc.*, 75 Cal. Rptr. 3d 413, 423–24 (Ct. App. 2008); *Wal-Mart Stores, Inc. v. Buholzer*, 156 F. App'x 346, 347 (2d Cir.

---

[2]*See, e.g.*, www.serialobjector.com/persons/302 (listing cases in which Mr. Helfand has filed an objection); www.serialobjector.com/persons/115 (Mr. Sweeney); www.serialobjector.com/persons/100  (Ms. Cochran); www.serialobjector.com/persons/142 (Mr. Cochran); and, www.serialobjector.com/persons/738  (Ms. Tucker).

PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

2005); *Lane v. Facebook, Inc.*, 709 F.3d 791, 792 (9th Cir. 2013); *In re NVIDIA GPU Litig.*, 539 F. App'x 822,823 (9th Cir. 2013); *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288(DLC), 2004 WL 2591402, at *9 (S.D.N.Y. Nov. 12, 2004); *Hillis v. Equifax Consumer Servs., Inc.*, No. 104-CV-3400-TCB, 2007 WL 1953464, at *2 (N.D. Ga. June 12, 2007); *Lane v. Facebook, Inc.*, 696 F.3d 811, 816 (9th Cir. 2012). *Id*. at *4-5, fn.1.

The same court overruled an objection by "professional objector" Sweeney, noting:

> The last two objections are from professional objector Patrick S. Sweeney, one in his individual capacity as a purported member of the class ... and the other as counsel for Dawn Weaver....  Both the Sweeney objection and Weaver objection are facially specious and without merit. Sweeney's and Weaver's objections are the same recycled, boilerplate arguments they have previously (and unsuccessfully) used in the past in a number of other class action settlements.

*Id*. at *6.

A growing list of other Federal Courts have likewise described Helfand and Sweeney as serial objectors.  See *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1260 (C.D. Cal. Sept. 30, 2016) ("Steven Helfand, another known serial objector."); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 890 & fn. 8 (C. D. Cal. October 11, 2016) ("Most of the objections were filed by 'serial' objectors who are well-known for routinely filing meritless objections to class action settlements for the improper purpose of extracting a fee rather than to benefit the Class. These serial objectors include: ...  Patrick Sweeney ... Steven Helfand, ... *see Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *9-10 (N.D. Cal. 2016)...."); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *7 & fn. 4 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "attorney Patrick Sweeney also has a long

history of representing objectors in class action proceedings"); *Roberts*, 2014 WL 4568632, at \*12 ("The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class, and finds that they are meritless in all respects. The objections are filed by counsel who routinely files objections to class settlements."); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at \*5 & fn. 4 (N.D. Cal. Aug. 25, 2016) (overruling objection by Mr. Sweeney and labeling him a "serial objector" who lacked standing to object because the phone number he "provided on his claim form was actually the same number his wife, Pamela Sweeney, previously swore was hers in another case."); *In re TRS Recovery Servs.*, 2016 WL 543137, at \*6 & fn.16 (D. Me. Feb. 10, 2016) (overruling Sweeney's objection and stating it was without merit and similar to other form objections he has filed in other cases); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 999 (N.D. Ohio 2016) ("Sweeney offers absolutely no analysis or factual support for these statements. His objections… are overruled."); *Legg v. Lab. Corp. of Am. Holdings*, 2016 WL 3944069, at \*3 & fn.2 (S.D. Fla. Feb. 18, 2016) (noting that an objection from Mr. Helfand was withdrawn and that he did not even have standing to object).

The Court should overrule the canned, boilerplate objections filed by these four professional Objectors.  They are filed for the sole purpose of extracting an undeserved and extortion-like "pay-off" from Plaintiffs' counsel. The objections also lack merit, have been previously rejected elsewhere, and do not benefit the Class.

**B.**     **The Objection by Parker is Untimely, Lacks Merit, and Should be Overruled**:

On April 11, 2018, Mr. Parker's objection was filed. (ECF No. 122) The Notice disseminated to the Class here informed Settlement Class Members that anyone who wanted to object to the Settlement had to notify the District Court of their objection, in writing, postmarked by April 9, 2018. (ECF No. 123-3, at ¶ 22). There is no indication that Mr. Parker post-marked his objection by April 9.

In any event, the Court should summarily overrule Mr. Parker's objection, because he objects that he and others were not defrauded by making purchases at TJX stores by Compare At price tags. (ECF No. 122, at pp. 1-3). Thus, he does not object that the Settlement is unfair; instead, he claims *the lawsuit* is unfair to Defendants and wants it dismissed. (*Id.*, at p. 3 ("I sincerely hope that the court hears my objection and terminates this lawsuit.")).

## C.     The Settlement Is Fair, Adequate and Reasonable, and Therefore Each Objection Should be Overruled on the Merits:

The following discussion addresses the various boilerplate objections raised to the Settlement.

### 1.     The Settlement Is Not a "Coupon" Settlement Under CAFA, and Compensating Claimants with Merchandise Credits Redeemable for Cash Is Fair, Reasonable, and Adequate:

Contrary to the specious and boilerplate contentions of the Objectors, the Merchandise Credits here are not "coupons" within the meaning of CAFA, 28 U.S.C. §1712(e).  Here, as in *In re Online DVD*, the Merchandise Credits do not come within or invoke CAFA's "coupon" provisions.

CAFA does not define the term "coupon." 28 U.S.C. §1712(a)-(e).  However, the Ninth Circuit has provided substantial guidance in evaluating whether a gift card or store credit should be subject to CAFA's "coupon" provisions. See, *In re Online DVD*, 779 F.3d 934.  The Court in *In re Online DVD* based its finding that Walmart gift cards were not "coupons" within the meaning of CAFA primarily on the concerns that prompted Congress to enact Section 1712.  The Court first found that concerns with "coupon settlements" addressed by section 1712 were concerns about settlements in which class members received nothing more than promotional coupons to purchase more products from Defendants. *In re Online DVD*, 779 F.3d at 950. The Court specifically focused on situations where class members were required to give settling defendants more of their own money to obtain the benefit of the coupon and

where the coupons were only valid for select products or services. *Id.* at 951.  The Court distinguished the type of settlement at issue before it where, as here, class members need not spend any of their own money to obtain the benefits, from those true "coupon" cases where class members receive only "a discount—frequently a small one—on class members' purchases from the settling Defendant." *Id.*

The *In re Online DVD* Court placed particular emphasis on the fact that the settlement there, "[i]nstead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items...gives class members $12.00 to spend on any item carried on the website of a giant, low-cost retailer." *Id.*  The Court went on to emphasize that class members "need not spend any of [their] own money and can choose from a large number of potential items to purchase." *Id.* The same is true here. The Court also considered that the gift cards were freely transferrable and did not expire, as they are here as well. *Id.*

Similarly, the Settlement here allows class members to purchase any number of products from TJX stores, many of which do not require class members to spend any of their own money.  In fact, the Declaration of Jennifer A. Peoples, Litigation and Regulatory Counsel at TJX, confirmed in her Declaration (ECF No. 123-6, ¶4-6) that thousands of different items from TJ Maxx, Marshalls and HomeGoods can be purchased for under $25, the anticipated amount of the Merchandise Credit to be distributed here.  The Merchandise Credits here are not discount coupons; they represent over $25 of store credit that can be used for or toward the purchase of any item offered for sale by TJX and are not limited to the purchase of a specific item or set of items.

Several district courts in this circuit have also analyzed whether a store credit should be considered a "coupon" under CAFA and provide further guidance and support for the conclusion that the Merchandise Credits in this case are not "coupons."  For example, the court in *In re Easysaver Rewards Litig.*, 2016 WL 4191048 (S.D. Cal. Aug. 9, 2016), found that $20 "merchandise credits" that were

valid for any product offered by the defendant retailers, did not require class members to spend any of their own money when using the credits, and were fully transferrable, were "not discount coupons" subject to CAFA, even though they expired after one year and had additional "black-out dates." *Id*. at *2-3.  The Merchandise Credits here are also valid for any product offered by the defendant retailers, do not require Class Members to spend any of their own money when using the credits, and are fully transferrable.  They also never expire and have no "black-out dates."

Similarly, the court in *Hendricks v. Starkist Co*., 2016 WL 5462423 (N.D. Cal. Sept. 9, 2016), also relying on *In re Online-DVD*, found that "vouchers" that could be used to purchase Starkist products without the need for class member claimants to spend any of their own money, were "freely transferrable," and had "no expiration date," were "not coupons." 2016 WL 5462423, at *7.  Likewise, the court in *Johnson v. Ashley Furniture Industries, Inc*., 2016 WL 866957 (S.D. Cal. Mar. 7, 2016), found that a $25 "Merchandise Voucher" to be used as "store credit" at Ashley Furniture stores was "not a coupon." 2016 WL 866957, at *4.

The Merchandise Credits in this case are much like the "gift cards," "merchandise credits," and "vouchers" at issue in the *In re Online-DVD*, *Easysaver*, *Starkist*, and *Ashley Furniture* cases.  The Merchandise Credits here may be used by Class Members to purchase thousands of items available at TJX stores without the need to spend any of their own money. (See, Declaration of Peoples, who confirms in her declaration that "there are thousands of items offered for sale for $25 or less in each T.J. Maxx, Marshalls and HomeGoods store in California at any one time." (Peoples Decl., ECF No. 123-6, ¶4).

*In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013), relied on by some of the Objectors, is distinguished from the facts here.  Unlike in *In re HP Inkjet Printer Litigation*, the Merchandise Credits here are fully transferrable, stackable, and never expire.  They have none of the characteristics of a coupon that would render them subject to CAFA. See, *In re Online-DVD*, 779 F.3d at 950-951.  As such, the

unremarkable conclusion is that the Merchandise Credits here are not "coupons," and should be valued at their face value for purposes of calculating the value of the settlement fund.

Objector Van de Voode contends that the merchandise credit offered to the Claimants in this case are actually coupons under the CAFA. (ECF No., at 119, at * 5). She alleges that CAFA requires the Court here to base any award of attorney's fees attributable to the merchandise credits on the value to the Class of the merchandise credits that are redeemed. (Id. (citing 28 U.S.C. 1712(a)). She thus contends that this Court should await to award attorney's fees until the Merchandise Credits issued to Claimants are actually redeemed. (Id.). One obvious problem with this argument is that the Merchandise Credits here never expire. Claimants have the option to hold them for years, or even decades, before choosing to use them.

Van de Voore argues that the Seventh Circuit's decision in *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), is controlling here, and effectively ignores controlling Ninth Circuit authority. See, *In re Online DVD*, 779 F.3d 934. The simple fact is that *Redman* does not control here.

In *Redman*, the Seventh Circuit found that the only remedy received by the class – a $10 voucher that they could use at Radio Shack – was a coupon settlement, subject to CAFA. *Redman*, 768 F.3d at 635 ("We have called this case an 'all-coupon' case.") & *id.*, at 633-37. There, however, the $10 coupon expired in 6 months. *Id.* 768 F.3d at 630. Here, the Merchandise Credits never expire, and are redeemable for cash. This alone makes *Redman* inapposite.

In this Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Conditional Certification of Settlement Class ("Prelim. App. Order") (ECF No. 113), the Court set forth the terms of the monetary portion of the Settlement here:

> The parties' Settlement Agreement provides that TJX will contribute $8,500,000 (the "Monetary Component"), in return for a release of

claims against TJX. (SA ¶ 3.1.) The Monetary Component will be used to pay: (1) the actual costs incurred in providing notice of the settlement to the Class Members and the administration thereof, but not to exceed $1,000,000; (2) the award of reasonable attorneys' fees for the class counsel, not to exceed 25% of the Monetary Component, plus costs, not to exceed $50,000; and (3) an incentive award to each class representative in the amount of $7,500. (Id. ¶¶ 3.1–3.2.) After these payments are made, the Monetary Component will be distributed on a pro-rata basis in the form of TJX merchandise credits to members of the Settlement Class who submit a valid claim. (Id. ¶ 3.1.) The value of the merchandise credit shall be determined by dividing the remaining value of the Monetary Component by the number of Class Members who submit a valid claim. (Id.) <u>The merchandise credits will have no expiration date and need not be used in full at any time. (Id. ¶ 1.14.) They will maintain a running balance that will be depleted based only on use until the claimant's balance is zero. (Id.) No minimum purchase is required to use them. (Id.) Additionally, each merchandise credit will be fully transferrable, stackable, and may be used in connection with any promotional discounts that are otherwise available. (Id.) Claimants will also have the option of redeeming an unused merchandise credit for cash in an amount equal to 75% of the merchandise credit at the time of its issuance by returning the merchandise credit to the Claims Administrator within one year after issuance.</u> (Id.).

(ECF No. 113, at *4 (emphasis added)).

Where, as here, the Merchandise Credit may be used, sold, or transferred without restriction or, alternatively, redeemed for cash, the Settlement is not a coupon settlement under CAFA. *See In re Online DVD*, 779 F.3d at 951 (finding that $12 Walmart gift cards did not constitute a "coupon" under CAFA where "the Walmart

gift cards can be used for any products on walmart.com, are freely transferrable (though they cannot be resold on a secondary market) and do not expire, and do not require consumers to spend their own money."); see also, *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255-56 (E.D. Pa.2011) (holding that $20 Rite Aid gift cards with actual cash value, that will be mailed to (mostly) regular customers, have no expiration date, are freely transferrable, and can be used for literally thousands of products for which ordinary consumers have need, are more like cash than coupons); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *2, *4-16 (C.D. Cal. Jul. 21, 2008) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with gift cards to Victoria's Secret); *Petersen v. Lowe's HIW, Inc.*, Nos. C 11–01996 RS, C 11–03231 RS, C 11–02193 RS (N.D. Cal. Aug. 24, 2012) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with $9 gift cards to Lowe's); and, *In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 2011 WL 1790603, at *2-4 (W.D. Mo.2011) (holding that a settlement that provides class members with vouchers to obtain new products was not a coupon settlement because the vouchers do not require class members to spend their own money nor purchase the same or similar products as those that gave rise to the litigation).

Moreover, where, as here, there is injunctive relief provided as part of the settlement, the settlement is not considered a "coupon-only" settlement under CAFA. *See, e g., Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, at *11 (N.D. Ala. Feb. 5, 2015) (distinguishing *Redman* because "the more significant relief for the class is the substantial injunctive relief agreed to by the settling defendant that addresses Plaintiff's claims regarding the alleged anti-competitive behavior. This case is not an 'all-coupon' case like *Redman*."). Thus, even if the Court were to consider the Merchandise Credits here to be "coupons" within the meaning of CAFA, the Settlement here still would not be a "coupon-only" settlement. Accordingly, the Court should overrule the "coupon" objection raised by Van de Voorde.

**2.     The Amount Sought by Plaintiff's Counsel for Attorneys' Fees Is Fair, Reasonable, and Adequate**:

This Court's Prelim. App. Order noted that "[c]lass counsel intends to seek attorneys' fees in an amount not to exceed 25% of the Monetary Component," and that it would  consider the specific amount of attorneys' fees when plaintiffs filed their motion for attorneys' fees.  (ECF No. 113, at *13).  On March 13, 2018, Plaintiffs' counsel filed their motion for attorneys' fees, and sought the sum of $2,125,000, which is 25% of the total $8,500,000 settlement.  The amount sought is reasonable, particularly when cross-checked against the lodestar sum of $2,092,500. (ECF No. 116-1, at *14).

The Objectors complain that the attorneys' fees sought are excessive. (ECF No. 117, at p. 1; ECF No. 119, at pp. 4-5; ECF No. 120, at p. 1; and, ECF No. 121, at pp. 3-4).  Specifically, Sweeney contends that class counsel should be limited to seeking 25% of the amount of money left for distribution after deducting attorneys' fees and costs, the administrator's expenses, and the incentive awards. (ECF No. 121, at pp. 3-4).  Cochran contends that 25% is too high, and that counsel should get paid only for the actual hours put into the case multiplied by a reasonable hourly rate. (ECF No. 120, at p. 1).  As stated, Van de Voorde contends the attorney's fees under requested are subject to CAFA, that the Merchandise Credits are coupons, and thus, the fee award should be based on a percentage of the amount of Merchandise Credits actually redeemed. (ECF No. 119, at p.5).  Helfand adds nothing, simply arguing as he always does in his objections, that the attorney's fees are excessive without further explanation. (ECF No. 117, at p. 1).[3]

The Ninth Circuit has held that "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  *In re Bluetooth Headset Prods. Liab.*

---

[3] Plaintiffs' Motion for Attorneys' Fees amply supports the requested amount. In the interest of brevity, Plaintiffs will not repeat the arguments and analysis made therein, but respectfully direct the Court's attention to the Fee Motion for additional analysis.

PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

*Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys fees as a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.*

In determining the percentage method, the Court has the discretion to base the percentage of attorneys' fee on the total value of the overall settlement. *See Online DVD-Rental, supra*, 779 F.3d 934 at 953 ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses."); see also *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (in rejecting an objector's argument that a fee award in a securities settlement should be based on "net recovery," which does not include "expert fees, litigation costs, and other expenses," the Court stated that "the reasonableness of attorneys' fees is not measured by the choice of the denominator."); *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ("The district court also did not abuse its discretion by including the cost of providing notice to the class ... as part of its putative fund valuation.... We have said that 'the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable.'"); *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017) ("a district court may include fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount."); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865–66 (8th Cir. 2017) (Court overruled objection that amount used to calculate percentage of attorneys' fee should exclude administrative fees).

Where, as here, the Objectors failed to make any argument or provide any proof that the administrative fees of up to $1 million were unnecessary or

unreasonable, the Court may base the attorneys' fees on the total amount of the settlement without reduction of administrative and litigation costs.   See *Staton v. Boeing Co.*, *supra*, 327 F.3d at 975; *Keil v. Lopez, supra*, 862 F.3d at 703; and, *Caligiuri v. Symantec Corp.*, *supra*, 855 F.3d at 865-66.

Mr. Helfand also opines that class counsel should be paid in merchandise credits instead of cash. (ECF No. 117, at p. 2).  Not surprisingly, he provides absolutely no legal support for his novel assertion.  Accordingly, Plaintiffs respectfully request that the Court should award the fees requested in their Motion for Attorneys' Fees without deduction for administrative and/or litigation costs.

**3.     Payments of $7,500 to Each Class Representative Is Fair, Reasonable, and Adequate:**

Helfand contends, with no legal or factual support, that the requested enhancement payment to each class representative is excessive and should be capped at $5,000, rather than the $7,500 requested. (ECF No. 117, at p.1).  Van De Voorde likewise asserts that $7,500 is too much, and that enhancements should be capped at $2,500.  (ECF No. 119, at p.5).

In its Prelim. App. Order, the Court preliminarily approved the payment of $7,500 to each class representative for a total $30,000 payment, correctly noting that:

> In the Ninth Circuit, there is no per se rule against incentive awards for class representatives. However, "district courts [should] scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." (*Radcliffe v. ExperianInfo. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013)). "If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." Id. In evaluating incentive awards, the Court should look to "the number of named plaintiffs receiving incentive payments,

the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).

The Court concludes that the incentive awards here fall within these guidelines. The four named Plaintiffs will each receive $7,500, for a total incentive award of $30,000, which is a small fraction of the total Monetary Component. Nothing about the incentive awards suggests that Plaintiffs might have been induced to accept a subpar settlement. *Cf. Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (disapproving incentive awards where the number of class representatives and award amounts were too high; awards averaged $30,000 each for 29 representatives).

(Prelim. App. Order at *6).

These two objectors provide no legitimate reason to disturb this Court's preliminary determination that the $7,500 paid to the four class representatives is fair, reasonable, and adequate.  The total award of $30,000 constitutes a microscopic 0.35% of the $8,500,000 settlement. The amount to be awarded here is "relatively small," and "well within the within the usual norms of 'modest compensation' paid to class representatives for services performed in the class action." *Online DVD-Rental.*, *supra*, 779 F.3d at 943 (citation omitted).  The objections to the representative enhancement payments should be overruled.

In addition, the Declarations submitted by each Plaintiff amply demonstrate the time and effort they expended as class representatives.  Each was required to sit for deposition and respond to repeated rounds of written discovery, as well as produce hundreds of pages of documents which disclose the most intimate details of their lives, including bank and credit card statements over a span of many years.

/ / /

/ / /

### 4.    The Amount to be Distributed to Each Class Member is Fair, Reasonable, and Adequate:

Cochran and Van de Voorde object to the Settlement on the theory that if every one of the 8 million Class Members submitted a claim, the total award to each would be 66 cents. (ECF No. 119, at p. 2; and, ECF No. 120, at p. 1).

Now that the claims period has ended, the administrator has reported that approximately 209,000 Class Members have submitted claims for their pro rata share of the net Settlement fund, which is estimated to be at least $5,295,000. Therefore, each Claimant will receive Merchandise Credit of approximately $25.46. If redeemed for cash, the Claimant will receive approximately $19.10. (ECF No. 123-3, at ¶ 25 (Keough Dec.)).

District courts have approved settlements involving merchandise credits or gift cards involving similar value. See *Online DVD-Rental*, 779 F.3d at 952) (approving settlement providing $12 Walmart gift cards); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (approving transferable vouchers ranging from $5 to $30); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, *6-7 (C.D. Cal. July 21, 2008) (approving the use of gift cards where they provided "significantly more than [each class member] would have earned had Victoria's Secret paid her for her work"); *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (approving the use of gift cards in large part because they are transferrable; "this enables class members to obtain cash – something all class members will find useful"); *States of New York and Maryland v. Nintendo of America, Inc.*, 775 F. Supp. 676, 681 (S.D.N.Y.1991) (approving a settlement awarding each class member a five dollar coupon and noting that the coupons were fully transferrable and that "[c]ompensation in the form of coupons has been approved by other courts").

Additional recent District Court rulings in California support the conclusion that the Merchandise Credits to be distributed here are fair, reasonable, and adequate,

and are not "coupons:" (See: *In re: Easysaver*, 2016 WL 4191048, at *2, citing to *Online DVD-Rental*, finding $20 merchandise credits to be fair and not coupons; *Chalkin v. Lululemon USA INC*., 2014 WL 1245461 at *4 (S.D. Cal. May 17, 2014), the court "adopt[ed] the approach of the line of federal district court cases distinguishing credit vouchers, which require no additional purchase to redeem and therefore operate like cash, from coupons, which provide a discount or subsidy from a larger purchase and thus fall under the restrictions of section 1712(e)," and noted that "although the settlement involves credit vouchers rather than a cash distribution, . . . $25.00 vouchers to 3,509 class members . . . will require no additional purchase, and the credit vouchers will be valid for six months (*Id.*)"; *Seebrook v. Children's Place Retail Stores, Inc.*, No. C 11–837 CW, 2013 WL 6326487 (N.D.Cal. Dec.4, 2013), approving a $10.00 certificate and finding that it was not a coupon because much of the merchandise at defendant's stores was priced at ten dollars or less and class members did not need to spend money to realize the settlement benefit).

In this case, over 209,000 California consumers have submitted claims and are waiting for their $25 Merchandise Credit, redeemable for $19 cash. The amount to be distributed here is fair, reasonable, and adequate.  Accordingly, the objections here should be overruled.

**5.     Van De Voode's Claim of Collusion is Baseless**:

Van De Voode, without any factual support whatsoever, claims that the Court should further "evaluate the settlement for any potential collusion between class counsel and defendant." (ECF No. 115, at p. 5).  However, the Court has already made this evaluation and correctly determined that the settlement negotiations were adequate and free from any collusion:

The Court is satisfied that the settlement here was the product of "serious, informed, non-collusive negotiations...." The parties negotiated the Settlement Agreement with the assistance of an experienced mediator.  Further, Plaintiffs' counsel declares that the Settlement

Agreement is the product of non-collusive, arms-length negotiations. Plaintiffs' counsel also explained that the parties did not discuss or negotiate proposed class counsel's attorneys' fees and costs, or Plaintiffs' proposed class representative payments, until after agreeing on all other material terms of the Settlement Agreement. Under these circumstances, the Court is convinced that the settlement negotiations were adequate.

(ECF No. 113, at *11 (citations omitted)).

There is absolutely no evidence of collusion here.  In fact, quite the opposite. As a result, this Court should overrule Ms. Van De Voode's objection, as she has failed to set forth any facts that would rebut the Court's preliminary determination that the settlement was based on the respective parties' good-faith, arms-length, non-collusive negotiations, conducted with the assistance of a well-respected and experienced mediator.

### 6.    Giving Each Claimant a Pro Rata Share of the Settlement Fund Is Fair, Reasonable, and Adequate:

Ms. Cochran argues that the amount of each Merchandise Credit should be based on the "number of purchases" made by each class member, not a pro-rata distribution based on the number of persons who submitted a claim.  (ECF No. 120, at p. 1).  In *Online DVD-Rental*, *supra*, at 944-45, the district court overruled a similar objection and held that the "claimant fund sharing approach" was appropriate in consumer class actions. *Id.*, at 945 (approving a "claimant fund approach" where it "provides direct compensation to class members.").  This is exactly what the Settlement here provides.  This Court has preliminarily approved a pro rata distribution, and there is no legitimate reason to alter the Court's Prelim. App. Order.

### 7.    Redeeming Merchandise Credit for Cash is not Usury:

With no legal authority whatsoever, Helfand claims that "the exchange of merchandise credits into cash constitutes usury."  (ECF No. 117, at p. 2).  Helfand is mistaken.

PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

As noted above, an acceptable remedy in the settlement of retail consumer class actions is the use of merchandise credits that may also be redeemed for cash. *Online DVD-Rental*, *supra*, 779 F.3d at 951.  Further, usury involves a charge of excessive interest.  *See* Cal. Const. Art. XV, § 1; and, Cal. Civ. Code § 1916-1 to 1916-5 (California's usury law).  Helfand's argument simply has no basis and does not apply to the facts or law in this case.

**8.     The Injunctive Relief is Fair, Reasonable, and Adequate**:

Helfand erroneously objects that the injunctive relief here is "illusory."  He incoherently asserts, without any analysis, that "No meaningful information [sic] presented monetizing the value of the injunction or contrasting the monetary aspects with the proposed class settlement." (ECF No. 117, at p. 1).  In the Prelim. App. Order, the Court described the injunctive relief provided by the Settlement here:

> In addition to the Monetary Component, *the Settlement Agreement provides that TJX will change the disclosure/definition of its Compare At pricing on Defendants' websites and California in-store signage*. The amended disclosure will include language indicating that: (a) TJX's comparison prices are references to identical items or similar items; (b) where TJX's comparison price refers to an identical item, TJX is reasonably certain that the comparison price does not appreciably exceed the price at which substantial sales of the item are being made in the area; and (c) where the Compare At price refers to a similar item, that item is of essentially similar quality and the comparison price does not appreciably exceed the price at which substantial sales of the similar item are being made in the area. (SA ¶ 3.4.) *TJX also agrees that its comparison pricing practices in California as of the date of the Settlement Agreement, and continuing forward, will not violate Federal or California law, including California's specific price-comparison advertising statutes and FTC regulations*. (Id. ¶ 3.5.)

1   (Prelim. App. Order at *6 (emphasis added)).

2          The injunctive relief substantially benefits the Class by requiring TJX to revise

3   its "Compare At" pricing to accurately reflect the nature of the comparison and to

4   comply with Federal and California law.  As a result, the injunctive relief here is not

5   illusory.  See, e.g., *Bezdek v. Vibram USA, Inc*., 809 F.3d 78, 84 (1st Cir. 2015)

6   (illusory objection to injunctive relief rejected where defendant was required "to

7   discontinue its purportedly false advertising campaign," because it was a "meaningful

8   concession" and "a valuable contribution to this settlement agreement.").  Further, the

9   injunctive relief is not viewed in isolation; rather, the entire Settlement as a whole is

10  reviewed to determine whether it is fair, reasonable and adequate.  *See, e.g., Hall v.*

11  *Bank of Am., N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) ("in light of

12  the Settlement Agreement's delivery of significant monetary relief to the class

13  members, the objectors' cavil about injunctive relief is of little moment.").

14          **9.     Certifying a California-Only Settlement Class is Fair, Reasonable,**

15                  **and Adequate**:

16          Finally, Helfand objects that he cannot use the Merchandise Credit in Florida,

17  where he now resides.  (ECF No. 117, at p. 2).  However, he is the only person who

18  has objected on the basis of residence.  As noted in this Court's Prelim. App. Order,

19  the Class is a California class:

20          All persons who in the State of California, and between July 17, 2011

21          and the present ("the Settlement Class Period"), purchased from a T.J.

22          Maxx, Marshalls or HomeGoods store in California one or more items

23          with a TJX price tag that included a Compare At price, and who have not

24          received a refund or credit for all of their purchase(s). Excluded from the

25          Settlement Class are the Settling Defendants as well as their past and

26          present officers, directors, employees, agents or affiliates, and any judge

27          who presides over this Litigation.

28  (Prelim. App. Order at *3-4).

PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

1   This issue is only germane to Helfand, and to no other Class Member.  Further,
2   the Merchandise Credits never expire.  Helfand can always use his Merchandise
3   Credits if he returns to California, where he previously resided and is currently a
4   member of the state bar.  Alternatively, he may redeem them for cash without visiting
5   California at all.  Lastly, the settlement permits Helfand to sell or otherwise transfer
6   his Merchandise Credits. (ECF No. 113, at *4)  Put simply, Helfand doth protest too
7   much.  His objection, as well as those of the other serial Objectors here, should be
8   viewed for what they are: transparent attempts to muscle into a class settlement after
9   all of the heavy lifting has been done by other attorneys, and extort a fee by
10  threatening to hold up the conclusion of this litigation, and consequently hold up the
11  distribution of significant benefits to the Class, if the protection money is not paid.

**III.   CONCLUSION**:

13  Serial objectors have been described as those "who pursue[] personal financial
14  gain by routinely filing frivolous, bad-faith objections to proposed class settlements
15  and generally engaging in behavior 'unfitting for any member of the legal
16  profession.'" *Garber,* 2017 WL 752183, at *5 (S.D.N.Y. Feb. 27, 2017).  For the
17  foregoing reasons, Plaintiffs respectfully request that the Court overrule each of the
18  objections raised by the serial objectors here, grant final approval of the Settlement,
19  and enter Judgment as requested in Plaintiffs' Motion for Final Approval.

Dated:  April 23, 2018          Respectfully submitted,
                                LAW OFFICE OF CHRISTOPHER J. MOROSOFF


                                By: */s/ Christopher J. Morosoff*
                                    Christopher J. Morosoff
                                    Attorneys for Plaintiffs
                                    STACI CHESTER, et al.